**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **21-CR-175 (TJK)** |
| | : | |
| **ETHAN NORDEAN,** | : | |
| also known as "Rufio Panman," | : | |
| | : | |
| **JOSEPH BIGGS,** | : | |
| | : | |
| **ZACHARY REHL,** | : | |
| | : | |
| **CHARLES DONOHOE,** | : | |
| | : | |
| **ENRIQUE TARRIO,** | : | |
| also known as "Henry Tarrio," | : | |
| | : | |
| **DOMINIC PEZZOLA,** | : | |
| also known as "Spaz," | : | |
| also known as "Spazzo," | : | |
| also known as "Spazzolini," | : | |
| | : | |
| **Defendants.** | : | |

### GOVERNMENT'S REPLY IN SUPPORT OF MOTION TO VACATE TRIAL DATE AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States respectfully submits this reply in support of its motion to continue the May 18, 2022, trial date in this matter.  All six defendants in this indictment can and should be tried together, and none of the objections raised by the defendants overcomes the government's and the Court's legitimate interests in both trying these defendants together and ensuring that they have adequate access to discovery and the necessary time to prepare for trial.

None of the defendants raises a serious challenge to a continuance of the trial date on its own merits.  Rather, they focus on their incarceration status.  *See* ECF 320 at 10 ("In sum, Nordean opposes vacatur of the May trial date, unless the government agrees to work with the

defense to create reasonable release conditions under [18 U.S.C.] § 3142(i)"); ECF 325 at 2-3 ("There is only one just and proper thing to do – take as much time as necessary to assure that the government has produced all discovery . . . only if the Court releases Mr. Rehl . . ."); ECF 318 at 4 (Donohoe's "continued incarceration is unjustly prejudicial . . . [t]hus Donahoe objects to the government's motion to vacate the trial date"); and ECF 319 ("If [Biggs] remains detained, he must go to trial on May 18").

The government's motion to continue the trial date, and the legitimate interest in trying these defendants together, are separate and distinct from the question of whether the defendants should remain incarcerated pending trial.   The Court should not be distracted by the defendants' efforts to conflate their detention status with the statutory or constitutional speedy trial analysis that is currently before the Court.   Should defendants wish to move for reconsideration of their pretrial detention, the proper vehicle exists outside the present inquiry.   In the meantime, continuation of the May 18 trial date is warranted and appropriate.   Recognizing the importance of preparing this case for trial, the government is providing abundant "cross discovery" tailored to these specific defendants – including evidence seized as recently as March 2022 – on a schedule that could, in the government's view, permit the case to be ready for trial by August 2022.

A. **The Six Co-Conspirators Charged in the Second Superseding Indictment Should be Tried Together.**

On March 7, 2022, a grand jury returned the Second Superseding Indictment ("SSI"), adding new charges and two new defendants, Dominic Pezzola and Enrique Tarrio.   These six defendants can and should be tried together.   The law preferences joint trials for conspiracy defendants charged together in a single indictment; the Court can logistically try all six defendants

together; and the defendants have articulated no legitimate reason why they should not be tried together.

### 1. Legal Principles.

Joint trials are the preferred method when multiple defendants are charged with being members of a single conspiracy. The preference for joint trials of co-conspirators is "especially strong when the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two [or more] defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted). *See also United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999) ("Joint trials are favored in RICO cases ... 'where ... the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two defendants who are charged, inter alia, with participating in the same illegal acts'" (quoting *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989))).

By contrast, severance should be granted "sparingly." *See United States v. Straker*, 800 F.3d 570, 626 (D.C. Cir. 2015). "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "[A]lthough a district court may grant a severance in a wider array of circumstances, the Supreme Court has held that 'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt

or innocence.'" *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011), quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

To obtain a severance, the defendant has the burden of establishing the requisite prejudice. *See, e.g., United States v. Carson*, 455 F.3d 336, 374 (D.C. Cir. 2006). Such prejudice may be shown, for example, by the presence of evidence admissible against one defendant but not another or by the unavailability of exculpatory evidence to a single defendant in a joint trial that would be available in a single trial. *Zafiro*, 506 U.S. at 539.

