UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

CASE NO: 21-CR-175-TJK

ENRIQUE TARRIO,

      **Defendant.**

_____/

### MOTION FOR REVOCATION OF DETENTION ORDER

**COMES NOW** the Defendant, Enrique Tarrio, by and through undersigned counsel moves this Honorable Court to revoke the detention order entered by United States Magistrate Judge on March 17, 2022 and place him on pretrial release pursuant to the recommendations of the Pretrial Services Report: release to a third-party custodian, home incarceration and location monitoring. In support of this motion, Mr. Tarrio states as follows:

    A.  **Procedural History**

On March 7, 2022, a grand jury in the District of Columbia issued a six count Second superseding Indictment, charging Defendant Enrique Tarrio with Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C §1512(k); Obstruction of an Official Proceeding, in violation of 18 USC §1512(c)(2); Obstruction of Law Enforcement During a Civil Disorder, in violation of 18 USC §231(a)(3); Destruction of Government Property, in violation of 18 USC §1361; and Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 USC §111(a)(1).

Mr. Tarrio was taken into custody at his house in Miami, Florida on March 7, 2022. He appeared in the United States District Court for the Southern District of Florida subsequently on March 8, 2022. A detention hearing/removal hearing took place on March 15, 2022 and Mr. Tarrio was ordered detained by United States Magistrate Judge

Lauren Louis. Mr. Tarrio did not contest the removal hearing to the District of Columbia.

B. **Applicable Law**

This Court must review the Magistrate Judge's detention order promptly and under a *de novo* standard of review.

In this case, the presumption of detention applies to 18 USC 3142(e). At the detention hearing, Magistrate Judge Louis found that Mr. Tariro was not a risk of flight due to his ties to the community in South Florida and the fact that many members of his family were present in the Court, the bond requested and the willingness of those family members to be executors on the considerable bond requested by Mr. Tarrio and the showing he has always appeared for matters when requested in the past. [D. E. 14, *United States v. Tarrio,* 1:22-MJ-2369-AOR-1, pg. 5, ¶11]. However, Magistrate Judge Louis decided that there were no conditions that would reasonably assure the safety of the community as required by statute. 18 USC §3142 (e). This finding was predicated on 2 findings by the Court: (1) the alleged acts occurred while he was on bond for another offense, and (2) his apparent attempt to conceal or destroy his and other's communications relating to their plans for January 6, 2021.

18 USC 3142 (g) sets the factors that the Court must consider in determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community.

C. **Mr. Tarrios's Personal History and Background**

During the presentation of Mr. Tarrio's Detention Hearing and his Pretrial Services Report, it was noted that Mr. Tarrio has lived in South Florida all of his life, has significant family ties to the area, and had a multitude of family members present in the Detention hearing willing to execute a signature bond of over $1 million dollars,

some even willing to place their home as collateral. Mr. Tarrio's criminal history consists of three separate arrests all of which he satisfactorily complied with his obligations including a federal case to which he was sentenced to thirty (30) months of custody with the Bureau of Prisons and complied with not only his sentence but also with probation. It should be noted that Mr. Tarrio self-surrendered without any violation of his Pretrial Release conditions. Mr Tarrio has maintained a positive employment history.

After the events of January 6, 2021, Mr. Tarrio took no steps to evade law enforcement. Of note, Mr. Tarrio had a pending matter in the District Court of Columbia for an incident that arose on December 17, 2020 to which he complied with all the obligations of the Court and did not fail to appear. Additionally, he was sentenced to a period of incarceration on that case and he complied with both the self-surrender and the incarceration. Mr. Tarrio did not protest his case and did not cause any public disturbance as it relates to that matter.

Since the January 6 events, Mr. Tarrio has stated that he believes the individuals were committing a law violation of some sort or another. *See Proud Boys Leader…*, CNN (Feb 25, 2021), *available at* https://www.cnn.com/2021/02/25/politics/capitol-riot-proud-boys-enrique-tarrio-sub/index.html. During that interview, Mr. Tarrio stated he did not agree with the entry into the United States Capitol.

Mr. Tarrio was easily located by law enforcement on the date of his arrest on this case at his home and complied with law enforcement.

D. **Argument**

During the events of January 6, there is no evidence that Mr Tarrio was even

remotely close to the US Capitol as he was ordered to stay away from the District of Columbia by the state courts. He did not assault or harass anyone. He did not commit any acts of violence. He did not enter the US Capitol. Mr. Tarrio's only actions related to January 6 are statements that could have been interpreted to have come from him subsequent to the entry into the Capitol. These words were expressed by many related to the entry of the Captiol. However, Mr. Tarrio, in no way, instructed nor encouraged anyone to go into the Capitol or to act in a violent or destructive manner, as evidenced by his own statements in a CNN interview which the government used in their proffer for Pretrial Detention.

