# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 22-mj-02369** |
| | : | |
| **v.** | : | **The Honorable Magistrate Judge** |
| | : | **Lauren F. Louis** |
| **ENRIQUE TARRIO,** | : | |
| also known as "Henry Tarrio," | : | |
| **Defendant.** | | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF MOTION FOR DETENTION

The United States moves to detain Enrique Tarrio pending trial. A grand jury returned an indictment charging Tarrio with conspiracy to obstruct justice, by orchestrating a plot to corruptly obstruct, influence, and impede the Certification of the Electoral College Vote resulting from the 2020 Presidential Election, including an attack on the United States Capitol on January 6, 2021. Based on the compelling evidence of Tarrio's leadership of this conspiracy, there are no conditions of release that can reasonably assure the safety of the community or the defendant's appearance in court. And based on Tarrio's public comments aimed at chilling witnesses against his co-conspirators, as well as his own purported efforts to evade law enforcement, he poses a risk of obstructing justice should he be released. Pretrial detention is warranted and necessary.

## I.     Procedural Background

On March 7, 2022, a grand jury in the District of Columbia returned an indictment (the Second Superseding Indictment or "SSI") that charges Tarrio with conspiring with five co-conspirators—each of whom was previously charged and all of whom are detained pending trial before District of Columbia Judge Timothy J. Kelly. Tarrio is charged with one count of

Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k); one count of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); one count of Obstruction of Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); two counts of Destruction of Government Property, in violation of 18 U.S.C. § 1361; and two counts of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). Upon return of the indictment, a Magistrate Judge for the District of Columbia issued a warrant for Tarrio's arrest. Tarrio was arrested on March 8, 2022, and he had his initial appearance before this Court on that same day.

The United States moves for Tarrio's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because this is a case that involves an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; pursuant to 18 U.S.C. § 3142(f)(2)(A), because this case involves a serious risk of flight; and pursuant to 18 U.S.C. § 3142(f)(2)(B), because this case involves a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. Here, Tarrio is subject to a rebuttable presumption in favor of detention because he is charged with felony destruction of government property (18 U.S.C. § 1361), a statute listed in 18 U.S.C. § 2332b(g)(5)(B) that carries a maximum term of imprisonment of 10 years or more. 18 U.S.C. § 3142(e)(3)(C). The detention hearing is scheduled for Tuesday, March 15, 2022.

## II.    **Factual Background**

In the weeks leading up to January 6, 2021, Tarrio spearheaded a conspiracy to corruptly obstruct, influence, and impede the Certification of the Electoral College Vote resulting from the 2020 Presidential Election. During that period, Tarrio was the national chairman of the Proud Boys organization, which describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. Indeed, Proud Boys members, led by Tarrio, had a visible presence at rallies in Washington, D.C., protesting the outcome of the 2020 election in November and December 2020.

During one of those events, which took place on December 12, 2020, Tarrio participated with a group of Proud Boys in the theft and destruction of a banner that belonged to a downtown Washington, D.C., church. Tarrio's destructive act—burning a "#BLACKLIVESMATTER" banner—was caught on film. On December 17, 2020, Tarrio publicly boasted of his action and was unrepentant, asserting on social media, "Come get me if you feel like what I did was wrong. We'll let the public decide."

On December 19, 2020, plans were announced for a protest in Washington, D.C., to coincide with Congress's January 6 Certification of the Electoral College vote. Beginning in late December 2020, Tarrio created a new chapter for the Proud Boys, referred to as the Ministry of Self Defense or MOSD ("MOSD"). Tarrio described the MOSD as a "national rally planning" chapter that would include only "hand selected members." Tarrio and the other MOSD leaders imposed a command-and-control structure on this new chapter. Tarrio identified the MOSD

leaders and organized them into an "Operational Council" and a "Marketing Council." The MOSD leaders then, in turn, hand-selected Proud Boys to become members of the MOSD.

On January 6, Tarrio's men—the leaders and members of the MOSD—were at the front of the crowd that unlawfully breached the Capitol grounds and overran police lines meant to protect the Capitol and its occupants. Co-conspirator Dominic Pezzola was the first person to physically breach the Capitol when he used a stolen Capitol Police riot shield to break a window adjacent to the Senate Wing Door, which allowed the first members of the mob to breach the interior of the Capitol at 2:13 p.m. The certification of the Electoral College vote was almost immediately halted.

