UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

CASE NO: 21-CR-175-TJK

v.

ENRIQUE TARRIO,

      Defendant.

_____/

### REPLY TO UNITED STATES OPPOSITION TO DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER

COMES NOW, Defendant, Enrique Tarrio (hereinafter referred to as "Tarrio"), by and through undersigned counsel and requests this Honorable Court to revoke the detention order entered by United States Magistrate Judge on March 17, 2022 and place him on pretrial release pursuant to the recommendations of the Pretrial Services Report: release to a third-party custodian, home incarceration and location monitoring. This Reply is drafted in Response to Government's Opposition to Defendant's Request [D.E. 350]:

The Government relies on the Honorable Magistrate Judge Lauren Louis's findings as a basis for their argument, but simultaneously agrees that this Court should review Magistrate Judge Louis's decision under the *de novo* standard, reviewing the decision anew as if there were no Magistrate findings. Additionally, the Government's reliance on *United States v. Munchel*, No21-3010 (D.C. Cir. Mar. 26, 2021) is unsubstantiated in this case as the facts from *Munchel* are entirely inconsistent with the facts related to Tarrio. Tarrio was not in the District of Columbia on January 6, 2021, was not inside the U.S. Capitol, and did not bring any weapons to the Capitol, unlike the facts described in *Munchel*.

The Government alleged in their Response [D.E. 350] multiple points which are all unfounded based on a more thorough review of the evidence: Defendant Tarrio Organized, Directed, and Admitted Responsibility for the MOSD's ("Ministry of Self Defense") Attack on the Capitol (pg. 3, ¶2),Defendant Tarrio Continued to Plan and Carry out an Attack on the Capitol While [h]e was on Supervised Release for Crimes Committed in Washington, D.C. (pg.4, ¶4), and Tarrio Recognized that his communications were Incriminating (pg.6, ¶2); Defendant Tarrio Presents an Ongoing Threat to the Safety of the Community (pg.7, ¶2).

1. **Tarrio DID NOT Organize, Direct and/or Admit Responsibility for the MOSD's Attack on the Capitol**.

    The Government presents statements in support of their claim that Tarrio organized and directed the attack on the Capitol before January 6, 2021, as follows:

    a. Pg.3 ¶4 statements by MOSD members (not Tarrio), to wit "time to stack those bodies in front of Capitol Hill;" "what would they do [if] 1 million patriots stormed and took the capital building. Shoot the crowd? I think not;" "They would do nothing because they can do nothing."

    b. The Government presents a single solitary statement from Tarrio before January 6, 2021. Pg. 4 ¶1 "I didn't hear this voice note until now, you want to storm the Capitol." However, punctuation matters. The Grand Jury Transcript contains this exact statement as a question with a question mark, not a statement with a period.

    The Government claims that Tarrio admitted responsibility for the organization and direction of the January 6 attack by his social media posts and statements during the January 6 events. Pg. 4 ¶2,3: "…I'm enjoying the show;" "Don't fucking leave;" "Proud of My Boys and my country;" and "Do it again."

However, the Government has failed to show one iota of evidence to support their claim that he organized and directed the attack on the Capitol. Tarrio's listed statements made after the entry on the Capitol were similar to many sentiments being shared across social media and national news which does not equate to organization, direction and responsibility for the attack.

Further, the Government's claim that Tarrio was unrepentant regarding his case reference the Black Lives Matter Rally on December 12, 2020, is absurd and inflammatory in nature. In fact, his actions in that case bolster the Defense's position. There, Tarrio admitted his wrongdoing, traveled to Washington D.C. by plane knowing that he would be arrested, and self-surrendered to the authorities to serve his sentence. All his actions demonstrate his willingness to cooperate with the authorities and appear before the Court as ordered.

The Government alleges that the Defense double downs on their argument by stating that the message groups amongst MOSD did not mention any type of planned violence at the Capitol or anywhere else. Quite frankly, after a thorough review of the discovery, the Defense's argument stands. The true purpose of the creation of MOSD, unlike what the Government would like to portray, was to prevent a repeat of the December 12, 2020, stabbings of various members, including Tarrio; ensure that members would remain unharmed, and prevent violent confrontations with other groups.

2. **Tarrio NEVER STARTED nor Continued to Plan and Carry out an Attack on the Capitol While He was on Supervised Release for Crimes Committed in Washington, D.C.**

      The Government's allegations stem from videos shot by a documentary crew on the night of January 5, 2021, after Tarrio had been released from custody. After a complete review of the videos, the Government's argument is frivolous at best. A complete presentation of the video shows Tarrio meeting a young lady in front of the Phoenix Hotel where he intended on receiving information regarding a potential attorney to represent him on the state case. When told by an officer to move his vehicle, the production crew that is with him proceeds to escort Tarrio into the parking garage to obtain the information of the attorney. One of the videos shows Tarrio in the same production crew vehicle as a passenger driving through the parking garage, and he states, "I simply need to talk to her, this guy has a good attorney…"). There is no mention of meeting up with Oath Keepers Elmer Stewart Rhodes III and there is no showing that he discussed anything with Mr. Rhodes. Additionally, he was told to leave D.C. by 11:59pm January 5, 2021, which he complied with. There is no conversation in any of the videos provided regarding anything on January 6, 2021, inside or outside of that parking garage. The Court should review the evidence in its entirety, making an independent finding, and not rely on the conclusionary finding that the Honorable Judge Louis made.

