UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-175-5 (TJK) |
| : | |
| **ENRIQUE TARRIO,** : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT TARRIO'S
MOTION FOR THE GOVERNMENT TO PRODUCE DISCOVERY**

The United States respectfully submits this opposition to defendant Enrique Tarrio's Motion for the Government to Produce Discovery: Brady Motion. ECF 431. For the reasons set forth below, Tarrio's motion should be denied.

## FACTS

**A. Background.**

Tarrio and four co-defendants — Ethan Nordean, Joseph Biggs, Zachary Rehl, and Dominic Pezzola — are charged in a ten-count Third Superseding Indictment with offenses relating to the siege of the United States Capitol on January 6, 2021. ECF 380.

As alleged in the indictment, Tarrio was the national chairman of the Proud Boys, a "pro-Western fraternal organization" whose members "routinely attend[ed] rallies, protests, and other events, some of which have resulted in violence involving members of the group." *Id*. at 3-4. Beginning in or around December of 2020, the defendants and others began conspiring to, among other things, oppose by force the authority of the Government of the United States and by force prevent, hinder, and delay the execution of any law of the United States (as charged in Count One), and corruptly obstruct, influence, and impede the Certification of the Electoral College Vote for the 2020 presidential election (as charged in Count Two). In furtherance, Tarrio and his co-

defendants took preparatory steps that included implementing certain changes to the organizational structure and practices of the Proud Boys. *See id*. at 6-7, 10 (formation of "national rally planning committee" known as "MOSD"); *id*. at 11 (implementation of new "top down structure" for January 6); *id*. (directive to go "incognito" without identifying colors on January 6); *id*. at 12 (explanation that January 6 would be a "completely different operation" than past rallies). The conspiracy culminated in the storming of the Capitol.

### B. Status of Discovery.

From the outset of the case, the government has made regular discovery productions to defense counsel as described in prior filings including, most recently, the government's Opposition to Nordean's Motion for an Order Directing the Government to Identify *Brady* Material Produced in Discovery. ECF 374 at 2-6; *see also* ECF 314 at 5-7 (government's motion to vacate May 2022 trial date); ECF 327 at 8-11 (reply brief on motion to vacate trial date); ECF 353 at 2-4 (opposition to Rehl's Motion to Compel Government to Provide Notice of Intent to Use Specified Evidence in its Case-in-Chief). The government has also kept the Court apprised of its discovery productions by filing periodic notices of discovery correspondence specific to this case, *see* ECF 119, 168, 180, 216, 348, as well as updates on the status of the global discovery effort being made in all cases brought by the U.S. Attorney's Office arising out of the events of January 6, 2021, s*ee* ECF 120, 168, 214, 218, 290.

On April 22, 2022, as part of an order vacating a previous trial date, the Court set a discovery deadline of June 17, 2022. In the leadup to that deadline, the government collected, reviewed, and produced a massive volume of materials that included evidence items and reports from approximately 28 separate Federal Bureau of Investigation [FBI] case files that were deemed potentially relevant to the defendants in this case. *See* ECF 407 (Government's Notice Regarding

Discovery Correspondence for productions of 5/12/2022 and 6/17/2022). Among the materials were two FBI reports that predated this investigation but were identified through an FBI-wide search of the agency's holdings; the reports documented contact with Tarrio and Biggs in advance of planned rallies in the Portland, OR area in August of 2019 and September of 2020. (The production also included two additional FBI reports of contact with Biggs individually in 2019 and 2020.)

### C. Tarrio's Instant Request.

On June 7, 2022, shortly before the discovery deadline, Tarrio's counsel sent an email to government counsel requesting the following:

> [A]ll communications Mr. Tarrio and/or any Proud Boy had with the Metropolitan Police Department of the District of Columbia and/or the Secret Service. Including, but not limited to phone calls, emails, text messages, etc. Further, any reports generated by the Metropolitan police department and/or Secret Service based on those contacts, and any reports monitoring the Proud Boys movements during any events, rallies, or protests. Lastly, any contacts between Tarrio and Lt. Shane Lemond, [*sic*] intelligence (DC MPD).

