**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-CR-175 (TJK)** |
| | : | |
| ETHAN NORDEAN, et al., | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S REPLY IN SUPPORT OF THE GOVERNMENT'S**
**OMNIBUS MOTIONS *IN LIMINE***

The United States respectfully submits this reply in support of its omnibus motions *in limine* (ECF 494). For the reasons below, the Court should reject the arguments in defendant Nordean's Response in Opposition (ECF 505) and grant the government's requested relief.

**I.      Relevance of Conduct by Co-Conspirators and "Tools" of the Conspiracy**

In its first motion *in limine*, the government presented a framework for the Court to use in assessing the relevance of conduct by persons other than the defendants. ECF 494 at 3-7. As explained there, the government intends to offer at trial evidence of (1) conduct by various co-conspirators who shared an agreement with the defendants as to one or more of the criminal objectives; and (2) conduct by various "tools" of the conspiracy who, although perhaps unaware of the defendants' ultimate criminal objectives, were nonetheless led to the Capitol by the conspiracy's leaders and provoked to violence by the purposeful acts of the defendants.

**A. Co-Conspirators**

In responding to the government's motion, Nordean makes the same error as in his response (ECF 503) to the government's Statements Motion (ECF 475). That is, he asserts (again without citation to any authority) that, before admitting the actions of a co-conspirator, the government must show that the person was part of *every* conspiracy charged in the indictment. The government

explained in its Statements Reply why that is wrong in the context of admitting co-conspirator statements, ECF 512 at 7-9, and largely the same analysis applies here.

An analogy illustrates the fallacy of Nordean's argument. Imagine a defendant charged with one count of conspiring to possess cocaine with the intent to distribute and one count of laundering the proceeds of that drug trafficking.  Imagine that an uncharged co-conspirator transported narcotics on the defendant's behalf but had no involvement in, or knowledge about, the laundering of the money.  On Nordean's reasoning, the co-conspirator's conduct would be excluded at trial because it was only related to "*a* conspiracy" to traffic drugs and not "*the* conspiracy" to commit both object offenses.  ECF 505 at 2 (emphasis Nordean's). *See* Joint Proposed Jury Instructions (submitted to the Court on 11/2/2022), at 18 ("To have guilty knowledge, the defendant need not know the full extent of the conspiracy or all of the activities of all of its participants.  It is not necessary for the defendant to know every other member of the conspiracy.").

Regarding the evidence that would show that a person is a co-conspirator, the government is certainly not alleging that Proud Boys membership, without more, makes a person a co-conspirator.  However, an individual's membership and participation in the group's encrypted Ministry of Self Defense chat groups could, for example, be powerful evidence that a jury might rely in determining whether the individual shared conspiracy's criminal objective.  Also highly relevant are the co-conspirators' actions in the lead-up to and during the siege of the Capitol. Nordean is wrong to claim that "those actions are indistinguishable from the conduct of hundreds or thousands of other protestors on January 6."  Not every protestor convened at the Washington Monument at 10:00 am at the direction of Proud Boys leadership.  Not every protestor marched in formation with the defendants *away from* the Presidential speech that was ostensibly the day's

headline event.  Not every protestor wore insignia like orange hats or duct tape as a sign of their affiliation with the group.  Not every protestor penetrated the crowd in "stack" formation with the defendants to reach the front lines.  And, in any event, that question is one for the jury.

### B. Tools

Nordean also argues against the government's explanation that other persons acted as "tools" of the conspiracy.  ECF at 3-4.  Contrary to Nordean's telling, though, there is nothing novel about the principle that the actions of third parties can advance a conspiracy even if those parties are not full members of the conspiracy.  The notion that the conspiracy could operationalize other individuals as a force multiplier is not an invention of the government; to the contrary, the conspirators expressly discussed it.  *See, e.g.*, ECF 440-1 at 20 (Transcript of MOSD meeting where Bertino explains: "[T]hey're gonna follow us now because, you know, we're the tip of the spear."); ECF 111-1 at 4 (discussion on morning of January 6 about hopes that "normies burn that city to ash today" and "smash some pigs to dust," which was "going to happen" because normies "have no adrenaline control . . . They are like a pack of wild dogs.").