### 2. Severance is not Warranted in this Case.

The defendants have not met their burden of establishing prejudice requiring severance, which Nordean (ECF 320) specifically seeks, and which Rehl has sought to join (ECF 325). As an initial matter, Nordean has cited no case law (and the government is unaware of any) standing for the proposition that the defendant's pretrial incarceration status is a sufficient basis to grant a severance under Fed. R. Crim. P. 14. *See* ECF 320 at 9. Indeed, the relevant case law focuses on whether a joinder would result in an unfair trial vis-à-vis evidence that would be introduced regarding co-defendants, not whether joinder presents the possibility of prejudice at the pretrial phase through continued incarceration. *See, e.g., Bruton v. United States*, 391 U.S. 123, 131 (1968) (Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial) (emphasis added). As will be discussed further below, if Nordean's arguments about length of his pretrial incarceration when weighed against his constitutional speedy trial rights were correct—and they are not—the remedy would be dismissal or release under the Bail Reform Act, not a Rule 14 severance.

Nordean's arguments about severance from Pezzola fare no better.  Although he alleges that there is a potential *Bruton* problem with respect to the admissibility of Pezzola's statements at a joint trial (*see* ECF 320 at 9), Nordean proffers no allegedly offending statements nor offers any analysis as to why those statements would not be otherwise admissible.  The defendant bears the burden of demonstrating prejudice requiring severance, and Nordean has not come close to meeting this burden.  The cases cited by Nordean interpreting Fed. R. Evid. 801(d)(2)(E) are importantly not severance cases.  They are evidence-admissibility cases that involve the analysis of specific statements and the circumstances surrounding their utterance.  *See United States v. Carson*, 455 F.3d 336, 365 (D.C. Cir. 2006) (analyzing the district court's factual findings for admissibility); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (setting standard that the Court must be satisfied that a co-conspirator statement satisfies Rule 801(d)(2)(E) prior to admitting the statement).  Were Nordean, or any of the charged defendants, to identify potentially inadmissible out-of-court statements by Pezzola, the proper mechanism for resolving such issues is through a motion *in limine*, not an opposition to a motion to continue a trial date.  Here, defendant Nordean has identified neither a statement, nor the circumstances under which it was made.  He has not come close to meeting his burden to demonstrate prejudice requiring severance, especially in light of the strong preference for joint trials.  In any event, even if the defendant's case must be severed from Pezzola due to Pezzola's statements, Nordean has made no such claim as to Tarrio's statements, and a continuance is necessary to try him jointly together with Tarrio.

Both the Court and the defendants referenced the government's statement in its initial motion to vacate the trial date that it is evaluating whether to supersede the current indictment to add additional defendants and/or charges.  Were the government to supersede before trial, any

additional charges would overlap substantially with the conspiracy to obstruct an official proceeding charge that has been at the heart of this prosecution since its inception.   But regardless of whether there is another superseding indictment in this case, a continuance is warranted for the presently charged defendants, who acted as lieutenants and leaders on the ground on January 6, to permit them to be tried jointly with Enrique Tarrio, who was a central figure in the charged conspiracy.[1]

## B. **A Continuance of the May Trial Date is Warranted and Appropriate.**

The defendants imply that the government has acted in bad faith by bringing a Second Superseding Indictment that rehashes old evidence to add new defendants, rather than relying on newly discovered evidence.   The defendants further allege that the government failed to provide complete discovery, such that the May 18 trial will represent "Herculean demands of preparation" (Biggs, ECF 319), resulting in a "Hobson's choice" to proceed to trial with incomplete evidence or remain detained (Rehl, ECF 325).   As discussed below, the government's request to continue the trial is warranted and appropriate.

---

[1]   Nordean claims that "precisely the same government delays in adding defendants to January 6 conspiracy matters led a judge in this Court to order separate trials of the Oath Keepers defendants—even though they were indicted together. *U.S. v. Caldwell*, 21-cr-28, ECF No. 289 (D.D.C. 2021)."   ECF 320 at 9.   The *Caldwell* order cited by Nordean—which issued in July 2021—is silent as to the reason the Oath Keepers case was split into separate trials, and the record in that case belies Nordean's claim that any alleged "government delays" were behind the split. *See United States v. Caldwell, et al*., No. 21-cr-28 (APM), June 1, 2021 Hr'g Tr. (ECF No. 370) at 32:22-34:1 (Government counsel agreeing with Judge Mehta that 16 codefendants cannot go to trial at once for logistical reasons).   Here we have six defendants, not 16, which can be tried at once in this courthouse.   Nordean also ignores the procedural history of the Caldwell case, which was split into two separate cases on January 12, 2022, upon the issuance of seventh superseding indictment in that case, and a new indictment (*see United States v. Elmer Stewart Rhodes, et al*., No. 22-cr-15 (APM)).