1. **Nature and Circumstances of the Offense**

Magistrate Judge Louis considered several factors in evaluating the nature and circumstances of the offense:

   a. **Creation of Ministry of Self-Defense ("MOSD")**

   While it is true that Mr Tarrio did create MOSD, a review subsequent to the hearing shows the true purpose of MOSD. MOSD was exclusively created so that what transpired on December 12, 2020 where various members were stabbed by left-wing group of protestors would never occur. Mr. Tarrio, along with the other members, wanted to ensure that the members of the organization would not become disruptive nor cause problems. The comments attributable to traveling to DC to attend the rally, subsequent to the initial meeting in other social media sites, mention no type of planned violence at the US Capitol or anywhere else for that matter.

   b. **Failing to abide Court Order on January 5, 2021**

   While it is true that Mr. Tarrio went to the Phoenix Hotel subsequent to his release from custody and met with various individuals, a review subsequent

to the hearing shows that the video produced is predominantly in audible. The documentary film crew that was recording Mr. Tarrio had their belongings in the Phoenix Hotel. The fact that Mr Tarrio met with other individuals is secondary to why he was there. The fact that the video is inaudible shows the speculation that the government extends in trying to justify the purpose of the garage meeting. Mr. Tarrio as evidenced by the documents shown thus far to the Defense does not illustrate any willful violation of the Court Order by Mr. Tarrio. Additionally, any comments made subsequent to the entry of the US Capitol show no bearing as to him planning, organizing, or advising any one to go storm the US Capitol.

c. **Destruction or Attempt to Conceal his and Other's Communications**

The fact that someone wanted to delete their messages does nothing if the messages do not portray any illegal act. In so far as the evidence produced by the Government, there is no showing that anything Mr. Tarrio had on his communications show any illegal conduct or any indication that he encouraged, planned, or organized anyone to enter the US Capitol. Therefore, there is no showing that Mr. Tarrio intended to delete anything from his phone that is illegal.

2. **Weight of the Evidence**

While there is no dispute that the Government has provided extensive discovery from videos to social media chats, it does not support their theory that Mr. Tarrio was part of a conspiracy to commit acts of violence on January 6 and to interfere with Congress's certification of the election. It is quite the contrary. Mr. Tarrio at no point expressed any desire to enter the US Capitol prior to January 6.

3. **History and Characteristics**

   The arguments laid out in the Detention Hearing by the Undersigned truly characterizes Mr. Tarrio. To summarize, Mr. Tarrio has strong ties to the community by both friends and family. He is gainfully employed. He has always been cooperative with the Courts and although he has been arrested on three separate occasions, he has fully complied with his obligations. He has great respect for law enforcement.

4. **Seriousness of any Danger to any person or the Community**

   a. **Mr. Tarrio does not present any identifiable and articulable threat to safety of the community**

      In discussing this factor, Magistrate Judge Louis predicated her finding on the fact that Mr. Tarrio was violating his condition of bond, which the Undersigned argues he did not as evidenced by the record, and "his apparent attempt to conceal or destroy his and other's communications relating to their plans for January 6th, thereby substantiating the governments motion predicated on the risk that [Mr. Tarrio] would obstruct injustice." [D.E 14] *United States v. Enrique Tarrio*, 1:22-MJ-2369-AOR; pg.5 ¶11. There is no showing that Mr. Tarrio subsequently congregated any group of individuals subsequent to January 6, 2021 and did not partake in other organized protest.

   b. **There are conditions or any combination of conditions that will reasonably assure Mr. Tarrio's presence in court and/or the safety of any other person in the community**

      There are factors which that can be considered which should outweigh against detaining Mr. Tarrio. Mr. Tarrio has fully complied with the

Government in previous occasions. Mr. Tarrio has never violated his conditions of his bond on prior occasions. Mr. Tarrio has significant ties to community and those individuals which Magistrate Judge Louis considered were present in court are willing to pledge themselves as surety on Mr. Tarrio's bond including property in excess of one-million ($1,000,000.00) dollars.  *The pretrial services report complied by Pretrial Services agreed that a personal surety bond was sufficient to reasonably assure the Court of Mr Tarrio's presence.*

The recommendations by Undersigned and Mr. Tarrio include home confinement under twenty-four (24) lockdown with travel restricted to District of Columbia for court hearings, GPS monitoring, and restricted to from using social media. Additionally, Mr. Tarrio would agree not to use any computer, tablet, smart phone, or any device that could allow internet access.

Additionally, it should be noted that Counsel is in South Florida. By the court permitting him to remain on home confinement in South Florida, it would enable better attorney-client communication. For the better part of three (3) weeks, Undersigned has communicated with the Government the inability to adequately communicate with Mr. Tarrio. Every time Undersigned has attempted set up a non-monitored call with Mr. Tarrio, Mr Tarrio has been relocated on a multitude of occasions. This has included in Miami, Tallahassee, Atlanta, Oklahoma, NNDJ, and his last location as of April 15, 2022.

### E. CONCLUSION

For the foregoing reasons, Mr. Tarrio respectfully requests that Mr Tarrio be placed on pretrial release with conditions of home incarceration and GPS monitoring. Mr. Tarrio agrees to abide by any and all conditions imposed by this Honorable Court.

Respectfully submitted,

*/s/ Nayib Hassan*

**Nayib Hassan, Esq., Fla Bar No. 20949**
**Attorney for Defendant**
**LAW OFFICES OF NAYIB HASSAN, P.A.**
**6175 NW 153 St., Suite 221**
**Miami Lakes, Florida 33014**
**Tel. No.: 305.403.7323**
**Fax No.: 305.403.1522**

## CERTICICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically noticed through the CM/ECF system to the US Attorney's Office on this 18th day of April, 2022 to the following:

Jason McCollough
Luke Jones
Erik Kenerson

**Respectfully submitted,**

*/s/ Nayib Hassan*

**Nayib Hassan, Esq., Fla Bar No. 20949**
**Attorney for Defendant**
**LAW OFFICES OF NAYIB HASSAN, P.A.**
**6175 NW 153 St., Suite 221**
**Miami Lakes, Florida 33014**
**Tel. No.: 305.403.7323**
**Fax No.: 305.403.1522**