Tarrio was not physically present at the Capitol on January 6. On January 4, he was arrested in Washington, D.C., for his December 12 burning of the "#BLACKLIVESMATTER banner. He was detained briefly, and upon his release on January 5, he was ordered to leave the District of Columbia. Tarrio nonetheless continued to exercise command and control over the MOSD, whose leaders on the ground sought Tarrio's approval of the plan for January 6 later that evening. As the riot unfolded on January 6, Tarrio claimed credit for the scenes unfolding in and around the Capitol, posting a message on his social media account at 2:38 p.m. that read, "Don't fucking leave," and celebrated the success of the conspiracy in an encrypted chat for a small group of Proud Boys leadership, stating "Make no mistake…" and then "We did this…"

A.    <u>Tarrio Imposed a Command and Control Structure on the MOSD</u>

On December 20, 2020, the day after plans were announced for a "wild" protest in D.C. on January 6, Tarrio created an encrypted messaging group for use by MOSD leaders (the "MOSD Leaders Group"). SSI at ¶¶ 21, 30. The group included indicted co-conspirators Ethan Nordean, Joseph Biggs, Zachary Rehl, and Charles Donohoe, and several others. *Id.* This group was to form the nucleus of leadership in a new chapter of the Proud Boys organization, which Tarrio described

as a "national rally planning" chapter. *Id.* at ¶¶ 20, 30. The first event targeted by the group was the rally in D.C. on January 6. *Id.* at ¶ 21.

Tarrio and the other MOSD leaders developed a command and control structure in anticipation of the Proud Boys' return to Washington, D.C., for January 6. On December 20, 2020, Tarrio proposed a video chat, which took place on December 21, to discuss the MOSD chapter and January 6. *Id.* at ¶ 31. On December 27, 2020, Tarrio created another encrypted messaging group for prospects of the MOSD, which were to include only "hand selected members." *Id.* at ¶ 33. Tarrio stressed that MOSD members were expected to follow directions of MOSD leadership, which Tarrio and others emphasized by telling members to "Fit in [] or fuck off." *Id.*

On December 29, 2020, Tarrio posted a message on social media that the Proud Boys planned to "turn out in record numbers on Jan 6th but this time with a twist . . .. We will not be wearing our traditional Black and Yellow. We will be incognito and we will be spread across downtown DC in smaller teams. And who knows . . . we might dress in all BLACK for the occasion." *Id.* at ¶ 37.

On December 29, 2020, Tarrio posted a message to the prospective MOSD members to notify them of a live session on December 30 to inform prospects "how this all works." *Id.* at ¶ 38. Tarrio advised the group that the MOSD "will have a top down structure" and advised prospects that, "if that's something you're not comfortable with" they should not bother attending the live session. *Id.*

At the December 30, 2020, live session, Tarrio and other MOSD leaders emphasized that MOSD members were to follow the commands of leadership. *Id.* at ¶ 42. During the call, another MOSD leader warned prospective members that January 6 was going to be a "completely different

operation," and that the Proud Boys would not be conducting a "night march and flexing our [arms] and shit." *Id.*

**B. Tarrio and His Men Focused on the Capitol**

Communications between and among MOSD leaders and their hand-selected men repeatedly referenced the Capitol on January 6. On December 20, 2020, the same day that Tarrio created the MOSD leadership chat, another MOSD leader wrote, "I am assuming most of the protest will be at the capital building given what's going on inside." *Id.* at ¶ 31.

On January 2, 2021, Tarrio created an encrypted message group for MOSD members. *Id.* at ¶ 46. The next day, members of that group discussed attacking the Capitol. One of Tarrio's hand-selected MOSD members posted a message that read, "time to stack those bodies in front of Capitol Hill." Messages exchanged among the group then turned specific, with one member asking, "so are the normies and other attendees going to push thru police lines and storm the capitol buildings? A few million vs A few hundred coptifa should be enough." The next day, the same MOSD member raised the prospect again, asking, "what would they do [if] 1 million patriots stormed and took the capital building. Shoot into the crowd? I think not." In response, an MOSD leader stated, "They would do nothing because they can do nothing." *Id.* at ¶ 48.