3. **Tarrio DID NOT Recognize that his Communications were Incriminating as there were no incriminating communications.**

   Again, this argument is unfounded as the Government has been able to obtain all the information which Tarrio had on his phone and there is no incriminating evidence. In order to substantiate this claim, the Government would need to show that Tarrio intended to hide or obstruct the Government from their fact finding. No such evidence exists. Hence, Tarrio has not been charged with Obstruction.

4. **Tarrio DOES NOT present an ongoing threat to the Safety of the Community.**

   Since January 6, 2021, Tarrio has made public his criticisms of the actions committed by the various members of the public for what transpired on January 6, 2021. In the days and weeks following January 6, more and more information came to light about what happened on the Capitol. Only seven weeks after January 6 and more than a year before being indicted, Tarrio openly stated on national television that the individuals that went into the Capitol committed a crime and that they were wrong in doing so, *See Proud Boys Has no Sympathy for Law Makers Targeted by Capitol Riot, CNN (Feb. 25, 2021), available at* https://www.cnn.com/2021/02/25/politics/capitol-riot-proud-boys-enrique-tarrio-soh/index.html.

   Further, Tarrio has had many months since January 6, 2021, to commit a crime, evade the jurisdiction of the Court, organize or plan an illegal activity, but he has not done so. There is no showing that Tarrio has committed any type of wrongdoing. Any argument by the Government to the contrary would be false. Tarrio was not detained for over a year and did nothing to endanger the safety of the community. Releasing him to home confinement, albeit with conditions imposed by this Court, would be more

than sufficient to address the Government's concerns and ensure Tarrio's presence at all court hearings.

5. **There are conditions or any combination of conditions that will reasonably assure Tarrio's presence in court and/or the safety of any other person in the community**

The Court should consider the following factors that greatly outweigh detaining Tarrio until trial. First, Tarrio has historically and consistently complied with Court orders on previous occasions. Tarrio has never violated the conditions of his bond on prior occasions. Second, Tarrio has significant ties to community. A courtroom full of family and friends supported him, which Magistrate Judge Louis acknowledged were present in court. These numerous individuals are willing to pledge themselves as surety on Tarrio's bond, including their property that is worth more than one million ($1,000,000.00) dollars. *The pretrial services report compiled by Pretrial Services agreed that a personal surety bond was sufficient to reasonably assure the Court of Tarrio's presence.*

The recommendations by Undersigned and Tarrio include home confinement under twenty-four (24) lockdown with travel restricted to District of Columbia for court hearings, GPS monitoring, and restriction from using social media. Additionally, Tarrio would agree not to use any computer, tablet, smart phone, or any device that could allow internet access. Also, it should be noted that Counsel lives and works in South Florida. The Court noted the difficulty in communicating with Tarrio at its last hearing on May 2, 2022 (Discovery Conference). By the court permitting him to remain on home confinement in South Florida, it would enable better, faster and more efficient attorney-client communication and preparation for trial. For the better part of three (3)

weeks, Undersigned has communicated with the Government the inability to adequately communicate with Tarrio. Every time Undersigned has attempted set up a non-monitored call with Tarrio, he has been relocated multiple times with no set destination. It has been impossible for the Defense to review discovery with him, and with the voluminous discovery received so far (and more coming), it would be improbable for the Defense to adequately review discovery with Tarrio if he is in custody in any final location. To date, the locations have included Miami, Tallahassee, Atlanta, Oklahoma, NNDJ, and his last location as of April 15, 2022.

## 6. CONCLUSION

For the foregoing reasons, Tarrio respectfully requests that he be placed on pretrial release with conditions of home incarceration and GPS monitoring. Tarrio agrees to abide by all conditions imposed by this Honorable Court.

Respectfully submitted,

*/s/ Nayib Hassan*

**Nayib Hassan, Esq., Fla Bar No. 20949**
**Attorney for Defendant**
**LAW OFFICES OF NAYIB HASSAN, P.A.**
**6175 NW 153 St., Suite 221**
**Miami Lakes, Florida 33014**
**Tel. No.: 305.403.7323**
**Fax No.: 305.403.1522**

## **CERTICICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically noticed through the CM/ECF system to the US Attorney's Office on this 4th day of May 2022 to the following:

Jason McCollough
Luke Jones
Erik Kenerson

**Respectfully submitted,**

*/s/ Nayib Hassan*

_____
**Nayib Hassan, Esq., Fla Bar No. 20949**
**Attorney for Defendant**
**LAW OFFICES OF NAYIB HASSAN, P.A.**
**6175 NW 153 St., Suite 221**
**Miami Lakes, Florida 33014**
**Tel. No.: 305.403.7323**
**Fax No.: 305.403.1522**