Upon receiving the request, while already devoting its full-time efforts to accomplishing the overall case discovery production described above, the government set out to identify and collect responsive materials, all of which were outside the possession of this case team.

On June 17, 2022, as part of its production pursuant to the discovery deadline, the government provided the defendants with chats between Tarrio and Shane Lamond, an officer of the Metropolitan Police Department [MPD]. The government's discovery letter memorialized the production as follows:

> <u>Additional Tarrio communications</u>: Messages between Tarrio and other parties, obtained by the government in a separate investigation. We identified these records in the course of responding to a request from Mr. Jauregui on June 7, 2022, and we are continuing our efforts to identify any additional discoverable materials responsive to that request.

Doc. 407-2 at 3 (6/17/22 discovery letter).

3

On July 7, Tarrio's counsel contacted the government to inquire about the status of the request. On July 12, government counsel responded that efforts to gather responsive information were still underway, and asked whether counsel could assist by "narrowing the request regarding communications 'any Proud Boy' had with MPD and/or Secret Service," such as by providing "specific names" or a "date range." Counsel replied by providing a date range "within the preceding four months and including January 6, 2021," but meanwhile broadened the request to include records possessed by "any other LEO agency."

On August 1, 2022, Tarrio filed the instant motion. On August 10, the government made an additional production that included (1) communications between Lamond and other MPD personnel making reference to Tarrio's contacts with Lamond; and (2) summaries of interviews with MPD personnel relating to contacts between Tarrio and Lamond.

As of this date, the government is continuing its efforts to identify and obtain any further responsive materials that may be in the possession of MPD. The government has likewise been consulting with the United States Secret Service [USSS] to determine what records that agency possesses that might be responsive to Tarrio's request. The government anticipates that these efforts will result in at least one additional production in the near future.

## ARGUMENT

*Brady v. Maryland* requires the government to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963). In the District of Columbia, Local Criminal Rule 5.1 imposes additional requirements for the timing and format of such disclosures.

Tarrio cites *Brady* as the basis of his motion, but he has not shown the requested materials to be relevant to his guilt or punishment. And even if some of the materials would be favorable, Tarrio has framed his request so broadly as to make it impossible for the government to fulfill. To

4

the extent that the government is able satisfy Tarrio's request, it is already doing so. Tarrio's motion should therefore be denied.

### A. *Brady* does not require production of the requested materials.

Although Tarrio cites to *Brady* and its progeny as the basis of his motion, he does not identify what exculpatory or mitigating value the requested records would hold, nor can the government readily discern what favorable purpose they would serve for him. A historical pattern of reporting the Proud Boys' plans to police would only support the government's allegations about the formation of the conspiracy in December of 2020 by highlighting the shift in the group's attitudes and behavior at that time. *See, e.g.*, ECF 421, Gov. Br. Opp. Reh's Motion to Reopen Detention Hearing, at 7-8 (conversation on 1/1/21 between defendants and other MOSD members about how "[o]ur disposition towards the police needs to be reevaluated"); ECF 380, Third Superseding Indictment, at 11 (Tarrio explaining that Proud Boys would rally "with a twist," dressing "incognito" and spreading out "in smaller teams"); *id.* at 12 (co-defendant Rehl describing January 6 as a "completely different operation").

Accordingly, while Tarrio has a right under Rule 16(a) to discovery of his own verbatim statements to law enforcement,[1] he has not established a legal basis for the remainder of his request, that is, communications by "any [other] Proud Boy" and "reports monitoring the Proud Boys movements."

Of course, the government construes its disclosure responsibilities broadly, and would not refuse to provide materials simply because the law did not require their production. However, as

---

[1] Fed. R. Crim. P. 16(a)(1)(B) makes discoverable "any relevant written or recorded statement by the defendant if: • the statement is within the government's possession, custody, or control; and • the attorney for the government knows--or through due diligence could know--that the statement exists."

5

the next section explains, Tarrio's request makes demands that the government could not satisfy even with its best efforts.