Indeed, for example, it is common for financial schemes to involve the use of "money mules" who knowingly conduct transactions at the perpetrators' direction while remaining unwitting to the essential nature of the arrangement.  *See, e.g.*, *United States v. Thomas*, 999 F.3d 723, 727-28 (D.C. Cir. 2021).  The conduct of those "money mules" is relevant evidence of the financial scheming defendant's criminal intent and unlawful conduct. This case is factually different, but the basic theory is the same.  The limiting principle is whether, on the evidence at trial, a jury could reasonably find a factual nexus between the actions of the conspirators and the actions of the tools.  *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").

There will be ample basis at trial for such findings, based on the conspirators' planning discussions ahead of January 6, their leading roles at key moments in the riots, and their celebration of the overall event after the fact.  Nordean can argue to the jury that the conduct of the tools had nothing to do with him, but the jury should be allowed to decide for itself.  *See Huddleston v. United States*, 485 U.S. 681, 690 (1988) ("In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.").

## II.     Admissibility of Constitution, Statutes, and Congressional Record

In its motion *in limine*, the government explained that the Court can and should take judicial notice, and admit into evidence, certain Constitutional and statutory provisions whose existence is relevant to one or more of the offenses charged.  ECF 494 at 14.  Nordean, perhaps failing to understand the government's explanation, calls it "nonsense."  ECF 505 at 4.  He is mistaken.

It is of course true that "evidence" is "something . . . that tends to prove or disprove the existence of an alleged fact."  *Id.* (Nordean quoting Black's Law Dictionary).  It is also true that one of the very first "alleged fact[s]" in the indictment is that "[t]he United States Constitution and federal statutes codify the procedures and dates governing the transfer of presidential power in the United States."  ECF 380 at 2, ¶2.  The government is therefore not offering the Constitution and statutes as "principles of law" that are "applicable" to the jury's deliberations.  ECF 505 at 4-5.  It is offering them as *facts* that are relevant to the jury's deliberations.  Put differently, the defendants are not on trial for violating 3 U.S.C. § 15 *et seq.*, and so the jury is not "applying" those laws to

the defendants' conduct.  They are on trial for seditious conspiracy and other offenses, and the government is not proposing to offer *those* statutes as evidence.

Nordean accuses the government of "nonsense" again for its position that the Congressional Record is admissible as a self-authenticating "Official Publication" under Federal Rule of Evidence 902(5).  ECF 505 at 5.

Again, Nordean is wrong.  His argument on this point rests exclusively on a faulty analogy to cases involving a different type of document, offered under a different evidentiary rule.  ECF 505 at 5 (citing *Richmond Med. Ctr. For Women v. Hicks*, 301 F. Supp. 499, 512 (E.D. Va. 2004); *Anderson v. City of New York*, 657 F. Supp. 1571, 1579 (S.D.N.Y. 1987); *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986); *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19 (6th Cir. 1984)).  These cases are inapposite because they all involved Congressional *reports* offered under the hearsay exception of Rule 803(8)[1] for public records that set out "factual findings" of an authorized investigation; in each case the evidence was excluded for "indicat[ing] a lack of trustworthiness."  *See, e.g.*, *Baker*, 793 F.2d at 1199 (calling report about tire safety the "heated conclusions of a politically motivated hearing").  Here, by contrast, the Congressional record makes no factual findings but merely "sets out . . . the [Congress's] activities."  Fed. R. Evid. 803(8)(A)(i).  The government is not offering it to prove the truth of any extrinsic fact asserted during the proceedings, but only to prove the fact of the proceedings themselves.

Neither Nordean nor any other defendant raises any other objection to the Constitutional, statutory, and Congressional exhibits.  They should therefore be admitted.

---

[1] In its current form the rule is Fed. R. Evid. 803(8)(A)(iii).  When the cases above were decided, the rule was numbered Fed. R. Evid. 803(b)(C).

### III.      Cross-Examination of Secret Service Personnel

Nordean asserts that this Court must "reject" any attempt to "eliminate" cross examination of U.S. Secret Service witnesses. In support of his assertion, Nordean claims that "[t]his Court[2] has already rejected the government's motion to eliminate cross-examination of USSS witnesses." *Nordean Opposition*, ECF 505 at 5-6. Defendant cites *United States v. Griffin* in support of this assertion. 21-cr-92, ECF No. 92 (D.D.C. 2021).