1.  **The Government Acted Expeditiously to Secure the SSI Based on Recently Discovered Evidence.**

On January 4, 2021, Tarrio was arrested in Washington, D.C., and charged with destruction of property for his December 12, 2020, burning of a #BLACKLIVESMATTER banner and possession of two large capacity magazines.   At the time of his arrest, Tarrio's phone was seized by law enforcement. The government promptly sought a search warrant for that device in this investigation.   Despite diligence, the government was not able to obtain access to Tarrio's phone until December 2021.   Thereafter, a filter team was utilized to ensure that only non-privileged materials were provided to the investigative team.   The investigative team did not gain access to the materials on the phone until mid-January 2022, and it has worked expeditiously since that time to review these materials.

The SSI is based on important, newly discovered evidence recovered from Tarrio's phone. As the government noted, and no defendant challenges with any specificity, "the indictment contains new factual allegations, particularly with respect to Tarrio's role as a leader of the conspiracy."   ECF 314 at 3.   For example, recently recovered evidence includes Tarrio's statement, made in the context of a discussion of revolution and a plan to occupy government buildings on January 6, "That's what every waking moment consists of . . . I'm not playing games." SSI ¶ 41.   The newly recovered evidence also includes another exchange from January 3-4, during which a leader of MOSD told other leaders that the operating theater should be in front of the House of Representatives because "That's where the vote is taking place and all of the objections . . .", to which Tarrio responded, "I didn't hear this voice note until now.   You want to storm the

Capitol." SSI ¶¶ 49-50.[2]   The government moved expeditiously and reasonably to seek charges against Tarrio after recovering this and other similar evidence.[3]

In short, none of the objections cited by the defendants overcome the preference for joint trials of co-conspirators, which is "especially strong when the respective charges require presentation of much of the same evidence, testimony of the same witnesses, and involve two [or more] defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (internal quotation marks omitted).

### 2. The Government has Acted Diligently to Provide Discovery Materials in this Unprecedented Case.

Since January 2021, the government has worked diligently to obtain, organize, review, and make accessible voluminous data, that the defendants may even be arguably entitled to, as elaborated in the Discovery Status Memoranda and letters it has filed with the Court.[4]   The Court

---

[2]    Even at the time, the codefendants were aware that law enforcement's seizure of Tarrio's phone had the potential to place them in legal jeopardy. Shortly after Tarrio's phone was seized, Donohoe created new encrypted chats for MOSD leaders and members and advised them "Hey have been instructed and listen to me real good! There is no planning of any sorts. I need to be put into whatever new thing is created. Everything is compromised and we can be looking at Gang charges." SSI at ¶ 53.   Tarrio also understood that law enforcement's seizure of his phone was potentially problematic, advising another individual after his release that he had cleared all the messages on his phone before he was arrested, and that no one would be able to get into his phone because there were "two steps" to get into it.

[3]    The government agrees that the evidence with respect to Pezzola is not new, either to the currently charged defendants (as this evidence has been argued repeatedly in the many motions to detain and reconsider the detention of the currently charged defendants), or to Pezzola himself. Pezzola was charged on January 29, 2021; the charges in the SSI overlap substantially with the charges that have been at the heart of his prosecution since its inception.

[4]    *See* ECF 119, 120, 168, 180, 214, 216, 218, 285, 290, which are incorporated herein by reference.

8

is familiar with the government's extensive efforts to provide global discovery from these status memoranda, and the government will not belabor the point here.

In "case-specific" discovery, the government's diligent efforts began with rapid productions of evidence obtained from devices and accounts through legal process, as well as video evidence from the U.S. Capitol Police and open sources.   That has continued with multiple rounds of case-specific discovery—principally, materials obtained from the defendants' FBI case files, including search warrant returns, grand jury subpoena returns, and FBI reports and analysis.