Tarrio encouraged these communications between MOSD members and leaders. For example, on December 31, 2020, at approximately 11:25 a.m., Tarrio posted a picture of co-conspirator Pezzola in D.C. during the December rally. Along with the picture, Tarrio posted the message: "Lords of War. #J6 #J20," which hashtags are apparent references to January 6, the date of the Certification of the Electoral College vote, and January 20, the date of the presidential Inauguration. *Id.* at ¶ 44. Similarly, on January 1, Tarrio posted messages that related to revolution.

*Id.* at ¶ 45. Specifically, at 12:25 a.m., Tarrio posted, "Let's bring this new year with one word in mind...Revolt." At 2:56 p.m., Tarrio posted the message, "New Years Revolution." *Id.*

On January 3, as efforts to plan for January 6 intensified amongst MOSD leaders, Tarrio stated that he wanted to wait until January 4 to make final plans. *Id.* at ¶ 49. In response, another MOSD leader posted a voice message to the MOSD Leaders Group, at 7:10 p.m., in which he stated:

> I mean the main operating theater should be out in front of the house of representatives. It should be out in front of the Capitol building. That's where the vote is taking place and all of the objections. So, we can ignore the rest of these stages and all that shit and plan the operations based around the front entrance to the Capitol building. I strongly recommend you use the national mall and not Pennsylvania avenue though. It's wide-open space, you can see everything coming from all angles.

*Id.* Another MOSD leader posted that the Capitol was a "good start." *Id.*

Throughout the night of January 3 into January 4, Tarrio and other MOSD leaders discussed logistics for January 6. On January 4, Tarrio posted a voice message, at 7:36 a.m., to the MOSD Leaders Group, where he stated, "I didn't hear this voice note until now, you want to storm the Capitol." *Id.* at ¶ 50. In context, this message was posted in response to the January 3 post that the main operating theater should be where "all of the votes are taking place and all of the objections." Tarrio's message regarding storming the capitol was posted in the MOSD Leaders Group, where all of the MOSD leaders would have seen it.

## C. **Even After His Arrest, Tarrio Continued to Direct the Conspiracy**

On January 4, 2021, Tarrio flew from Florida to Washington, D.C., where he was arrested and charged with destruction of property for his December 12 burning of the #BLACKLIVESMATTER banner and possession of two large capacity magazines. *Id.* at ¶ 22. Tarrio was detained overnight, and his phone was seized by law enforcement.

Shortly after Tarrio's arrest, co-conspirator Donohoe created a new encrypted chat for MOSD leaders (the "New MOSD Leaders Group"). *Id.* at ¶ 51. MOSD leaders then discussed deleting their own MOSD communication history and expressed hopes that Tarrio had logged out of his chat application. *Id.* MOSD leaders then created a new MOSD Membership Group ("New MOSD Membership Group") for MOSD members. Donohoe advised them, "Hey have been instructed and listen to me real good! There is no planning of any sorts. I need to be put into whatever new thing is created. Everything is compromised and we can be looking at Gang charges." *Id.* at ¶ 53. Tarrio was not initially invited to either new group.

Tarrio was released at approximately 5 p.m. on January 5, after having been ordered to leave the District of Columbia. Tarrio did not immediately comply with the order. *Id.* at ¶ 22. Instead, he travelled to an underground parking garage, located in downtown Washington, D.C., where for approximately 30 minutes he met with a group of individuals that included Elmer Stewart Rhodes III, the founder and leader of the Oath Keepers. *Id.* at ¶ 23.[1] A documentary film crew was present in the garage and, at one point, picked up audio of a person referencing the Capitol. *Id.* While in the parking garage, Tarrio told another individual that he had cleared all of the messages on his phone before he was arrested. Tarrio further stated that no one would be able to get into his phone because there were "two steps" to get into it.

Thereafter, Tarrio left the District of Columbia and travelled to Baltimore, Maryland. That evening, Tarrio used the phones of associates to make a number of phone calls, and to log back into his encrypted messaging accounts. After having regained access to his accounts, Tarrio assured his men that his phone had not been compromised. Tarrio was subsequently added back into both the new MOSD Leaders Group and the new MOSD Members Group. *Id.* at ¶¶ 64, 66.

---

[1]     Rhodes is charged with Seditious Conspiracy, in violation of 18 U.S.C. § 2384, and related offenses in *United States v. Elmer Stewart Rhodes III, et al.,* 22-cr-15 (APM).