### B. Tarrio's Request is Overbroad.

Tarrio's initial request specified the name of one law enforcement officer and asked for communications between Tarrio and that individual. But otherwise, the request spoke in sweeping generalities, requesting records about contacts between two large agencies (MPD and USSS) and "*any* Proud Boy," as well any documentation of "Proud Boys movements during *any* events, rallies, or protests" (emphasis added). This was asking the impossible: the government does not, could not, and would not maintain a membership roster for the Proud Boys, a group with dozens of chapters throughout the United States and countless members who are not subjects of criminal investigation. Nor is the government in the practice of comprehensively documenting first amendment activities that do not result in criminal conduct.

Accordingly, in a good-faith effort to satisfy Tarrio's request, the government asked if he could provide further direction to guide the search. This request for specificity was hardly an "attempt[] to shift the burden of discovering exculpatory information to the defense." Def. Br. 5. It was instead an effort to orient the government's search toward where it would be most likely to locate relevant material. By way of comparison, when counsel for co-defendant Biggs made a similar request on June 19, 2022, he provided the name of the agent whom Biggs had contacted, the approximate date of the contact, and the geographic location of the contact, all of which helped the government quickly identify the report in question.[2] As the Biggs request illustrates, it is reasonable to expect that a person who previously contacted law enforcement would be able to

---

[2] In Biggs's case, the report had been provided two days earlier as part of the large 6/17/22 production, and the government directed defense counsel to its location in discovery.

6

provide some level of detail about the circumstances.

Tarrio's request grew even broader when he filed the instant motion, which includes a lengthy list of materials to which Tarrio believes he is entitled. ECF 431 at 5-7. The list presents several problems. For one, Tarrio directs his requests at "law enforcement" generally, *id.* at 5, but the government is not empowered to search the records of "law enforcement" writ large. This case is being investigated by the FBI, and as part of its overall discovery efforts the government has already searched the FBI's records for documents concerning Tarrio, resulting in the identification and disclosure of reports summarizing Tarrio's prior contacts with that agency. At Tarrio's request the government is now also engaging with MPD and USSS, both of which have been willing to assist despite not being part of the U.S. Department of Justice nor part of the prosecution team for this case. These efforts have been more than reasonable, and it is unclear how the government could even begin to comply with an order expanding the search to all "law enforcement." Similarly, Tarrio is asking for every imaginable type of record — from "[a]udio and/or videotapes" to "electronic devices" to "social media accounts," *id.* at 6, but the government has neither the access to such records held by outside agencies nor the means to search such disparate categories, especially for terms as vague as "any Proud Boy."

In sum, Tarrio's discovery request was too broad from the beginning, and as expanded by his motion it is broader still. It cannot serve as the basis for an order from this Court.

### C. The Government is already fulfilling Tarrio's request to its best ability.

Notwithstanding the dubious legal basis of Tarrio's request, and notwithstanding its vague and boundless quality, the government is nonetheless continuing its efforts to provide Tarrio with the items he seeks. These efforts have already resulted in the disclosure of a substantial volume of responsive materials, and the government anticipates that one or more additional productions

will be forthcoming as its efforts continue. The iterative nature of these productions does not reflect a lack of diligence on the government's part, but rather the complexities of obtaining records from law enforcement agencies that are not part of the prosecution team. Because the government has already produced responsive materials and agrees to produce any further responsive materials that may be identified, Tarrio's motion is effectively moot. *See United States v. Sutton*, No. CR 21-0598 (PLF), 2022 WL 1202741, at *16 (D.D.C. Apr. 22, 2022) (citing *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 169-70 (D.D.C. 2020)), *reconsidered in part on other grounds*, 2022 WL 2828995 (D.D.C. July 20, 2022).

## CONCLUSION

For the foregoing reasons, Tarrio's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  */s/ Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530
(202) 330-1788
Conor.Mulroe@usdoj.gov

*/s/ Jason B.A. McCullough*
JASON B.A. MCCULLOUGH
    D.C. Bar No. 998006; NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
    On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street NW
Washington, D.C. 20530