As explained herein, the *Griffin* court granted the very relief the government seeks here— *the same relief.*   In the motion submitted to this Court, the government asserted that cross examination should not be permitted with respect to "(1) Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur, and (2) details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees."  ECF 494 at 18-19.  The *Griffin* court addressed these two areas in its written opinion and GRANTED the relief requested as to those areas:

> In this Motion, … the Government seeks to prevent Griffin from asking about (1) information related to the location of Vice President Pence; (2) Secret Service protocols related to the locations where protectees or their motorcades are taken during emergencies; *and* (3) details about the nature of Secret Service VIP-protection operations.
>
> As for categories (2) and (3), Griffin does not contest that such cross-examination would be inappropriate and immaterial to the question of guilt, or to the credibility of the Secret Service witness. The Government's motion is therefore **GRANTED** as to those two categories.

*Griffin*, ECF 92 at 3-4.

---

[2]      By "this Court," Nordean appears to be referring to another District Court judge.

The government agrees with the *Griffin* court—cross examination location protocols and VIP-protection operations is "inappropriate and immaterial." Counsel for Nordean, having represented Griffin and "not contest[ed]" this conclusion, appear to agree as well.[3]

As to Nordean's other arguments, the government's motion *in limine* does not seek to limit Nordean's cross-examination of the USSS witnesses as to whether the area Nordean entered "was restricted—as a matter of fact, not law—under § 1752." *Nordean Opposition*, ECF 505 at 6. Because this case does not charge any violation of 18 U.S.C. § 1752, the government submits that any such inquiry about restriction "under § 1752" is irrelevant, but that is not the subject of the government's motion. As a factual matter, beginning around 12:53 p.m., Nordean crashed through barricades plainly labelled "Area Closed" and began his efforts to disrupt the certification through force and other unlawful means. Whether the perimeter and those barricades were erected at the behest of U.S. Capitol Police or U.S. Secret Service is inconsequential, but in either case, the government's motion *in limine* does not seek to limit such inquiry by Nordean.[4] The government seeks only to limit those "inappropriate and immaterial" details related to the two categories set forth in its motion based, in part, on the danger of placing in jeopardy the government's ability to safeguard senior government officials.

## IV.   Examination of Confidential Human Sources

Nordean asserts that the government's motion for limitations on testimony related to Confidential Human Sources ("CHS" or "Sources") "must be rejected" both for procedural reasons

---

[3]    Griffin was represented by David and Nicholas Smith, who filed a 12-page response to the government's motion *in limine* in *Griffin*. *Griffin*, ECF 75.

[4]    For the avoidance of doubt, the government reserves the right to object to the relevance of such lines of cross examination based on the testimony at trial.

and on the merits.  ECF 505 at 7-8.  On neither point does Nordean refute the government's arguments about the need to protect witness safety and the sources and methods of the FBI.

To begin, although the government's motion *in limine* referred to "cross-examination" of Sources, the government does not intend to call any CHS in its case-in-chief at trial.  The arguments in the motion *in limine* will apply, however, should defense call any CHS.  The arguments would also apply to cross-examination of Federal Bureau of Investigation (FBI) agents about particular sources or about the FBI's CHS program generally.  (Such cross-examination would likely also be improperly beyond the scope of the direct, because the government does not expect to elicit any CHS-related testimony in its case-in-chief.)

To the extent any CHS witness testifies at trial for any party, the government's request is only for reasonable restrictions that would not impair the defendants' ability to present a defense. If, counterfactually, the government were to call a CHS who "systematically lied to his agent handlers in the past," ECF 505 at 8,  the government would not object to cross-examination about the fact of those lies; it would only seek to keep out any details that might alert others as to their status as subjects of an ongoing investigation or provoke retaliation against the CHS for his or her participation in past investigations.

Accordingly, the Court should adopt the government's proposed limits on testimony about CHS-related topics, no matter which witness is testifying or which party called them.

## V.    Rule of Completeness

As explained in its prior submissions (*see* ECF 512 at 1-3, ECF 515 at 18-19), in accordance with the Scheduling Order entered in this case, the government produced on September 30, 2022, a preliminary exhibit list and also produced copies of the listed preliminary exhibits. The September 30 production included not only the entire message strings included in Telegram, but

also extracted sub-exhibits for the Telegram message strings that are likely to feature most prominently in the case.