In its February 10, 2022, status report, the government laid out its ongoing effort to make data available across the January 6 cases in "global discovery."   Through global discovery, the government is endeavoring to make available potentially relevant data from other cases in a searchable format, which will be a valuable resource for all defense counsel in preparing their defenses.   As the government continues to build out the global discovery databases, the government has identified a "short-term discovery plan"—including targeted searches—that will enable certain trials to proceed before the "global discovery" plan is substantially executed.

In its February 10 status report, the government explained that the "short-term" approach would not be workable in complex cases such as this one.   In this case, the government has undertaken a process of providing "cross-discovery" to achieve the purposes of global discovery. Specifically, as explained in its motion and other prior filings, and as reflected in the discovery correspondence filed with the Court, the government has produced terabytes of material obtained in other specific cases that is potentially relevant to the defendants in this case.   In the coming weeks, as the government continues to make cross-discovery productions, it intends to replicate its case-specific and cross-discovery productions through productions via Relativity.   The

government anticipates that its continued cross-discovery through Relativity should allow this complex case to proceed to trial even if the "global discovery" plan is not fully executed.

Despite the government's diligent efforts in this case, however, the government does not anticipate that discovery will be complete in time to permit a trial in this case to commence on May 18.   Indeed, counsel appear to agree.   Two of the six presently charged defendants, Tarrio and Pezzola, have indicated that they cannot be ready for trial in May.   Of the remaining four, none has indicated that they would be prepared to proceed to trial in May if they were not incarcerated.   Biggs has explicitly stated that a trial on May 18 would require "Herculean" efforts (ECF 319).   Rehl has stated that, absent his continued detention, "[t]here is only one just and proper thing to do – take as much time as necessary to assure that the government has produced all discovery that is material to preparing the defense, that the government intends to use in its case-in-chief at trial and that is favorable to Mr. Rehl so that counsel is able to prepare adequately to defend the serious charges brought against Mr. Rehl and he is able to review the voluminous discovery and assist in his defense." Rehl, ECF 325 at 1.   And Donohoe has stated that he cannot know whether he would be prepared from trial on May 18, without knowing when the government would complete discovery.   ECF 318 at 4.

As the Court has noted in making findings under the Speedy Trial Act, the government has acted diligently to provide discovery in this complex case in a timely fashion.   This scenario— where the government has acted diligently to provide discovery in a complex case, but where it is not feasible to proceed with a scheduled trial date—is precisely the type of scenario envisioned by the Speedy Trial Act's ends-of-justice provision, 18 U.S.C. § 3161(h)(7).   *See Zedner v. United States*, 547 U.S. 489, 508 (2006) ("Congress clearly meant to give district judges a measure of

flexibility in accommodating unusual, complex, and difficult cases").   Because the government has acted diligently in this complex case, the Court should grant the government's request for a continuance to allow all parties—the newly added defendants, as well as the objecting defendants—to adequately prepare for trial.   As the Supreme Court has noted, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (citing §3161(h)(7)(B)(ii), (B)(iv)). The Supreme Court and other courts have time and again recognized the production of voluminous discovery in a complex conspiracy case is a valid reason for trial delay. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."   *Barker v. Wingo*, 407 U.S. 514, 531 (1972); *see also United States v. Bikundi,* 926 F.3d 761, 780 (D.C. Cir. 2019) (delay of 18 months in a case with complex discovery did not violate speedy trial clause); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (same, with a delay of three-and-a-half years).

The government has indicated to the Court that it will not be able to complete discovery by May 18.   Recognizing the importance of preparing this case for trial, the government is providing abundant "cross discovery" tailored to these specific defendants – including evidence seized as recently as March 2022 – on a schedule that could, in the government's view, permit the case to be ready for trial by August 2022.   None of the defendants have indicated that they would be prepared to proceed to trial in May if they were not incarcerated.   In short, even if the lawyers for the objecting defendants move heaven and earth to zealously defend their clients to the best of their ability, if the trial commences on May 18, discovery will not be complete.