Tarrio participated, posting at least one message in the New MOSD Leaders Group shortly after midnight on January 6. *Id.* at ¶ 67.

On January 5, 2021, around 8:30 p.m., messages were posted to MOSD leaders and members that read: "Everyone needs to meet at the Washington Monument at 10am tomorrow morning! Do not be late! Do not wear colors! Details will be laid out at the pre meeting! Come out at as patriot!" *Id.* at ¶ 60. The command not to wear colors was consistent with an earlier directive from Tarrio.

Communications among the group were clear. MOSD members were looking to Nordean and Biggs to take charge on the ground. And Nordean and Biggs were coordinating—and deferring—to Tarrio. At 9:09 p.m., an MOSD leader broadcast to the New MOSD Members Group that "Rufio [Nordean] is in charge." *Id.* at ¶ 62. At 9:17 p.m., Biggs posted a message on New MOSD Leaders Group that read, "We just had a meeting woth a lot of guys. Info should be coming out" and then posted "Just spoke with Enrique [Tarrio]." *Id.* at ¶ 63.

At approximately 9:20 p.m., Biggs posted a message to the New MOSD Leaders group that read, "We have a plan. I'm with rufio." *Id.* at ¶ 65. Another MOSD leader responded, "What's the plan so I can pass it to the MOSD guys." Biggs responded, "I gave Enrique [Tarrio] a plan. The one I told the guys and he said he had one." *Id.*

### D.   <u>MOSD Leaders and Members Executed the Plan on January 6</u>

As described in greater detail in the Indictment, the Proud Boys played an instrumental role in the attack on the Capitol on January 6, 2021. After assembling at the Washington Monument shortly after 10 a.m, Nordean and Biggs led a group of Proud Boys and others from the Washington Monument to the west side of the Capitol, around the building to its east side, and back to the Peace Monument on the west side of the Capitol. *Id.* at ¶¶ 72-74. The "top-down" command

structure that Tarrio and his co-conspirators had emphasized was on display throughout the march. The group marched in formation, with Nordean, Biggs, and Rehl largely leading the way.

Nordean and Biggs had positioned themselves at the First Street gate shortly before 1 p.m.—the scheduled time for the certification to begin. *Id.* at ¶ 75. Within minutes of arriving at the First Street pedestrian gate at the Capitol, the leaders and members of the MOSD were among the first to unlawfully breach the Capitol grounds, and among the first of thousands to unlawfully occupy the plaza to the west of the Capitol. *Id.* at ¶¶ 77-78. Minutes later, Tarrio's appointed leaders on the ground—co-conspirators Ethan Nordean and Joseph Biggs—moved to the front of the crowd and combined with others to destroy a black metal fence, which allowed the crowd to storm further onto the Capitol grounds. *Id.* at ¶¶ 80-82.

At approximately 1:00 p.m., as Biggs filmed himself celebrating the "Storming" of the Capitol, one the MOSD leaders declared, in an encrypted chat for members of that group, "Storming the capital right now!!" *Id.* at ¶ 79. Nearly one hour later, MOSD leaders and members, including co-conspirators Biggs, Donohoe, and Pezzola, were among the first to overrun a police line leading from the West Plaza to the Upper West Terrace—closer to the building itself. *Id.* at ¶¶ 90-92. At 2:13 p.m., Pezzola was the first person to breach the Capitol. *Id.* at ¶ 93. Pezzola used a stolen Capitol Police riot shield to break a window adjacent to the Senate Wing Door on the Upper West Terrace, which allowed the first members of the mob to breach the interior of the Capitol. *Id.* at ¶ 93. The Electoral College certification was almost immediately halted. *Id.* at ¶ 95.

### E. <u>Tarrio Incited, Directed, and Admitted Responsibility for MOSD's Attack on the Capitol</u>

Just over 20 minutes after Pezzola breached the Capitol with a riot shield, Tarrio made a public post on social media that read, "After I finish watching this I'll make a statement about my arrest...But for now I'm enjoying the show...Do what must be done. #WeThePeople." *Id.* at ¶ 97.