Rather than engage on any of the examples offered up by the government, Nordean offers two "hypothetical" examples. It should be noted, and as may be evident from counsel's cartoonish attempt to imitate how Proud Boys speak (*e.g.*, "tough bros"), counsel for Nordean invented these examples out of whole cloth. On information and belief, the language offered by Nordean does not exist in any proposed government exhibit or in any actual chat recovered in the investigation.[5]

Slicing through Nordean's bombast and rhetoric, the issue before the Court is a legal one. Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, *at that time*, of any other part--or any other writing or recorded statement--*that in fairness ought to be considered at the same time*." Fed. R. Evid. 106 (emphasis added). The purpose of this provision is to avoid any "distorting effect of the portions" to be introduced by the government. *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986). The D.C. Circuit has advised that the rule is to be "invoked rarely" and only for the "limited purpose" to ensure that such statements are not "taken out of context. *Id., see also United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) (finding no error in trial judge's application of discretion in admitting a transcript of half of a recording on the basis that the D.C. Circuit was "satisfied that the redacted portion included sufficient contextual matter in addition to the few statements relating to appellant so as not to mislead the jury.")

---

[5] Nordean's counsel then uses his fictional language as a jumping off point to make the bold and wholly inappropriate assertion that the hypothetical examples—*that he made up*—are evidence of the government's "attempt to frame a person." ECF 505 at 9-10. The government will not waste the Court's time with a response to such a suggestion.

The government's position is that Rule 106—the rule of completeness—does not provide an end run of the hearsay rules. *Id.* The rule "goes only so far as is necessary to shield a party from adverse inferences, and only allows an explanation or rebuttal of the evidence received." *United States v. Moussaoui*, 382 F.3d 453, 481 (4th Cir. 2004). The rule of completeness is not to be used "as a means of seeking the admission of" statements that "neither explain nor clarify the statements" designated by the opposing party. *Id.* Thus, the rule of inclusion operates to allow only those other statements that specifically inform what the declarant meant in the statement that has been introduced. It does not provide free range to introduce other hearsay evidence that simply advances the defendants' theory of the case.

In this case, many of the defendants' statements to be offered by the government were made in chat groups, or using social media accounts, that were active over extended periods of time. Rule 106 does not make all statements within these groups and accounts admissible over a hearsay objection, but only those narrow portions that inform the context of the admissible statement such that the facts are not distorted. *Sutton*, 801 F.2d at 1368. Rule 106 is thus a narrow rule that is to be "invoked rarely." *Id.*

## VI.    First Amendment

Nordean argues that the defendants are entitled to a First Amendment defense because engaging in what he terms a nonviolent protest on Capitol grounds is protected by the First Amendment because those grounds are a public forum.  The defense has also proposed a jury instruction on a defense based on the First Amendment that would instruct the jury to acquit unless the government proves beyond a reasonable doubt that the defendants' conduct "did not merely constitute (i) parading, standing or moving in assemblages in a public forum, and not violence or destruction of property, or (ii) agreeing to parade, stand or move in assemblages in a public forum

without the use of force."[6]  The proposed instruction would further tell the jury that, as a matter of

law, the Capitol grounds are a public forum, necessarily implying to the jury that parading,

standing, or moving in assemblages on the Capitol grounds on January 6 was protected by the First

Amendment.

Nordean is incorrect about the status of the Capitol grounds on January 6 as a matter of

law, and he is incorrect that the defendants are entitled to a First Amendment defense—or that they

are entitled to argue the First Amendment to the jury—as a matter of both law and fact.  The Court

should both preclude argument as the government argued in its motion *in limine*, and it should

refuse to give the requested instruction.