11

**C.** **The Defendants' Constitutional Speedy Trial Rights Will Not Be Violated by a Continuance.**[5]

Defendant Nordean alleges, incorrectly, that his Sixth Amendment speedy trial right has been violated (ECF 320 at 5).   The Supreme Court has established a four-factor balancing test to determine whether a violation of the Sixth Amendment right to a speedy trial has occurred: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *See*, *e.g.*, *Barker v. Wingo*, 407 U.S. 514, 530 (1972).   "No single factor is necessary or sufficient to find a deprivation of the right to a speedy trial because the factors are related and must be considered together."   *Bikundi*, 926 F.3d at 779.   "To trigger the speedy trial analysis, the length of delay between accusation and trial must 'cross[ ] the threshold dividing ordinary from 'presumptively prejudicial' delay.' Generally, a delay of one year is presumptively prejudicial."   *Id.*, quoting *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).

However, "presumptive prejudice cannot alone carry a Sixth Amendment claim."   *United States v. Taylor*, 497 F.3d 673, 677 (D.C. Cir. 2007), quoting *Doggett*, 505 U.S. at 656. That is because if the Court finds a delay of slightly more than a year presumptively prejudicial sufficient to trigger the full speedy trial analysis, it must then "consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."   *Taylor*, 497 F.3d at 677, quoting *Doggett*, 505 U.S. at 652.

---

[5]      Nordean argues that his "Sixth Amendment speedy trial right *has been* violated."   ECF 320 at 5 (emphasis added).   If Nordean's right to a speedy trial has in fact been violated already— which it has not and will not be by a continuance—the only proper remedy is dismissal. *See Barker*, 407 U.S. at 522.   The defendant's offer to agree to a continuance if the government agrees to work with him on release, *see* ECF 320 at 5, demonstrates the disingenuousness of his position with respect to whether a constitutional speedy trial violation has already occurred or will occur with a continuance.

As a number of courts have noted, it would be an "unusual case" in which the Speedy Trial Act is followed but the constitution violated, *see, e.g.*, *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014), even though the absence of a Speedy Trial Act violation does not *ipso facto* defeat a Sixth Amendment speedy trial claim.   *See* 18 U.S.C. § 3173.   Here, the Court has followed the Speedy Trial Act, making findings at nearly every status conference that the ends of justice served by the continuance outweigh the interests of the defendants and the public in a speedy trial.   *See* 18 U.S.C. § 3161(h)(7)(A).

### 1.   Length of the Delay

Defendant Nordean's argument that his Sixth Amendment speedy trial rights "have been violated" (ECF 320 at 8) should be rejected outright as to the presently set May 18 trial date, given that the length of time between his arrest and that date is barely long enough to even trigger the full *Barker* analysis in this complex conspiracy case.   Any new date set by this Court is almost certain to be either equivalent to or well short of the lengths of delay previously upheld by the D.C. Circuit (none of which were cited by Nordean).   *See e.g.*, *Rice*, 746 F.3d at 1082 (delay of 26 months) *United States v. Tchibassa*, 452 F.3d 918, 924, 927 (D.C. Cir. 2006) (delay of nearly eleven years); *Lopesierra-Gutierrez*, 708 F.3d at 202–03 (delay of three-and-a-half years); *see also United States v. Young*, 657 F.3d 408, 414, 420 (6th Cir. 2011) (delay of nearly eleven years).

### 2.   Reason for the Delay

"The flag all litigants seek to capture is the second factor, the reason for the delay*." United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).   While a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," a "more neutral

reason ... should be weighted less heavily but nevertheless should be considered." *Barker*, 407

U.S. at 531.   A "valid reason," on the other hand, "should serve to justify appropriate delay." *Id*.

Any delay here has been for valid reasons.   There has been no bad-faith, negligence, or

otherwise unwarranted delay on the part of the government in its prosecution of this case, and what

delay there has been results from the enormous volume and significant complexity of the

government's discovery obligations that arise from the events of January 6, 2021, which it is

approaching with appropriate diligence, as discussed above.   As this Court has found, discovery

in this case is incredibly complex, and that complexity has in part led to the Court finding that

exclusion of time was warranted in the interests of justice on multiple occasions.   *See, e.g.*, Mar.

23, Apr. 6, 14, 19, and 22, May 4, June 1, 3, and 30, July 15 and 27, Sept. 21, Nov. 3, and Dec.