At 2:38 p.m., Tarrio made a public post on social media that read, "Don't fucking leave." *Id.* at ¶ 99. At the time of this post, multiple MOSD members and leaders were inside the Capitol. At 2:41 p.m., Tarrio made a public post on social media that read, "Proud Of My Boys and my country." *Id.* at ¶ 103.

Around this same time, a Proud Boys member posted in an encrypted message chat: "Are we a militia yet?" Tarrio responded with a one-word voice note, "Yep." He then posted, "Make no mistake…" and then "We did this…" *Id.* at ¶ 100. Later that day, Tarrio posted a message in that same group chat that stated, "They'll fear us doing it again…" A member of the group asked, "So what do we do now?" Tarrio responded at 4:14 p.m., "Do it again."

While Nordean and Biggs were moving in and out of the Capitol building, Tarrio attempted to communicate with them by phone. *Id.* at ¶ 105. Tarrio placed a phone call to Nordean at 2:53 p.m. and to Biggs at 2:54 p.m. *Id.* Biggs had a 42 second call with Tarrio at 2:54 p.m. *Id.* Minutes before this call, Biggs had exited the Senate chamber and made his way outside the Capitol.

At 11:16 p.m., Tarrio posted a message on social media that featured a video of a masked man resembling Tarrio, wearing a flowing black cape, standing in front of a deserted Capitol building. The video was captioned, "Premonition." *Id.* at ¶ 107.

**F.** **Tarrio's Actions After January 6**

Unsurprisingly, in the days and weeks following January 6, Tarrio made self-serving exculpatory statements to try to distance himself from the actions of other Proud Boys members on January 6. On January 7, he told a member of law enforcement that he thought he could have stopped the whole thing, if he had been present. He told another individual that he was upset with the Proud Boys for having gone inside the building because they had strayed from his plan. He has also stated in public news interviews that while there was a plan, that plan did not include going

into buildings. *See Proud Boys Leader Has No Sympathy for Lawmakers Targeted by Capitol Riot*, CNN (Feb. 25, 2021), *available at* https://www.cnn.com/2021/02/25/politics/capitol-riot-proud-boys-enrique-tarrio-soh/index.html.

By April 2021, four of Tarrio's MOSD leaders had been indicted, charged, and detained in connection with the events of January 6. In July 2021, Tarrio sent a voice message to Proud Boys around the country. *See EXCLUSIVE Proud Boys Leader Urged Group Not to 'Turn on Each Other,'* Reuters (Sept. 9, 2021), *available at* https://www.reuters.com/world/us/exclusive-proud-boys-leader-urged-group-not-turn-each-other-riot-probe-2021-09-09/. In that message, Tarrio addressed the possibility that one of the four leaders may have been cooperating with law enforcement. Tarrio denied this possibility, adding "[t]he moment that they think one of the guys flipped, it throws everything off and it makes everybody turn on each other, and that's what we are trying to f---ing avoid." *Id.*

On July 19, 2021, Tarrio entered a plea of guilty in the District of Columbia to one count of destruction of property and one count of attempted possession of a large-capacity ammunition feeding device, in connection with the December 12 banner burning. On August 23, 2021, Tarrio was sentenced to 155 days in prison on these charges. Tarrio reported to the D.C. jail to serve this sentence on September 6, 2021; he was released on January 14, 2022.

**III.** **Argument**

Pursuant to 18 U.S.C. § 3142(a), in relevant part, when a defendant is arrested, the Court "shall issue an order that, pending trial, the person be (1) released on personal recognizance . . . ; (2) released on a condition or a combination of conditions . . . ; or (4) detained under subsection (e)." Detaining a defendant under Section 3142(e) requires a hearing "pursuant to the provisions of subsection (f)." *Id.* at § 3142(e). If the Court determines after that hearing that "no condition or

combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must detain the defendant pending trial. *Id.* § 3142 (e)(1). The evidence more than establishes that Tarrio should be detained pending trial.

### A.   **Bases for Detention Request**

According to Section 3142(f), there are limited circumstances in which the Court "shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f); *see also United States v. Munchel*, 991 F.3d 1273, 1281 (D.C. Cir. 2021). Here, three of those circumstances apply: Subsection (f)(1)(A) (case involves an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed); Subsection (f)(2)(A) (case that involves a serious risk of flight); and Subsection (f)(2)(B) (case that involves a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror). All three bases for a detention hearing are supported by the evidence outlined above.