"[A] defendant is entitled to an instruction as to any *recognized* defense for which there

exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485

U.S. 58, 63 (1988) (emphasis added).  The Court must give a requested instruction "only if the

instruction is substantively correct, not already substantially covered in other instructions given to

the jury, and concerns an important point in the trial such that the failure to give it seriously impairs

the defendant's ability to present effectively his defense."  *See*, *e.g.*, *United States v. Thomas*, 114

F.3d 228, 244 (D.C. Cir. 1997).   Courts have generally recognized the right to a First Amendment

defense only in cases where words form the *actus reus* of the offense.  *See United States v.*

*Freeman*, 761 F.2d 549, 551-52 (9th Cir. 1985) (soliciting a violation of the tax code at seminars);

---

[6]      Rehl has proposed an additional First Amendment instruction that would, among other
things, instruct the jury that "statements of a point of view on a political, social, or religious issue
may never be treated as evidence of a crime."  This proposed instruction is legally unsupported for
the reasons articulated in the government's filings on the First Amendment to date, ECF 489 at
24-28 and ECF 510. *See also Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (holding that the
First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a
crime or to prove motive or intent").

*United States v. Fleschner*, 98 F.3d 155, 158 (4th Cir. 1996) ("A First Amendment defense is warranted if there is evidence that the speaker's *purpose or words* are mere abstract teaching of the moral propriety of opposition to the income tax law") (emphasis added); *United States v. Clement*, 738 F.3d 1, 8-9 (1st Cir. 2013) (upholding instruction defining "threat" in a threats case to ensure the jury did not convict for First-Amendment-protected words); *United States v. White*, 698 F.3d 1005, 1019-20 (7th Cir. 2012) (solicitation to commit a crime of violence).  The defendant has not cited a case requiring a First Amendment defense where the defendant's words do not form the *actus reus* of the offense.

Nordean's request to argue the First Amendment to the jury is supported by neither substantive case law nor the facts of this case.

### A. Because the Capitol Grounds were restricted on January 6, there was no right to protest there

Defendant argues that because the Capitol grounds are generally viewed as a public forum, he cannot be convicted if all he did was nonviolently protest there.  ECF 505 at 11-12.   Nordean is correct that the Capitol grounds are usually a public forum. *See Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) (three-judge panel) *sum. aff'd*, 409 U.S. 972 (1972).  The problem with the defendant's argument is that a portion of the Capitol grounds were closed and restricted on January 6, 2021.  The government can—and did on January 6— restrict an area that is a traditional public forum for legitimate government ends.  *See Mahoney v. U.S. Marshals Service*, 454 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (Lamberth, J.) (U.S. Marshals Service did not violate First Amendment by restricting access to sidewalk in front of St. Matthew's Cathedral for Red Mass, even though sidewalk was a traditional public forum).

The cases cited by the defendant about the Capitol grounds—*Jeanette Rankin Brigade* and *Lederman v. United States*, 291 F.3d 36, 39 (D.C. Cir. 2002) both address general restrictions to

the Capitol grounds that applied at all times—a ban on parading, moving in assemblages, and the like in *Jeanette Rankin Brigade*, 342 F. Supp. at 577, and a ban on leafletting in specific areas in *Lederman*.   291 F.3d at 389-90.   Courts struck down those regulations, given that they would restrict nonviolent speech in a public forum on a regular basis.   By contrast, the restricted perimeter set up by law enforcement on January 6, 2021, was temporary and driven by the need to protect the members of Congress and the Vice President who would be conducting the certification inside the Capitol building.

If the defendant's theory that parading, standing, or moving in assemblages on the Capitol grounds is always permitted, access to the Capitol grounds could not be restricted for, *e.g.*, Presidential Inaugurations.   Such a result defies all logic, and courts unsurprisingly have upheld temporary closures of traditional public fora for safety reasons.   *See Mahoney*, 454 F. Supp. 2d at 21; *Menotti v. City of Seattle*, 409 F.3d 1113, 1129-30 (9th Cir. 2005) (finding that an emergency order closing a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions"); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1222  (10th Cir. 2007) ("In this case, there can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order"); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street-closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of the delegates).   On January 6, 2021, however, the United States Capitol Police and the United States Secret Service coordinated to establish a restricted perimeter around the Capitol building that

encompassed a portion of the Capitol grounds.  No member of the public, including the defendants, had a First Amendment right to engage in protest or speech within that restricted area.