14, 2021, Minute Entries; Nov. 3, 2021, Minute Order; Feb. 8, 2022, Minute Entry.   Indeed, one

of this Court's colleagues has called the discovery in the January 6 cases "the most complex case

that the court has seen in its years of judicial service." *United States v. Gieswein*, No. 21-cr-24

(EGS) Aug. 11, 2021 Hr'g Tr. (ECF 37) at 32:13-32:18 (Sullivan, J.).

Additionally, at least some of the reason the currently scheduled trial is set for May is the

COVID-19 pandemic, along with the actions of the other defendants, which is not attributable to

the government.   As of September 2021, the presently scheduled May trial date was the first

available, given the COVID-19 restrictions at the courthouse.   *See* Sept. 21, 2021 Hr'g Tr. at

67:12-68:6.   Courts across the country have found that the COVID-19 pandemic is a valid basis

to postpone trial.   *See*, *e.g.*, *United States v. Taylor*, 2020 WL 7264070 at *6 (D.D.C. December

10, 2020) (Boasberg, J.) (collecting cases).   Defendant Rehl, moreover, is on his third attorney.

Although his current attorney says she will be ready in May, "even if it takes extraordinary effort,"

ECF 325 at 3, she was only appointed on December 14, 2021, and while the government has undertaken to provide her with discovery as expeditiously as possible, it was unlikely that the trial of the four now-objecting defendants could have been set prior to May 2022, regardless of how the government handled discovery.[6]

### 3.  Assertion of the Right

Contrary to the assertion in his pleading, Defendant Nordean did not raise the claim that his constitutional speedy trial rights had had been violated with the Court until the March 23 status hearing, some 13 months after his arrest.[7]   The length of the defendant's delay in asserting that right counsels against finding that the third factor weighs in his favor.   *See United States v. Black*, 830 F.3d 1099, 1120 (10th Cir. 2016) (where defendant first asserted speedy trial rights at 16-month mark, and did not pursue them with much vigor, the third factor weighed heavily against him, even though he filed a motion to dismiss on speedy trial grounds).   Here, in addition to first affirmatively raising his right to a speedy trial on March 23, 2022, Nordean maintains in his motions papers that he would be willing to consent to a continuance if the government works with him to fashion release conditions.   ECF 320 at 10.

In addition to not asserting his right to a speedy trial until 13 months after his arrest, Nordean took actions—including the filing of numerous motions—that served to automatically

---

[6]     Indeed, at a status conference on December 14, 2021, when the Court raised the possibility of an earlier trial date, Rehl's current (and then-newly appointed) counsel stated, "I'm not sure that I would be able to be prepared for trial at an earlier date."   Dec. 14, 2021 Hr'g Tr. at 41:2-6.

[7]     Nordean claims that he has "consistently raised his desire for a speedy trial."   ECF 320 at 10.   This is not true.   He did not object to tolling time under the Speedy Trial Act based on voluminous discovery early in the case.   *See* April 6, 2021 Hr'g Tr. at 68:8, April 19, 2021 Hr'g Tr. at 79:8-79:11.   He did object to an interests-of-justice continuance on June 13, 2021.   *See* June 13, 2021 Hr'g Tr. 19:22-24.   At later dates, when the Court asked Nordean's counsel his

toll the running of the clock under the Speedy Trial Act.   "[I]t will be an 'unusual case' in which

the [Speedy Trial] Act is followed but the Constitution violated." *United States v. Rice*, 746 F.3d

1074, 1081 (D.C. Cir. 2014).[8]

   Finally, it is worth noting that defendant Nordean has not sought dismissal on speedy trial

grounds, which the Supreme Court has stated is the only proper remedy.   *Barker*, 407 U.S. at 522.

He has instead sought to use the alleged violation as a basis to object to the government's motion

to continue.