The Bail Reform Act provides in this case a rebuttable presumption in favor of detention because the defendant is charged with an offense listed in 18 U.S.C. § 2332b(g)(5)(B), for which a maximum term of ten years or more is prescribed. *See* 18 U.S.C. § 3142(e)(3)(C). Specifically, in Counts Four and Five of the indictment, Tarrio is charged with destruction of government property with a value of more than $1,000, in violation of 18 U.S.C. § 1361, which is punishable by ten years of imprisonment. An "indictment alone [is] enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

This case also involves a serious risk of flight as defined in 18 U.S.C. § 3142(f)(2)(A). The defendant is facing potential conviction on numerous felony offenses that each carry statutory maximum penalties ranging from five to twenty years of incarceration. He is alleged to have organized a conspiracy to corruptly impede the Certification of the Electoral College vote—a process that is foundational to our democracy and to the rule of law—and thus his willingness to comply with conditions of release set by the Court is in doubt.

Finally, this case also involves a risk of tampering with witnesses and evidence. As described above, Tarrio purported to have taken steps to prevent law enforcement from gaining access to encrypted messages on his phone when he was arrested on January 4, and he circulated messages to Proud Boys members that, coming from the national chairman of the organization, would have deterred cooperation with law enforcement. There is a serious risk that Tarrio would seek to tamper with key witnesses or evidence as these are identified for him through the discovery process.

Under any of those three bases, a detention hearing is warranted because Tarrio should be detained pending trial to protect the community, ensure his return to court, and safeguard the integrity of evidence and the proceedings.

**B.      Analysis**

The Court must consider four factors to determine whether pretrial detention is warranted and necessary: (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial officer's finding of dangerousness must be supported by clear and convincing

evidence. 18 U.S.C. § 3142(f); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). When "risk of flight" is the basis for detention, however, the government must only satisfy a preponderance of the evidence standard. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). An analysis of these four factors weighs heavily in favor of Tarrio's detention given the clear and convincing evidence that his release presents a particular danger to the community as well as the preponderance of evidence that he poses a serious risk of flight and of obstructing justice.

### i. Tarrio's Criminal Activities Were Serious

A grand jury has found probable cause to charge Tarrio with leading a conspiracy to corruptly obstruct, influence, and impede the certification of the Electoral College vote on January 6, 2021. The evidence shows that dozens of men in his charge functioned as the tip of the spear for the mob on January 6, including by conducting assaults on law enforcement, leading a charge up the stairs to the Upper West Terrace of the Capitol grounds, occupying the Capitol grounds and building, and causing lawmakers to be evacuated and the proceedings to be suspended. It is difficult to imagine conduct that poses a graver risk to our society than leading a conspiracy targeted at corruptly undermining the laws and procedures at the heart of our democratic process. *See United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021) ("[T]o order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence, and may extend to 'non-physical harms such as corrupting a union.'") (citing *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)). As described in greater detail above and in the indictment, Tarrio was a leader

of the conspiracy; he created its leadership structure and organized the MOSD leaders into two Councils; he organized and administered planning meetings and chats on encrypted messaging applications; and he gave instructions to his charges, including continually stressing the top-down nature of MOSD. Following Tarrio's January 4 arrest, the MOSD members did in fact follow the lead of the MOSD leaders on the ground on January 6 and achieved the conspiracy's criminal objective. Because Tarrio was a central leader and coordinator of this conspiracy, this factor points in favor of detention.

### ii. The Weight of Evidence Against Tarrio is Strong[2]

The weight of the evidence of Tarrio is strong. Tarrio's electronic communications show a leader who dictated a "command and control" structure for the MOSD. That top-down structure continued even after Tarrio's arrest, with Biggs speaking to him about the plan on January 5, and another MOSD leader stating that as soon as Tarrio got a "burner phone" he would take the reins back. Even the MOSD leaders who assumed command on the ground after Tarrio's arrest, Nordean and Biggs, consulted with and deferred to Tarrio. *Id.* at ¶ 65 (Biggs, "I gave Enrique a plan. The one I told the guys and he said he had one.").

Beginning on December 20, 2020, Tarrio engaged in recruitment, planning, and coordination to ensure a formidable presence of Proud Boys members and affiliates in Washington, D.C. Tarrio's planning, leadership, and the hand-selection of MOSD members ensured that those Proud Boys who came to Washington, D.C. on January 6 would follow the MOSD leaders' commands.