**B.  The defendants are not entitled to a First Amendment defense as a matter of law**

Nordean contends that he is entitled to argue a First Amendment defense to the jury because 18 U.S.C. § 1512(c)(2) "could criminalize nonviolent protest outside the Capitol Building."  ECF 505 at 11.  His papers give away the reason this is incorrect: the obstruction statute requires that the defendant act "corruptly," which this Court noted, in this context, means "wrongfully," or in other words, "contrary to law, statute, or established rule." *See* ECF 263 at 24.[7]  Thus, even in Nordean's hypothetical situation where someone is convicted of obstruction for a nonviolent protest outside the Capitol, that conviction can only be sustained if the defendant acted contrary to law (implicitly some law other than the obstruction statute itself).  The First Amendment does not protect such corrupt action, as this Court has held.  *See id.* at 29.  Putting aside the conspiracy counts, the defendants' actions on January 6th were contrary to law from the moment they crossed into the restricted area and onto the Capitol grounds, regardless of what conduct they engaged in on those grounds.  *See* 18 U.S.C. § 1752(a)(1).[8]

Nordean likewise expresses concern (ECF 505 at 11) that the verb "influence" could extend liability under Section 1512(c)(2) to reach noncriminal speech.  But there is a simpler solution to

---

[7]     Nordean unpersuasively attempts to explain away the "corrupt" requirement by stating that the government's view of the definition of "corruptly" and conduct to which 18 U.S.C. § 1512(c)(2) applies "deracinat[es] the terms "wrongful" and "evil" from their historic meanings. The Court has already rejected that argument in denying the defendant's motion to dismiss.  ECF 263.

[8]     For this reason, the defendant's citation to *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 889 (1982) in inapposite.  The defendants here were all committing illegal acts solely by being in the restricted grounds on January 6, 2021, and the First Amendment does not preclude their punishment for actions they or their co-conspirators took.

that potential concern than the unprecedented and legally flawed First Amendment instruction that the defendants propose.  Instead, the jury instructions could omit the verb "influence."  *See, e.g.*, *United States v. Reffitt*, No. 21-cr-32, ECF No. 119 at 25 (D.D.C. Mar. 7, 2022) (jury instructions omitting "influence" in count charging a violation of Section 1512(c)(2)); *United States v. Jensen*, No. 21-cr-6, ECF No. 95 at 27 (D.D.C. Sept. 22, 2022) (same).

The conspiracy offenses in this case get the defendant no closer to a cognizable First Amendment defense.  None of those statutes punish speech itself.  Title 18, United States Code, Section 2384 punishes only, as charged in this case, an agreement to use force to either (1) oppose the authority of the United States, or (2) prevent, hinder, or delay the execution of any law of the United States.  *See United States v. Rahman*, 189 F.3d 88, 114 (2d Cir. 1999) (rejecting a "generalized First Amendment challenge" on the ground that Section 2384 "proscribes 'speech' only when it constitutes an agreement to use force against the United States")  Similarly, section 372 punishes a conspiracy to "*by force, intimidation, or threat* . . . induce any officer of the United States" to leave a place or discharge his or her duties, as defined by the statute (emphasis added). Section 1512(k) has the same requirement that the defendant acted corruptly, as defined above.[9] The jury will be instructed that it must find beyond a reasonable doubt that the defendant agreed to use force in the case of § 2384, to act by force, intimidation, or threat in the case of § 372, or to act corruptly, in the case of § 1512(k). Nordean is free to argue—and he no doubt will—that the

---

[9]     Nordean contends that the need to argue the First Amendment is "even more acute" if the government argues that "the 'criminal agreement' consisted of Defendants' alleged plan to protest *outside the Capitol Building*."  ECF 505 at 12 (emphasis in original).  This reasoning suffers from the same flaw as above.  It was unlawful for *any* unauthorized person to enter the Capitol grounds on January 6, 2021, whether for protest or any other reason.  Neither *Jeanette Rankin Brigade* nor *Lederman*, the two cases on which the defendant principally relies, stands for the proposition that the First Amendment protects the right to cross lawfully erected police lines to then, once on the grounds, engage in protest, as Nordean's argument suggests.

government has not met its burden to prove those elements after trial. If the jury does not find that the defendants acted with the intents laid out above, it will be instructed to acquit the defendants of that charge. Conversely, if the jury finds that the defendants formed these agreements with the requisite intent, the First Amendment provides no defense for their conduct. Any argument on the First Amendment—and any associated jury charge—is thus irrelevant. *See United States v. Rowlee*, 899 F.2d 1275, 1281 (2d Cir. 1990) (Although the District Court gave a First Amendment instruction, none was required, and the charge "complicated the case by requiring a jury to consider a duplicative and unnecessary issue" because "[i]f the defendants did not violate [the tax fraud statute, 26 U.S.C.] section 7206(2), the restrictions imposed by that statute did not violate their First Amendment rights. If they did violate section 7206(2), they were not protected by the First Amendment").