---

position on Speedy Trial Act tolling, he expressed the position that the Speedy Trial Act tolled automatically because motions were pending, but did not specifically object to tolling under the interests-of-justice exception.   On one occasion, counsel stated that pending motions automatically tolled the Act, so "our consent isn't required."   July 15, 2021 Hr'g Tr. at 78:6-9. On a separate occasion, counsel responded to a similar inquiry from the Court by stating that an interests-of-justice continuance was "irrelevant." because of the pending motions, but again he did not lodge an objection to it.   November 3, 2021 Hr'g Tr. at 30:5-11.   At most, Nordean has cited the length of potential detention as a reason to release him, but he did not ask to set an earlier trial date, nor did he connect the potential trial date to his speedy trial rights. *See* Motion to Reopen Detention Hearing, ECF 122 at 10 ("By its own description, the government has produced an enormous amount of discovery material in this case, which is continuing. There is no set discovery schedule and no calendared trial date. Other January 6 trials are scheduled for the spring of 2022"). Additionally, at the time the Court set the May 18 trial date, it *sua sponte* suggested setting the earliest date available for a four-to-six-week trial.   Neither the government nor any defendant objected, but neither did Nordean nor any other defendant ask for a trial date to be set in connection with their alleged assertion of speedy trial rights.   *See* Sept. 21, 2021 Hr'g Tr. at 61-72.   None of the other defendants has objected to ends-of-justice continuances, and defendant Rehl has changed attorneys on two separate occasions.

[8]    Nordean seems to argue that the Speedy Trial Act is unconstitutional if it forces him to choose between filing motions and a speedy trial.   ECF 320 at 7 n.3. The Speedy Trial Act puts the defendant to no such choice. The reason for the delay is of course only one of the factors, and whether the Speedy Trial Act was followed is a relevant data point for the Court in conducting that analysis, as the D.C. Circuit has held. *See Rice*, 746 F.3d 1074, 1081.   In any event, aside from the pending motions, as noted above, the Court made proper findings supporting ends-of-justice continuances on numerous occasions in this case.

### 4.  Prejudice

The defendant has not established prejudice requiring dismissal as the result of any delay. Notably, Nordean does not allege any prejudice to his ability to present a defense based on any delay.   Indeed, Nordean has repeatedly argued exactly the opposite—claiming that despite having over one year to prepare, Nordean's counsel has been unable to effectively meet with his client.

Of the three types of prejudice enumerated by the Supreme Court, it has called prejudice to the ability to present a defense "the most important," given the potential to "skew[] the fairness of the entire system" if a defendant cannot prepare and present a defense.  *See*, *e.g.*, *Barker*, 407 U.S. at 532.[9]  The defendant has proffered no prejudice whatsoever to his ability to mount a defense to the charges stemming from any delay in trial.   He has not alleged, for example, loss of records, death of witnesses, or other barriers to trial preparation, which are the types of delay with which the fourth factor is most concerned.  *See United States v Taylor*, 2020 WL 7264070 at *9 (D.D.C. December 10, 2020) (Boasberg, J.).[10]

---

[9]      In addition to impairment of the ability to present a defense, the Court has identified oppressive pretrial incarceration and anxiety of the accused as areas of potential prejudice. *Barker*, 407 U.S. at 532.

[10]     Nordean seems to argue that because the time that has elapsed between his arrest and the currently scheduled May trial date is longer than one year, that delay is "presumptively prejudicial," which suggests that the Court should find in his favor on the fourth factor.   *See* ECF 320 at 5-6.  Nordean is incorrect.  "That argument . . . confuses the 'presumptive prejudice' necessary to trigger the speedy-trial inquiry with the prejudice prong of the *Barker* test. Indeed, the Supreme Court has warned against this very mistake: As the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." *United States v. Homaune*, 898 F. Supp. 2d 153, 170 (D.D.C. 2013) (Boasberg, J.) (cleaned up), quoting *Doggett*, 505 U.S. at 652 n. 1.   In any event, any such presumptive prejudice cannot, alone, carry the defendant's Sixth Amendment claim.  *See Doggett*, 505 U.S. at 656.