The objective, as it developed in the weeks leading up to January 6, focused on the Capitol. On January 3, an MOSD leader stated "the main operating theater should be out in front of the

---

[2] "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted).

house of representatives. It should be out in front of the Capitol building. That's where the vote is taking place and all of the objections." *Id.* at ¶ 49. Tarrio understood this to be the criminal objective, stating on January 4, "I didn't hear this voice note until now, you want to storm the Capitol." *Id.* at ¶ 50.

Even in Tarrio's absence on January 5, the MOSD leaders consulted with him and sought his approval for the plan for January 6. Under Tarrio's command and control scheme, Nordean and Biggs marched their men into place at a key entrance to the Capitol grounds. The timing of their arrival coincided with anticipated start of the Electoral College certification, scheduled to occur at 1 p.m. Consistent with a plan to have the "main operating theater" in front of the Capitol building, Tarrio's men arrived in front of the Capitol at 12:50 p.m.

MOSD leaders combined with others to tear down a fence within minutes of moving onto Capitol grounds. They then advanced on the Capitol, leading the dozens of Proud Boys they had marched to the Capitol. Nearly one hour later, Nordean, Biggs, Donohoe, and Pezzola joined efforts for a fateful push toward the Capitol, which allowed the crowd to begin to move up the stairs toward the Capitol building itself. Pezzola then used a stolen riot shield to bust open a window of the Capitol, which act unleashed the first wave of rioters into the building. Throughout, MOSD leadership directed and encouraged the actions.

And Tarrio took credit for these actions. After rioters breached the Capitol, Tarrio told a senior group of Proud Boys leaders, "we did this." He then publicly cheered on and encouraged the actions at the Capitol, announcing on social media, "don't fucking leave." Shortly after a 42 second call with Biggs while Biggs was still on Capitol grounds, Tarrio posted again, "1776" and then "Revolutionaries are now at the Rayburn building." The following day, Tarrio sent a message to the members of the MOSD in which he told them, "proud of y'all."

There is overwhelming evidence that Tarrio organized a plot to corruptly obstruct, influence, and impede the certification of the Electoral College vote, an offense that strikes at the heart of our democracy. As District of Columbia Judge Timothy J. Kelly concluded in ordering Tarrio's codefendant Pezzola detained, "the proffered evidence shows that Pezzola came to Washington, D.C. as a key member of a broader conspiracy to effectively steal one of our Nation's crown jewels: the peaceful transfer of power." *United States v. Pezzola*, 531 F. Supp. 3d 139, 149 (D.D.C. 2021) (Kelly, J.). On January 6, still hours before Congress was able to safely resume its constitutionally and statutorily required Certification of the Electoral College Vote, Tarrio posted a message to other Proud Boys leaders that said, "They'll fear us doing it again…" A member of the group asked, "So what do we do now?" Tarrio responded at 4:14 p.m., "Do it again."

Under these circumstances, only pretrial detention can protect the community from the danger Tarrio poses.

### iii. History and Characteristics of Tarrio

Tarrio's criminal history, and his record of non-compliance with Court orders, demonstrate a cavalier attitude toward the law that counsels strongly in favor of pretrial detention.

Tarrio has seven adult arrests that have result in three convictions. On November 10, 2004, Tarrio was sentenced to three years of probation by a Miami, Florida, court, in felony case number 04-016348A, for Dealing in Stolen Property and Grand Theft.

On August 22, 2013, Tarrio was convicted of Conspiracy to Receive or Possess Stolen Goods, in violation of 18 U.S.C. § 371; Possessing, Concealing, Storing, Selling, and Disposing of Stolen Goods, in violation of 18 U.S.C. § 2315; Transporting, Transmitting, and Transferring Stolen Goods in Interstate Commerce, in violation of 18 U.S.C. § 2314; and Misbranding FDCA Devices While Held for Sale after Shipment in Interstate Commerce, in violation of 21 U.S.C. §§

331(k), 352(a), and 333(a)(2). *See United States v. Tarrio*, Case No. 1:12-cr-20947-JAL, ECF 107 (S.D. Fla. 2013). This conviction stemmed from Tarrio's participation in a conspiracy to unlawfully profit by receiving, possessing, and reselling stolen diabetic test strips, manufactured by Abbot Laboratories. *Id.* at ECF 1.