The defendant is consequently not entitled to an additional instruction on the First Amendment, nor is he entitled to argue any such defense to the jury. He is certainly not entitled to argue that because the Capitol grounds are a public forum—when they were closed to the public on January 6—that any actions (nonviolent or not) he took thereon were protected by the First Amendment. If the Court is inclined to give any instruction or to allow any argument, it should confine that instruction and argument to the area outside of the restricted perimeter of the Capitol grounds and not endorse the unsupported Capitol building/Capitol grounds distinction urged by Nordean.

## C. The facts will not support the defendants' requested argument or instruction

Even if the defendants were entitled to a First Amendment defense as a matter of law on these charges—and they are not—the facts at trial will not support such a defense. Although it was lawful to establish the restricted zone around the Capitol grounds, the operative question for this Court in this case is not whether law enforcement had the authority to restrict access to the

16

Capitol grounds given those grounds' status as a traditional public forum, but whether it *did*.  Not only did law enforcement unquestionably restrict access to the grounds, but the defendants knew as much well before they assembled their men at the Peace Monument shortly before 1:00 p.m. The below screenshot, which is from approximately 11:21 a.m., shows Biggs, Rehl, and Nordean leading the assembled group of men past the Peace Monument—the very spot where they would lead the first breach of those grounds about 90 minutes later—and looking in the direction of the rows of bike racks and "Area Closed" signs surrounding the Capitol grounds.



When the defendants returned to the area shortly before 1:00 p.m., it was even more clear that the Capitol grounds were restricted by law enforcement.  In the screenshots below, which are taken from the same moment in time, Biggs can be seen on the left leading the crowd in chants of "Whose Capitol? Our Capitol," while the screenshot on the right shows a handful of police officers guarding the pedestrian walkway.



Shortly before the crowd breached these barricades, Rehl stated, "fuck them, storm the Capitol!" Shortly after the breach, as the defendants charged up the walkway, Biggs took a video in which he stated, "American citizens are storming the Capitol – taking it back right now . . . We've gone through every barricade thus far. . . . Fuck you!" In the middle of filming this video, Biggs turned around and captured Nordean making a hand gesture associated with the Proud Boys.

Even viewing the evidence in the light most favorable to the defendants, there will not be sufficient basis for a reasonable jury to find that the defendants were lawfully entering Capitol grounds as required for the Court to give a First Amendment instruction, even if the law could provide for one on these charges in some circumstances. *See, e.g., Mathews* 485 U.S. at 63 ("[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor").[10]

---

[10]    The Court must of course wait until the evidence has been admitted at trial before making a final determination as to whether the evidence supports any instruction.  Thus, if the Court disagrees with the government's position that the defendants may not argue the First Amendment as a matter of law, the Court should not permit the defendants to open on a First Amendment defense until the close of evidence, when it can decide whether any such defense is factually supported.

**VII.** █████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████

████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

## VIII.   CONCLUSION

For the foregoing reasons, the Court should grant the government's motion and admit the

statements described in the government's motion at trial.

<div style="margin-left:40%;">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:    */s/ Jason McCullough*
JASON B.A. MCCULLOUGH
NY Bar No. 4544953
ERIK M. KENERSON, OH Bar No. 82960
NADIA E. MOORE, NY Bar No. 4826566
   On Detail to the District of Columbia
Assistant United States Attorneys
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7233 //
jason.mccullough2@usdoj.gov

By:    */s/ Conor Mulroe*
CONOR MULROE, NY Bar No. 5289640
Trial Attorney
U.S. Department of Justice, Criminal Division
1301 New York Ave. NW, Suite 700
Washington, D.C. 20530
(202) 330-1788
Conor.Mulroe@usdoj.gov

</div>