The defendant has cited no case suggesting that prejudice of a magnitude required to dismiss the case arises solely due to the approximately 13 months he will have been detained at the time of the presently scheduled trial.  This makes sense because if pretrial incarceration of barely over the minimum time needed to trigger a speedy trial analysis were, without more, enough to dismiss an indictment under the speedy trial clause, pretrial detention would be *per se* impermissible in complex cases.  Indeed, it is not.  Many courts, including those in this Circuit, have declined to find a speedy trial violation, with much longer periods of incarceration, including those longer than any likely continuance in this case would produce.  *See, e.g.*, *United States v. Rice,* 746 F.3d 1074, 1082 (D.C. Cir. 2014) ("although Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form of prejudice: the impairment of his defense"); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 202-03 (D.C. Cir. 2013) (no speedy trial violation where defendant was detained for three-and-a-half years pretrial);[11] *United States v. Taylor*, No. 2020 WL 7264070 (D.D.C. Dec. 10, 2020) (Boasberg, J.) at *10 (28 months' incarceration during pandemic did not violate speedy trial clause);  *United States v. Muhtorov*, 20 F. 4th 558, 658-660 (10th Cir. 2021) (finding no constitutional speedy trial violation despite prejudice arising from six-and-a-half-year period of pretrial incarceration, in part because "the delay was attributable to necessities of the discovery process untainted by government bad faith or negligence"); *United States v. Flores-Lagonas*, 993 F.3d 550, 565 (8th Cir. 2021) (Four-year delay while defendant was incarcerated did not require dismissal where delay was mostly attributable to defendant and he

---

[11]     Although the *Lopesierra-Gutierrez* opinion is silent on the defendant's detention status, he was in fact detained for all three-and-a-half years.  *See United States v. Lopesierra-Gutierrez*, Br. For Appellant, 2012 WL 3186583 at *3.

could not show specific prejudice); *United States v. Worthy*, 772 F.3d 42, 49 (1st Cir. 2014) (23-month delay, while defendant was incarcerated, did not warrant dismissal in a complex case).

Nordean has not proffered that the particular circumstances of his confinement are so oppressive that dismissal is warranted.  *See Muhtorov*, 20 F.4th at 656 (where defendant was incarcerated pretrial for six-and-a-half years, most of which was at county facilities with little educational or visitation opportunity, including two months on 24-hour lockdown, the oppressive incarceration weighed in defendant's favor for speedy trial analysis, but was insufficient to dismiss the indictment in light of the other three factors).   The Court should decline to weigh the fourth factor in defendant's favor at all, given the lack of proffered prejudice to his defense and the minimal showing on oppressive incarceration, but even if it does, the fourth factor does not outweigh the others on these facts.

D. **The Defendants' Incarceration Status Should Be Addressed Separately**

Defendants Nordean, Biggs, Rehl, and Donohoe all improperly request the Court to consider the fact that they are detained in determining whether a continuance is warranted. Pursuant to 18 U.S.C. § 3164:

> (a) The trial or other disposition of cases involving—
>
> > (1) a detained person who is being held in detention solely because he is awaiting trial, and
> >
> > (2) a released person who is awaiting trial and has been designated by the attorney for the Government as being of high risk,
>
> shall be accorded priority.
>
> (b) The trial of any person described in subsection (a)(1) or (a)(2) of this section shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. *The periods*

> *of delay enumerated in section 3161(h) are excluded in computing the time limitation*
> *specified in this section.*

18 U.S.C. § 3164 (emphasis added).   While the Speedy Trial Act requires the trial of a person

who is being detained to commence within ninety days, it also categorically excludes from this

computation of time periods of delay enumerated in 18 U.S.C. § 3161(h), including a judicial

finding under § 3161(h)(7) that an ends-of-justice continuance is warranted, or a continuance

based on § 3161(h)(6) for the addition of a co-defendant.   So long as the court's findings are

warranted and "seriously weigh the benefits of granting the continuance against the strong public

and private interests served by speedy trials," *United States v. Bryant*, 523 F.3d 349, 361 (D.C.

Cir. 2008), the excluded periods must be omitted from the computation of ninety-day time

limitation for bringing a detained defendant to trial.

Accordingly, the Court should decide to continue the trial on the merits of the government's

motion, the defendants' responses, and the provisions of the Speedy Trial Act, and it should

separately address any motions any of the defendants may file regarding release under the

provisions of the Bail Reform Act. Should any defendant wish to challenge their continued

detention, the proper mechanism for doing so is a renewed motion to reconsider detention, not as

a bargaining chip regarding trial readiness in a complex conspiracy case.

## CONCLUSION

For the reasons described above, the government respectfully requests that the Court grant the government's motion to vacate the May 18 trial date, and to continue the trial to the first agreeable date for all parties beginning in August 2022.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

*/s/ Erik M. Kenerson*
ERIK M. KENERSON, OH Bar No. 82960
LUKE M. JONES, VA Bar No. 75053
JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7201
Erik.Kenerson@usdoj.gov