Tarrio entered a plea of guilty and was originally sentenced to 30 months' incarceration, followed by two years of supervised release. *Id.* at ECF 107. The Court calculated a total loss amount of $1,200,000, and on December 13, 2013, Tarrio stipulated and agreed to be jointly and severally liable to pay restitution to Abbott Laboratories. *Id.* at ECF 125. On December 17, 2014, the Court reduced Tarrio's sentence to 16 months of imprisonment after the government filed a motion pursuant to Fed. R. Crim. P. 35. *Id.* at ECF 148. That order did not amend Tarrio's Court-ordered restitution requirement. To date, Tarrio has failed to satisfy this restitution order; he and his coconspirators have remitted only approximately $7,300 (Tarrio's contribution is $1,879), which comprises less than 2% of the total amount ordered by the Court.

Finally, as discussed in detail above, Tarrio was arrested on January 4, 2021, and charged with destruction of property for his burning of the #BLACKLIVESMATTER banner on December 12th, and possession of two large capacity magazines. While under Court supervision in that pending case, Tarrio: (1) on January 5, remained in downtown Washington, D.C., where he met with Elmer Stewart Rhodes III, the founder and leader of the Oath Keepers, in violation of a Court order to leave Washington, D.C.; (2) on January 5, repeatedly reassured others that he had taken all necessary steps to prevent law enforcement from gaining access to encrypted messages on his phone; (3) on January 5-6, exercised command and control over the MOSD, whose leaders on the ground sought Tarrio's approval of the plan for January 6; (4) on January 6, took credit for the MOSD leaders' and members' successful attack on the Capitol, which fulfilled the objective of

the conspiracy he is charged with in this case; and (5) in July 2021, posted a voice message to deter Proud Boys from cooperating with law enforcement.

On July 19, 2021, Tarrio entered a plea of guilty in the District of Columbia to one count of destruction of property and one count of attempted possession of a large-capacity ammunition feeding device, in connection with the December 12 banner burning. On August 23, 2021, Tarrio was sentenced to a prison term of 155 days in prison on these charges. Tarrio reported to the D.C. jail to serve this sentence on September 6, 2021; he was released on January 14, 2022.

### iv.    Danger to the Community and Risk of Flight Posed by Tarrio's Release

Finally, Tarrio is a danger to the community. He spearheaded a conspiracy to corruptly obstruct, influence, and delay Congress' Certification of the Electoral College vote. Tarrio created the MOSD, and was instrumental in choosing its leaders and members and imposing a strict top-down command model. On January 6, the MOSD breached the Capitol causing the certification of the Electoral College vote to be immediately halted. Tarrio directed and orchestrated the MOSD's violent acts entirely remotely -- using encrypted media and social media in the weeks leading up to January 6, and on the day itself, to organize, direct, and celebrate the success of a criminal conspiracy to obstruct the Certification of the Electoral College vote. Tarrio took a lead role in orchestrating this plot, which led to multiple assaults on members of law enforcement, a siege on the U.S. Capitol, and a delay in the peaceful transfer of power. "Make no mistake…we did this." Afterwards, Tarrio told other senior Proud Boy leaders that the next step was to "do it again."  The danger posed by this plot shows an extreme disregard for the safety of the community and the laws of the United States.

## IV.    <u>Conclusion</u>

A grand jury has found probable cause to believe that Tarrio was a lead orchestrator of plot to corruptly obstruct, influence, and impede an official proceeding—specifically, a plot that included an attack on the Capitol while a Joint Session of Congress reviewed the election results. He encouraged the mob to stay in the building and suggested to close confidants that they should do it again. In so doing, Tarrio showed a contempt for the laws and Constitution of this country that make it impossible to trust that he would comply with any conditions fashioned by this Court for his release. Tarrio must be detained pending trial to protect the safety of the community, ensure his return to Court, and safeguard the integrity of evidence and the proceedings.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    _____

JASON B.A. MCCULLOUGH
D.C. Bar No. 998006; NY Bar No. 4544953
LUKE M. JONES
VA Bar No. 75053
ERIK M. KENERSON
OH Bar No. 82960
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7233
Jason.McCullough2@usdoj.gov