```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                  CASE NO. 12-20947-CRIMINAL-LENARD
 3

 4   UNITED STATES OF AMERICA,        Miami, Florida

 5              Plaintiff,            August 22, 2013

 6        vs.                        10:55 a.m. to 1:28 p.m.

 7   ADRIAN MARINO, HENRY TARRIO,
     JR., and ROBERTO MARINO,
 8
                Defendants.          Pages 1 to 90
 9   _____

10
                         SENTENCING HEARINGS
11            BEFORE THE HONORABLE JOAN A. LENARD,
                   UNITED STATES DISTRICT JUDGE
12

13
     APPEARANCES:
14

15   FOR THE GOVERNMENT:        VANESSA S. JOHANNES, ESQ.
                                ASSISTANT UNITED STATES ATTORNEY
16                              99 Northeast Fourth Street
                                Miami, Florida 33132
17
     FOR THE DEFENDANT          VINCENT P. FARINA, ESQ.
18      ADRIAN MARINO:          ASSISTANT FEDERAL PUBLIC DEFENDER
                                150 West Flagler Street
19                              Miami, Florida 33130

20   FOR THE DEFENDANT          JEFFREY E. FEILER, ESQ.
              TARRIO:           LAW OFFICES OF JEFFREY E. FEILER
21                              7685 Southwest 104th Street
                                Suite 200
22                              Miami, Florida 33156

23   FOR THE DEFENDANT          ELIO VASQUEZ, ESQ.
        ROBERTO MARINO:         LAW OFFICES OF ELIO VASQUEZ
24                              6780 Coral Way
                                First Floor
25                              Miami, Florida 33155
```

1    FOR U.S. PROBATION:        SARA GARCIA

2    REPORTED BY:              LISA EDWARDS, RDR, CRR
                               (305) 439-7168
3                              Reporterlisaedwards@gmail.com

1          THE COURT:  Good morning.  You may be seated.

2          United States of America versus Adrian Marino, Henry

3  Tarrio, Jr., and Roberto Marino, Case No. 12-20947.

4          Good morning, counsel and Probation.  State your

5  appearances, please, for the record.

6          MS. JOHANNES:  Good morning, your Honor.  Vanessa

7  Johannes on behalf of the United States.  With me at counsel

8  table is Max Trim.  He's with the FDA.

9          THE COURT:  Good morning.

10          MR. FEILER:  Good morning, your Honor.  Jeffrey Feiler

11  on behalf of Henry Tarrio, who's present before the Court.

12          THE COURT:  Good morning.

13          MR. VAZQUEZ:  Good morning, your Honor.  Elio Vazquez

14  on behalf of Roberto Marino, who's present before the Court.

15          THE COURT:  Good morning.

16          MR. FARINA:  Good morning, your Honor.  Vincent Farina,

17  assistant federal public defender, on behalf of Adrian Marino,

18  who's present.

19          THE COURT:  Good morning.

20          Each of these Defendants are set for sentencing today.

21  First, we're going to take up the joint issues.

22          But first of all, let me begin by questioning each

23  Defendant in regard to their -- the presentence investigation

24  reports.

25          Probation, would you state your appearance, please, for

1    the record.  Sorry, Sara.

2         THE PROBATION OFFICER:  Good morning, your Honor.  Sara

3    Garcia with Probation.

4         THE COURT:  Good morning.

5         Mr. Marino, have you read the revised advisory

6    presentence investigation report, Mr. Adrian Marino?

7         DEFENDANT ADRIAN MARINO:  Yes, your Honor.

8         THE COURT:  And have you and your attorney discussed

9    the revised advisory presentence investigation report?

10        DEFENDANT ADRIAN MARINO:  Yes, your Honor.

11        THE COURT:  Mr. Roberto Marino, have you read the

12   revised advisory presentence investigation report?

13        DEFENDANT ROBERTO MARINO:  Yes, your Honor.

14        THE COURT:  And have you and your attorney discussed

15   the revised advisory presentence investigation report?

16        DEFENDANT ROBERTO MARINO:  Yes, your Honor.

17        THE COURT:  And, Mr. Tarrio, have you read the revised

18   advisory presentence investigation report?

19        DEFENDANT TARRIO:  Yes, your Honor.

20        THE COURT:  And have you and your attorney discussed

21   the revised advisory presentence investigation report?

22        DEFENDANT TARRIO:  Yes, your Honor.

23        THE COURT:  Each of these Defendants have filed

24   objections both to the amount and method for calculating loss

25   and the mass-marketing two-level increase.  Is that correct?

1    Are those the joint issues?

2            MR. FARINA:  Yes, your Honor.

3            MR. VAZQUEZ:  Yes.

4            THE COURT:  So let's take up those issues first.  Who

5    wants to proceed first?

6            MR. FEILER:  Well, your Honor, I'll proceed in regard

7    to Mr. Tarrio; and if I could proceed regarding the mass

8    marketing.

9            THE COURT:  Okay.

10            MR. FEILER:  So far as Mr. Tarrio's position is

11    concerned -- and it may very well be different from that of the

12    other Co-Defendants -- according to the factual proffer which

13    was introduced to the Court at the time of sentencing,

14    basically, it indicates that the first involvement that

15    Mr. Tarrio had to do with anything whatsoever in this case

16    occurred on June 22nd of 2012.

17            Prior to that, other events had taken place.  Of

18    course, the shipment had been stolen out of state well before

19    and some of the product made its way into Miami well before.

20            There was no mass marketing that I have ever seen in

21    this case after the time that Mr. Tarrio became involved on

22    June 22nd, 2012.  The Government has filed a couple of exhibits

23    with the Court for purposes of this sentencing hearing,

24    Government's Exhibit A and Government's Exhibit B.  If the

25    Court will take a look at those, you'll notice Exhibit A --

1            THE COURT:  One moment, please.

2            MR. FEILER:  Yes, ma'am.

3            THE COURT:  Under what case and docket entry were they

4     filed, please?

5            MS. JOHANNES:  I have copies for the Court here.

6            THE COURT:  Thank you.

7            MS. JOHANNES:  May I, your Honor?

8            THE COURT:  Yes.

9            Are there any objections to my viewing Government's

10    Exhibits A and B?

11           MR. FEILER:  Certainly not from me, your Honor.

12           THE COURT:  I know you want me to look at them,

13    Mr. Feiler.  I want to hear from the other Defendants.

14           MR. FARINA:  None from Mr. Marino.

15           MR. VAZQUEZ:  None from Mr. Roberto Marino.

16           THE COURT:  Thank you.

17           Now you can proceed, Mr. Feiler.  Sorry.

18           MR. FEILER:  Thank you.

19           Your Honor, regarding Exhibit A, what you'll notice is

20    a document that is captioned Shipping Company as "extra

21    diabetic strips for sale."  If you notice the date, 2012 being

22    the year, 5-3, essentially May 3rd, of 2012, 10:38 a.m.  so

23    this is what the Government says constitutes the mass marketing

24    in the case.

25           If the Court takes a look at Exhibit B, as I had

1  previously mentioned to the Court, Mr. Tarrio's first

2  involvement in the case is that he's essentially an unknown

3  male who had accompanied another Defendant in the case who was

4  using the name Alex.  If you take a look at this document,

5  which is captioned as a purchase order, dated 6-22-2012, and

6  signed by the fictitious Alex --

7        THE COURT:  And you're saying your client is the

8  unknown male that accompanied him?

9        MR. FEILER:  That accompanies Alex.  Right.  And that's

10  Mr. Tarrio's first foray into this venture whatsoever.

11        So at least so far as Mr. Tarrio is concerned, there is

12  no other mass marketing whichever that occurs in the case.  And

13  my position would be, your Honor, that even as a co-conspirator

14  in the case, that Mr. Tarrio's not responsible for the actions

15  of the other co-conspirators, which occurred prior to his

16  involvement in the case.  That's essentially my position.

17        I'm happy to address any questions the Court may have

18  otherwise.

19        THE COURT:  Is this a separate and distinct argument

20  from the arguments of the other two Co-Defendants?

21        MR. VAZQUEZ:  If I may, your Honor, on behalf of

22  Mr. Roberto Marino, his argument, I believe, is even stronger.

23        Based on the factual proffer, he joined the activities

24  on August 17th.  He had not been involved in this enterprise

25  prior to that date of August 17 as part of the factual proffer

1    on Page 3.

2          He's not the a/k/a Alex or individual accompanying the

3    other Co-Defendant, Mr. Adrian Marino.  His involvement came on

4    August 17, and all actions relating to the mass marketing

5    occurred prior to that date and prior to his involvement in the

6    conspiracy.

7          For those reasons, as also delineated in the objection,

8    which is delineated there in my response, he should not be

9    given this two-level enhancement.

10         THE COURT:  There was not a written factual proffer for

11   Mr. Marino, correct, at the time of plea?

12         MS. JOHANNES:  There wasn't a written factual proffer

13   for any of the Defendants, your Honor.

14         THE COURT:  Okay.  Let me hear from Mr. Farina.

15         MR. FARINA:  Your Honor, my client is in a different

16   situation.  We had no objection to that calculation regarding

17   mass marketing.

18         THE COURT:  So you're not objecting to the mass

19   marketing increase?

20         MR. FARINA:  Right; because he was involved in that.

21         THE COURT:  So let me hear from the Government in

22   regard to the Defendants' objections first as to Henry Tarrio,

23   Jr., and then as to Roberto Marino.

24         MS. JOHANNES:  Yes, your Honor.

25         First, your Honor, I'll point out that the

1    mass-marketing enhancement is an offense-based enhancement.

2    It's based on the offense, not necessarily the person's

3    individual role.

4          And the offense here did in fact involve mass marketing

5    to customers to purchase these diabetic test strips.  Adrian

6    Marino is not contesting this enhancement because the

7    craigslist ad you see in Government's Exhibit A, that number is

8    essentially linked to him and was posted by him.

9          But for the Defendants Mr. Tarrio and Mr. Marino to say

10   they did not know mass marketing would be used to target

11   customers is just simply not true.  And we know that for

12   several reasons:  First, the customers in general that came to

13   purchase these test strips from the Defendants by and large

14   were not based in Miami.  They were based in Naples, out of

15   state, in other places.  The only way they were able to in fact

16   get ahold of the Defendants and make contact with them is

17   through the Internet, is through the Defendants' efforts to

18   reach out to a wide variety of customers and to gain

19   essentially business through the Internet.  That was their

20   means of selling this on the black market.

21         This craigslist ad that's at Government's Exhibit A --

22   in fact, there's two ads, your Honor -- are a sample of

23   probably what's indicative of what the Defendants did here in

24   this case.

25         The other thing we know about the Defendants' roles --

1    and I disagree with Mr. Feiler's view that his client just

2    simply showed up for the first sale that occurred, which is at

3    Government's Exhibit B, showed up at that sale as a bystander.

4    And I disagree with that because we know in fact, having spoken

5    to Mr. Tarrio after his change-of-plea hearing, that he was a

6    lead salesperson in this conspiracy.  He did not have the role

7    of just standing in a corner looking at the other two

8    Defendants and seeing what they were doing.  He was a

9    salesperson.  He was contacted by customers after the ads were

10   posted.  He was -- he spoke to them.  He's very savvy.  He's

11   very sophisticated.  He's charming.  He used his own business,

12   Spy, Inc., to transport and hold some of these products.  So

13   just to say he was a simple bystander is not true.  He was very

14   much involved in the conspiracy we have here.

15          With respect to Mr. Roberto Marino, your Honor, Mr. --

16   I understand what Mr. Vazquez is saying, that the sales that he

17   was actually present for that the Government caught him on

18   occurred after the craigslist ad that you see at Government's

19   Exhibit A.

20          But that does not mean the mass-marketing enhancement

21   does not apply to him.  It applies to him because his role was,

22   like Mr. Tarrio, not just simply a bystander.  We know that

23   Roberto Marino is the link to the individuals who in fact stole

24   the cargo.  Mr. Roberto Marino is the one who put this all in

25   place.  His son, Adrian Marino, posted these ads at his

1   father's request.  The fact that he was not physically present

2   for all the sales does not mean that he was not an equal and

3   joint participant in the conspiracy.

4        Last, Judge, the case law makes it very clear the

5   Defendants here have all pled to a conspiracy count.

6        And the case law with respect to the mass-marketing

7   enhancement, especially in the Eleventh Circuit, is clear:

8   When the conspiracy involves mass marketing such as this

9   craigslist ad to a wide variety of customers, a wide variety of

10  people in order to get their business, it doesn't matter if not

11  each and every single Defendant posted that ad.  The fact that

12  they were involved and joined in that conspiracy, the fact they

13  knew those customers were coming in response to some sort of

14  ad, some sort of marketing, makes them equally culpable.  And

15  they pled to that charge.  They pled to that being their role.

16  They pled to being involved in this offense.  And the offense

17  involved mass marketing.

18       Judge, I didn't cite any case law, but I'm going to

19  rely on my pleadings I filed at Docket Entry 100 instead of

20  reciting that for the Judge.  I'm sure your Honor has gone over

21  that pleading in depth.

22       Your Honor, one additional point I will make:  In the

23  factual proffer, Mr. Tarrio did admit his role in the sale to

24  the Larsens.  They were a couple from Minnesota.  And the way

25  the Larsens got to Miami from Minnesota and their involvement

1  as customers in the business dealings with Mr. Tarrio and the

2  other Defendants was in fact a mass-marketing ad.

3          THE COURT:  Mr. Feiler, do you have a response?

4          MR. FEILER:  Yes, your Honor.

5          In regard to the last thing that Ms. Johannes

6  mentioned, the Larsens, who came from Minnesota, that occurs in

7  November of 2011, the better part of a year before Mr. Tarrio

8  had anything to do whatsoever with this; and he certainly would

9  have had no knowledge or anything whatsoever about those folks

10  or the manner in which those folks became involved in this.

11          THE COURT:  Well, the Government has indicated it was

12  part of the factual proffer that he had admitted to.

13          Isn't that what you said, Ms. Johannes?

14          MS. JOHANNES:  Yes, your Honor.

15          MR. FEILER:  Mr. Tarrio basically -- I'm sorry.

16  Mr. Tarrio indicates that he does not know where, you know, the

17  Larsens had come from.  In other words, he didn't know they had

18  come from Minnesota.

19          If I could have one second to clarify with my client.

20          MS. JOHANNES:  Your Honor, I will represent in the

21  factual proffer I did state that -- they're from Minnesota, a

22  couple from Minnesota.

23          THE COURT:  They came here to South Florida?

24          MS. JOHANNES:  They came here to South Florida.  They

25  responded to an ad.  I'm not sure if it's this particular ad

1    that's in Government's Exhibit A.  It may have been a different

2    one.

3          They did contact the person known as Alex Gonzalez,

4    which we know is Adrian Marino.  They went to Spy, Inc.  And

5    both Adrian Marino and Henry Tarrio were there to conduct that

6    sale at Spy, Inc.

7          MR. FEILER:  (Confers with client privately.)

8          Your Honor, Mr. Tarrio and I were confused about the

9    dates.  We're going to withdraw our objection.

10          THE COURT:  You're withdrawing your objection as to the

11   mass marketing?

12          MR. FEILER:  Yes, your Honor.

13          THE COURT:  Mr. Vazquez, do you have a response to what

14   the Government stated?

15          MR. VAZQUEZ:  Judge, we stand on our pleadings,

16   arguments previously stated to the Court.  As heard by the

17   Court this morning, the involvement he had was in August 17th,

18   subsequent to all this advertisement or soliciting over the

19   Internet to sell.  And nothing further my client is involved.

20   So we ask the Court to still consider the mass marketing.

21          THE COURT:  In regard to Roberto Marino, I'm going to

22   deny or overrule the objection.  I find that, based upon the

23   relevant conduct, which would include all reasonably

24   foreseeable acts and omissions of others in furtherance of

25   jointly undertaken criminal activity when there is a

1    conspiracy, that he should be held responsible for the

2    mass-marketing enhancement.

3            I base this finding in part on Paragraph 27 of his

4    revised advisory presentence investigation report, in which it

5    states, "R. Marino admitted he hired someone to reprint

6    approximately 6,000 Abbott Labs labels and that the boxes sold

7    using those labels were not reported as stolen.  He also hired

8    an unnamed female to relabel the test strips and agreed to pay

9    her $2,000 to relabel a batch of 4,000 test strips."

10           Therefore, based upon his activities and the number of

11   test strips that were involved, I find that it was reasonably

12   foreseeable that mass marketing would be utilized to market

13   these stolen test strips.

14           And I cite as authority *US versus Mauskar*,

15   M-A-U-S-K-A-R, 557 F.3d 219, a 2009 decision by the Fifth

16   Circuit.

17           Here, "offense" means the offense of conviction and all

18   relevant conduct.  Therefore, based upon both his conduct and

19   the reasonably foreseeable relevant conduct of others regarding

20   this very large number of test strips that he was involved in

21   the relabeling, I find that the mass-marketing enhancement

22   should apply to him.

23           Let's now move on to the loss objection by all the

24   Defendants.

25           Mr. Farina, do you want to be heard first?

1          MR. FARINA:  Yes.

2          Your Honor, our objection that we filed was to the loss

3    amount at Paragraph 38 entitled Specific Offense

4    Characteristics.

5          That paragraph held Adrian Marino accountable for a

6    loss of over $2 million, which in this instance increased his

7    offense level by 16 levels.

8          Essentially, the Government is holding him responsible

9    for the value of these items that were stolen in the truck

10   hijacking in Louisville, Kentucky, in the summer of 2011.

11         We objected to this.  And the reason is simply this:

12   The most reasonable way to address this issue is, what is the

13   amount that my client was involved in selling or attempting to

14   sell here?

15         THE COURT:  Is that the provision under the sentencing

16   guidelines?

17         MR. FARINA:  Well, what I'm saying is it's reasonable

18   that in calculating the amount of money you are able to make a

19   determination regarding actual and intended loss and what is

20   the actual loss.

21         In this case, we're saying that you can compute a

22   reasonable amount of loss here because we know that the value

23   of these strips, even at a retail value at a Wal-Mart, are

24   between $58 to $63 per box.

25         What I did was I took the 6,000 boxes and I multiplied

1   it by $60 a box, which is the Wal-Mart number for retail value,

2   and came up with a number of $360,000.  That gave -- that puts

3   it squarely within an offense level of 12 adjustment, which

4   calls for a value between $200,000 and $400,000.

5        If the Court would choose to use that number and that

6   offense level enhancement of 12, my client would fall at an

7   offense level -- adjusted offense level of 20 minus three

8   points for acceptance of responsibility.  He would be at an

9   offense level 17, which -- and a criminal history category II,

10  which calls for a sentence of between 27 and 33 months.

11       The reason I'm -- I think that would be reasonable and

12  appropriate in that guideline range in this case:  One of the

13  other factors that go into this, I think, is the Government had

14  my client's cell number.  If they were concerned that he was

15  involved in this hijacking in June of 2011, it would have been

16  easy for them to track down if he was up in that area at the

17  time of this theft.  We know that the Government can place

18  someone there by their cell phone.  And also, it would prove if

19  they were not there during that period of time and where they

20  might have been during that time.  The Government has that

21  ability.

22       So I would ask the Court to consider that, that this is

23  an appropriate and reasonable number, as opposed to the

24  2 million-plus that the Government has suggested and that the

25  PSI is holding him accountable for.

1       So we're objecting to Paragraph 38.  What we've

2   presented, I think, is reasonable in light of the facts and

3   circumstances regarding this case.

4       Thank you.

5       THE COURT:  Yes, Mr. Vazquez.

6       MR. VAZQUEZ:  Good morning, your Honor, again.

7       On behalf of Mr. Roberto Marino, we're joining in the

8   same request as to Paragraph 38.  The Government has based --

9   or the PSI has indicated it's trying to hold him accountable

10   for the entire hijacking that occurred back in June.

11       My client's involvement, if the Court recalls from the

12   factual proffers in the other objection, was in August of 2011.

13   That's his involvement.  If we take all the information we have

14   in the PSI, specifically Paragraph 27, calculating, like

15   counsel was saying, 6,000 by the numbers, like Wal-Mart, the

16   number squarely falls like 360,000, not 2 million or anything

17   like that.

18       It makes a difference because my client's involvement

19   is so limited in this conspiracy and they're trying to hold him

20   accountable to what happened three or four months ago when they

21   stole, you know, this load up in -- I believe it's Kentucky.

22       My client's involvement in this conspiracy with the

23   other Co-Defendant, if we take the number of 6,000 boxes and do

24   the multiplication, is 360, which gives him for the loss amount

25   instead of a 16 increase, a 12 increase, which would put him

1    squarely within the adjusted guideline range, after we do the

2    appropriate reduction, 17, 27, 33.  I think that is reasonable,

3    that it's what really is the intended loss.  It's what these

4    folks did, what all of them do together in their conspiracy.

5    My client had nothing to do with anything that happened outside

6    these two that are in court today.

7          So we're asking the Court to consider the actual loss

8    in this case if we take the high.  And the common sense is to

9    be around the 360,000, which gives him a 12-point increase.

10         Thank you, your Honor.

11         MR. FEILER:  Good morning, your Honor, once again.

12         Regarding Mr. Tarrio, your Honor, your Honor, my

13   position is the same in regard to the hijacking of the truck,

14   which occurs on June 24th, 2011, in Kentucky.

15         Certainly Mr. Tarrio and these other folks had nothing

16   to do with the hijacking of the truck itself and all of the

17   things that were stolen from the truck.

18         Apparently, based upon the factual proffer, sometime

19   around maybe September or early in September, another Defendant

20   here becomes involved with these test strips.

21         Mr. Tarrio has nothing to do with the test strips

22   traveling from Kentucky, where they were stolen, to Florida.

23   This precedes any involvement that he has in the case

24   whatsoever.

25         As Ms. Johannes points out, his involvement begins on

1    November 28th of 2011, which is a sale which doesn't actually

2    occur.  There was an attempted sale to the Larsens.  That was a

3    little bit of the confusion that had taken place earlier.  But

4    certainly it's about five months later before Mr. Tarrio even

5    becomes involved in this matter.  The thing is already

6    underway.  His help is enlisted merely essentially in the role

7    of a salesperson as to other transactions that are being

8    arranged.

9         And as I have set forth in my objections, I did various

10   calculations and so forth and I also -- and I actually came up

11   with the concept that if you took the actual transactions, the

12   one actual transaction that he made the sale, and the other

13   transactions that he was close to the action or you could say

14   involved, if you want to stretch it that far, that his actual

15   numbers more likely should have been even under $300,000 in

16   this matter, still falling into that $200,000-to-$400,000 range

17   calculated perhaps a little bit differently, but essentially in

18   that same range as the other Co-Defendants suggest.

19        And I would agree that I think that it's reasonable to

20   hold particularly Mr. Tarrio responsible for the least amount

21   or one of the small -- the least amounts, as his involvement in

22   this thing came later than others and his role in this as a

23   salesperson and not driving the offense, not doing any of the

24   mass marketing, not involved in stealing it and so forth, is

25   diminished in comparison to the hijackers in the first place

1    and the other folks who might have brought the things here.

2          So on behalf of Mr. Tarrio, I would also ask for that

3    $200,000-to-$400,000 range as being a reasonable calculation of

4    his culpability in this matter.

5          THE COURT:  Yes, Ms. Johannes.

6          MS. JOHANNES:  Your Honor, I'll start off by talking

7    about what the guidelines -- the direction of the guidelines,

8    what they give us in terms of calculating loss.

9          Now, loss, if you look at the guidelines and you look

10   at the commentary that deal with what loss is defined as and

11   how it should be calculated, loss is specified as the actual

12   attempted or intended harm of the offense.

13         Now, because the fraud provisions are so broad and

14   because Section 2B1.1 of the guidelines deals with all sorts of

15   fraud, I turn to case law to see what sort of cases I could

16   find that would be particularly on point to see how other

17   district courts calculated loss with FDA cases and cases

18   involving conspiracy and fraud to deal with pharmaceuticals.

19         Admittedly, your Honor, there aren't a whole lot of

20   cases that deal with FDA and fraud that I could put my hand to

21   in the Eleventh Circuit.  But I did find the Eleventh Circuit

22   case which is a published opinion of *United States versus*

23   *Muñoz.*  It is cited in my pleading at Docket Entry 100.  It's

24   430 F.3d 1357.  It's a 2005 opinion.

25         And in that case, what the Eleventh Circuit says is

1   very important in terms of how the Court goes about calculating

2   loss and in terms of how it was calculated with respect to that

3   case and FDA type of pharmaceuticals.

4        What the Court said was:  Loss is not calculated

5   necessarily with precision.  What it is is calculated with a

6   reasonable estimate of the loss, given information available to

7   the Court.

8        And the Court said at that point:  Generally, there's

9   two ways with FDA cases to calculate loss.  It's the loss to

10  the losing victims or the Defendants' net gain; that is, what

11  the Defendants received as a group from all the victims.

12       And in that case, what the district court did was kind

13  of a hybrid method between what the actual loss was and the

14  actual net gain to the Defendants as a group.  And it was a

15  high figure.  The Court said that was reasonable given

16  everything they had known about the Defendants' various roles.

17       Here, Judge, we have actually a little bit more of a

18  defined loss amount in that we actually know what the actual

19  loss is in this case.

20       This is not a restitution hearing.  We're not dealing

21  with restitution and what each Defendant -- their particular

22  role with respect to an actual victim and what they contributed

23  to an actual victim's loss.

24       What we're dealing with is what the loss was to really

25  the end victim in this case, Abbott Laboratories.  And Abbott

1    Laboratories, as has been submitted to the Court, actually

2    submitted to Probation and I provided it to the Court at

3    Government's Exhibit D, and copies were furnished to defense

4    counsel, is essentially a declaration of victim losses.  And it

5    is submitted by the director of product security at Abbott

6    Laboratories, Thomas Kneir, K-N-E-I-R.  And because this

7    sentence was reset three or four times, Mr. Kneir -- I'm

8    butchering his name, I'm sure -- is not here.

9         But this was how Abbott Laboratories calculated their

10   loss value.  Their loss value is based on not the entire

11   truckload.  The entire truckload that was stolen was valued to

12   Abbott Laboratories at close to 4 million.  What they did was

13   the Defendants were involved in the sale of diabetic test

14   strips.  They took those test strips; they took the wholesale

15   value, what they would have gotten, and calculated loss amount.

16        I went a step further, your Honor.  The blood glucose

17   test strips and the Lite glucose test strips are in total close

18   to 37,000.

19        At the change-of-plea hearing, in the factual proffer I

20   proffered to the Court that what was at issue here was the Lite

21   glucose test strips.  So really that's -- that's how all the

22   Defendants are getting the 30,000, 30,960 amount.  Those are

23   the units.

24        Now, everyone here, even the Defendants, are using the

25   wholesale or retail value to calculate their loss amount.

1    What's really at issue here is:  Should the -- should we be

2    looking at the 30,000, which was the amount of the Lite test

3    strips that were stolen in this case, or should we just look at

4    what the Defendants were caught red-handed in dealing with?

5         Well, the loss to Abbott Labs, your Honor, is for the

6    whole amount.  And if you look at the Eleventh Circuit opinion

7    and you look at other cases -- they're not Eleventh Circuit,

8    but they are cited in my brief -- the courts are not just

9    looking at what the Defendants were caught red-handed with in a

10   conspiracy.  That's easy, because that's what law enforcement

11   was able to gather that they did.  We know that they were

12   involved with more than that.  A, this is a conspiracy offense.

13   They are involved with everything that occurred with respect to

14   them having control of these Lite glucose test strips and

15   selling them.

16        The other thing that we know is that they sold -- they

17   rebranded and sold well more than what we actually caught them

18   with.  We know this by their own admissions.

19        Now, Judge, I am not a prosecutor who's a fan of

20   debriefing the Defendants and then using their own statements

21   in court against them if I don't have to.  But I will tell you,

22   they have all been cooperating.  They've all been debriefed.

23   And Mr. Tarrio stated he had close to 30,000 units.  They had

24   close to 30,000 units available to them.

25        So that does correlate with what Abbott Labs is

1    calculating as the amount that was on that truckload and the

2    amount that they lost.

3            Mr. Vazquez has stated that his client had a very

4    limited role, that he literally was someone who just walked in

5    on one sale, happened to count some money and leave.

6            That's just not true, not what Mr. Roberto Marino has

7    proffered to the United States as part of his cooperation.

8    It's not true with what we know in putting together the pieces

9    of this puzzle and figuring out what happened here.

10           Roberto Marino is the link between these Defendants and

11   the individuals who had access to and stole the cargo theft.

12           THE COURT:  That's what the report says.  The

13   presentence investigation report indicates that.

14           MS. JOHANNES:  Correct, Judge.  And that's in the PSI.

15   But I just wanted to point that out because several times now

16   Mr. Marino seems to be backing away or backpedaling from his

17   role in this conspiracy as to just the one sale that he was

18   involved with, which I proffered to the Court at the

19   change-of-plea hearing.

20           We've learned much more than that after that.  We've

21   learned much more about this case.  And Mr. Marino can't have

22   it both ways.  He can't sit down and cooperate with the

23   Government.  He can't plead to a conspiracy count and now

24   backpedal for purposes of trying to limit his role at

25   sentencing.  That's just not the way it works.

1          The fact is, he is the link.  His son, Adrian Marino,

2     by and large was acting at his father's behest.  Henry Tarrio,

3     Jr., was probably in dire economic times and was using his

4     business to help get out of it.  But Roberto Marino had a big

5     role in this, and he had a big role of leading the other two

6     Defendants down this path.  So I just wanted to make that clear

7     for the Court.

8          And with respect to Mr. Farina's comment about the

9     Government could figure out who was present in Kentucky at the

10    time this truck was stolen, that's, as the Court may know, not

11    an easy task.  If the Government could figure that out in all

12    these cases, we would try to.

13         What we do know and the facts that we have at hand here

14    is that the Defendants were involved in much more than selling

15    6,000 boxes of diabetic -- the glucose test strips.  They were

16    involved with dealing with many more clients.  They had -- they

17    were involved in much more sales.  They were involved with

18    having access to 30,000 units based on their own admissions.

19         And they're all involved in this.  In some level and in

20    some form, they were all involved in this conspiracy.  They

21    worked together to make sure that this got done.  Frankly,

22    Judge, if they weren't arrested, they probably still would have

23    been selling these test strips.  That's also how we know that

24    their role was not just limited to 6,000 boxes.

25         Last, Judge, I'll just end with relying on the case law

1  that I cited and relying on the precedent from the Eleventh

2  Circuit and other district courts that when it involves a

3  conspiracy and when it involves products such as FDA products

4  or other pharmaceuticals or even healthcare fraud, Judge, the

5  co-conspirators are held responsible for reasonable foreseeable

6  acts and reasonable foreseeable loss in the products that they

7  were dealing with.

8          Here, the Defendants knew the products had value.  They

9  knew that they had significant value.  Hence, they wouldn't

10 have been in this business.  And they knew that they had

11 something that, even if the boxes had expired, they would

12 rebrand them to change that.  And the reason for that is

13 because there was money in this business.

14         And Abbott Labs' loss calculation is the loss

15 calculation we should be using, because that is the net gain

16 that these Defendants got.  They got the net gain of what

17 Abbott Labs lost.

18         MR. FARINA:  Your Honor, while they may, according to

19 Mr. Tarrio, have access to additional strips that were taken,

20 they were not involved in that theft.  And I think that's

21 important for the Court to recognize.

22         Through whatever means, this material came to their

23 knowledge; and then my client began buying them at the reduced

24 price and offering for sale.  He's accepted that.

25         The fact that the person that ripped off this truck may

```
1    have had 60,000 or 70,000 or more, but right now we've got at
2    least -- we're dealing with 30,000 strips, doesn't mean that my
3    client should be responsible for those 30,000 just because
4    someone has said:  Yeah, well, I've got more if you want them
5    and we'll deal with it.
6            In every crime, if a drug dealer is not stopped, he
7    would continue selling drugs.  I mean, this argument really
8    is -- and it does, I think, go to some of the information
9    that's been given the Government during our cooperation.  So --
10   and I think that's important to note, because that's
11   information that a client is encouraged to do.  And we have
12   been cooperating.  We were going to get into that at another
13   time and what that means.
14           But to hold these men responsible for 30,000 more when
15   they've been attempting to point out and assist in getting this
16   other person who's got these other strips and is selling them
17   to other people, not just to them, so I think to hold them
18   responsible for 30,000 is not reasonable in this case.
19           Thank you.
20           MR. VAZQUEZ:  If I may, your Honor, for Mr. Marino.
21           Judge, Mr. Marino, Robert, what the Government is
22   saying is what Mr. Tarrio's indicated, that the person who
23   provided these test strips has access to 30,000, not that they
24   possessed or had in hand the ability to sell those in the
25   street.
```

1          The way I'm reading his statement was, he can go to the

2    same person who gave him the other 6,000, 4,000 and get it.

3    He's relying that that person is telling the truth.  We don't

4    know that.  It's not that any one of these three Defendants had

5    it and they can sell it immediately.

6          Like Vince is saying, a drug dealer, they go back to

7    the same source.  "Yeah, I have more."  How do we know that?

8    We don't know that.  They may be saying this statement to get

9    back if they want more to see if he could get it from wherever

10   he got it.

11         The Government is relying on this statement at 30,000.

12   We're in this posture right now.  Instead of 12, we're looking

13   at 16, because they relied on the statement made by the

14   Co-Defendant that was given to this Co-Defendant by the person

15   who actually gave the strips to them initially.

16         I think we're going too many steps forward to hold

17   accountable these folks for an amount that they never possessed

18   or had it actually in their possession to sell.

19         Thank you.

20         MR. FEILER:  And on behalf of Mr. Tarrio, your Honor,

21   oftentimes, this Court sees in the context, for example, of

22   drug cases conspiracies where 1,000 kilos are alleged and a

23   number of Defendants have pled guilty to something and one

24   Defendant was involved in one- or two-kilo deals and so forth

25   and so on.

1          The Court has to figure out:  Well, are you going to

2    hold a gentleman who's been involved with, you know, two

3    one-kilo sales responsible for 1,000 kilograms for the entire

4    conspiracy?  And, you know, at some point it becomes ridiculous

5    and the Court says:  Well, that just shouldn't be the case and

6    has to make decisions as to how to ultimately segregate each of

7    the responsibility as to each person.

8          And I submit that in this situation, as I understand

9    it, there was one time where a confidential informant had

10   called in asking for 10,000 boxes of test strips; and he was

11   told that they couldn't fill that order because they didn't

12   have 10,000 test strips.

13         I think Mr. Vazquez makes a very good point to the

14   Court, and that is that where Mr. Tarrio has a general

15   understanding and has related his general understanding that

16   they could somehow or other possibly obtain as many as 30,000

17   boxes of these test strips, these were not like warehoused

18   items that these folks had in their possession ready to go and

19   should all jointly be held responsible for as if they were in

20   their own hands.

21         Mr. Tarrio in looking at him in particular is in the

22   role of a salesman.  So he's certainly not the person who stole

23   these strips.  He's not the person who arranged for these

24   strips to come to Miami.  And he finds himself basically

25   saying:  Okay, you know.  And he's not arranging the various

1    individual sales that are going on.  He's told that there's

2    somebody coming from someplace to buy X amount of boxes of this

3    and he is now going to become involved in the role of a

4    salesman for negotiating a price and things of that nature.

5         So, you know, I think that you would liken him more

6    towards the person in that drug conspiracy who has a limited

7    role as opposed to an overall knowledge of the whole thing.

8    You know, I think that it would make sense to hold Mr. Tarrio

9    responsible for the deal he actually does, for a couple of

10   deals that he had some participation in, even a deal that he

11   has -- that doesn't even go through, but that he's involved in

12   and so forth.

13        But to hold him responsible for 30,000, theoretically,

14   boxes which could possibly be -- that someone else has stolen,

15   it's just too much.  I would submit to the Court that if you

16   segregate out Mr. Tarrio's real involvement in the case and so

17   forth, that he really goes down to more like that

18   $200,000-to-$400,000 range.

19        MS. JOHANNES:  Your Honor, may I clarify something?

20        THE COURT:  Yes.

21        MS. JOHANNES:  Mr. Feiler did reference a sale, a

22   confidential informant calling in to ask about 10,000 test

23   strips.  That did occur.  But the problem was not the quantity;

24   it was pricing.  They had several conversations, and the issue

25   they were going back and forth on was the price, because the

1    confidential informant was trying to get the best price

2    possible for these large quantities because, frankly, when the

3    Government makes a buy and does a buy/walk, we need to have the

4    money in hand.  And the agencies don't have a lot of money

5    right now.  So we need to get that price down in order to make

6    those buy/walk sales.

7           So the problem in that sale was not the 10,000 test

8    strips, but the pricing and whether or not we could get them to

9    come down enough so that the Government would have enough money

10   to do the buy/walk.

11          Judge, Mr. Feiler is correct:  If this was a drug case

12   and it was 1,000 kilos, all Defendants could theoretically be

13   held responsible for 1,000 kilos in a conspiracy.  And that

14   does happen.

15          It really is up to the Court to determine what's

16   reasonable and what's reasonable that these Defendants could

17   have foreseen being held accountable for, could have foreseen

18   dealing with, could have foreseen really the quantity that they

19   were dealing with.

20          Here, we know that it's not just 6,000.  We know that

21   it's not limited to just 6,000 boxes.  It's not limited to just

22   the amount that they were caught red-handed with.  It is more

23   than that.  And the question is:  Well, is it 30,000?  Which

24   they somehow knew was available to them.  They've stated they

25   knew it was available to them.  And that amount is just not out

1    of thin air.  If it was an amount that we didn't have

2    corroboration for, that would be one thing, your Honor.  But

3    Abbott Labs, their very numbers are the same numbers what the

4    Defendants knew they had access to.  So clearly, there is a

5    correlation between them knowing the amount of cargo that was

6    stolen and the amount of cargo that was available to them for

7    resale at the time.

8           Whether they had it in their physical hand doesn't

9    really matter.  They had access to somehow sell it.

10          This is a case where we have a fixed product.  We have

11   a fixed amount and we have an actual loss from a victim in this

12   case who frankly could never resell these things again and who

13   has incurred a huge loss in this case.

14          Thank you.

15          THE COURT:  Mr. Farina, how is it that you come to the

16   6,000 boxes from the relevant conduct?  Is that what you told

17   me?

18          MR. FARINA:  Yes.  I estimated 6,000.  I thought that

19   was the number that had been actually either in their

20   possession or sold by my client.

21          THE COURT:  Oh, okay.  Because when I add up all the

22   boxes in the relevant conduct for this conspiracy --

23          MR. FARINA:  It's not -- maybe I'm wrong.

24          THE COURT:  -- it's 31,200.

25          MR. FARINA:  I'm sorry?

1          THE COURT:  31,200 boxes is what I come out with.

2          MR. FARINA:  Well, are --

3          THE COURT:  That's from reading the relevant conduct.

4   Let me recite that so you can -- I'll allow the parties to

5   state their position.

6          I first look at Paragraph 16:  The CI engaged Alex in

7   negotiations which resulted in a purchase of 2,000 boxes.

8          Subsequently, Paragraph 17:  Subsequently, the CI tried

9   to negotiate the purchase of 15,000 boxes.  And there's

10  discussion about how much each box is going to sell.  And

11  Adrian Marino indicates that he only -- he will not reduce his

12  price below 7 because he has people who are willing to pay up

13  to $11 per box.  So that's an additional 15,000.

14          MR. FARINA:  Well, see, I did not count, Judge, that.

15          THE COURT:  Okay.

16          MR. FARINA:  Because no transaction occurred there.

17          THE COURT:  But there's a willingness for a transaction

18  to occur.  The argument is over price.  So let me just

19  continue.

20          MR. FARINA:  All right.

21          THE COURT:  So next we have 1,000 boxes that's

22  purchased by P.H. and C.H., Paragraph 18.

23          Then we have Paragraphs 19 and 20 and 21, which is the

24  1200 boxes that Diabetic Supply Salvation purchases.

25          And then we have the undercover officer arranging and

1    paying for an additional 2,000 boxes from Roberto Marino.

2          So in my calculation, that comes out to 31,200 boxes.

3          MR. FARINA:  What I was counting, Judge, was the 2,000,

4    the 1,200, the 1,000 and the other 2,000, because Mr. -- my

5    client, Mr. Marino, did not have the money to buy the boxes

6    that -- from the person that was offering that to him for him

7    to then sell to the undercover or the CI.  He didn't have --

8          THE COURT:  Where is the evidence of that in the

9    relevant conduct?

10         MR. FARINA:  Your Honor, that, I believe, occurred

11   during my client's debrief, where he explained that he never

12   had -- he had to go and contact somebody regarding those boxes.

13   He didn't have them --

14         THE COURT:  Well, I don't have the debrief facts

15   available to me.  So the Government tries to rely on it for one

16   reason and now you try to rely on it for another reason.  If

17   you want to make those facts available to me, I'll evaluate

18   those facts.  But I'm looking at the relevant conduct.

19         MR. FARINA:  I understand.

20         THE COURT:  At this point, I'm not relying on any

21   debriefing, because those are not facts that I believe are

22   properly before the Court.  If the Government and the

23   Defendants want to present those facts to me, I'll be happy to

24   consider them.  But based upon the relevant conduct, I come out

25   with 31,200 boxes.

1          MR. FEILER:  Your Honor, mathematically, if I can

2     interrupt, as I understand it, it's 2,000, 15,000, 1,000, 1,200

3     and 2,000.  I think that's actually 21,000.

4          THE COURT:  My math might be wrong.

5          MR. FEILER:  It's actually --

6          THE COURT:  21,000.  You're right.  21,200.  You're

7     correct.  Thank you, Mr. Feiler.

8          So by the relevant conduct, we have 21,200.  So my

9     calculation, 21,200, the wholesale price being 56.99, which is

10    what's provided in Exhibit D, is $1,208,188.

11         MR. FARINA:  Your Honor, if I may -- or should I wait?

12         THE COURT:  And with the compensation from the

13    insurance of 88,492, it's 1,119,696.

14         Yes, Mr. Farina.

15         MR. FARINA:  Judge, it was in the discovery we received

16    that the conversation of the undercover -- of the confidential

17    informant and my client was documented.  And what had happened

18    was, he approached my client for that, but my client did not

19    have access to those 15,000 and that's why no deal for 15,000

20    was ever done.

21         So that's -- in other words, he approached him.  He

22    said he wanted 15.  My client didn't have the 15,000 packages.

23    So that's why that never came to fruition.  So that was just a

24    conversation where he approached my client and my client didn't

25    have it.

1          MS. JOHANNES:  Your Honor, may I?

2          THE COURT:  Yes.

3          MS. JOHANNES:  What was provided in discovery, your

4    Honor, is what we actually have at Paragraph 17.  The way that

5    this 15,000 total for the 15,000 boxes in the CI negotiation

6    with Mr. Adrian Marino, the way that number is calculated is,

7    they first discussed getting 5,000 boxes.  And then they

8    discussed in a week or two getting an additional 10,000 boxes

9    for a total of 15,000 boxes.

10          And then they discussed -- well, at least for the first

11   five and then subsequent ten, since it was a total of 15,000,

12   the CI was trying to negotiate a price.  The CI was trying to

13   negotiate the price of $7, and he wouldn't sell him anything

14   below 11 because he said he can get $11 a box, so why would he

15   make that sale?

16          That's what's in discovery.  I have it here.  That's

17   how Paragraph 17 -- that's where the facts came from to make

18   Paragraph 17 for a total of 15,000 and the $10,000 in sales,

19   what Mr. Feiler was referencing earlier.  So it was the 5,000,

20   10,000; the discussion was for a total of 15.  And FDA and FBI

21   frankly just can't pay $11 a box in a buy-walk for 15,000

22   boxes.

23          I also wanted to just say to the Court, irrespective of

24   what happened in the debriefings, I think that the Court has

25   enough in the PSI and at Government's Exhibit D to calculate

1    the loss over a million.  The only reason that I raised

2    anything that happened in the debriefings, frankly, is because

3    I was surprised by Mr. Roberto Marino's diminishment of his

4    role in this setting.  I didn't expect that.  So I had to

5    clarify that for the Court, because it's simply not what I know

6    to be true.

7         THE COURT:  Pursuant to *Muñoz*, at 430 F.3d 1357, a 2005

8    decision by the Eleventh Circuit, the Court is directed to make

9    a reasonable estimate of loss given the available information

10   based upon and supported by reliable and specific evidence.

11        So on that basis, I turn to the relevant conduct that

12   has not been disputed by any of the Defendants in this case.

13   This relevant conduct is reasonably foreseeable to all of the

14   Defendants.

15        And I make the finding of 21,200 boxes, which is as

16   I've detailed to you specifically as to Paragraph 17.  Adrian

17   Marino doesn't respond to the CI:  I don't have it; I can't do

18   it.  The response is, "I won't do it for 7 because I can get it

19   for 11 per box."

20        And therefore, I find that 15,000 is to be included in

21   the relevant conduct for a total of 21,200 and a loss of

22   1,119,696, which is the wholesale price of 56.99 for the 21,200

23   boxes, minus the $88,492 that Abbott Labs was compensated by

24   their insurance.

25        And this is only for the diabetes FreeStyle blood

1   glucose test strips.  It does not include any of the other

2   stolen Abbott Labs property that was taken from the truck in

3   Louisville, Kentucky, and only holds these Defendants

4   responsible for the actual amount of boxes of these test strips

5   that they were involved in either providing or negotiating for.

6          And therefore, I find that the 16-level increase

7   pursuant to 2B1.1(b)(i) is appropriate, as the loss is over

8   $1 million.  And therefore, the joint objections are overruled.

9          Does that take care of all of the objections?

10          MR. VAZQUEZ:  Yes, your Honor.

11          MR. FARINA:  It does.

12          MS. JOHANNES:  In addition, your Honor, the Government

13   had filed in my response at Docket Entry 100 -- and I did

14   discuss this with Probation, although I don't think Probation

15   filed anything subsequently; it's on Page 7 of my response --

16   whether or not the two-level enhancement under 2B1.1(b)(4)

17   should apply.  And that is an enhancement because the offense

18   involved receiving stolen property; and the Defendants were in

19   the business of receiving and selling that stolen property.

20          THE COURT:  What is the Government's position for the

21   second prong of that two-level increase, and that the Defendant

22   wasn't a person in the business of receiving and selling stolen

23   property?

24          MS. JOHANNES:  Judge, all the Defendants knew -- it's

25   in the factual proffer, in the PSI -- that the property was

 1    stolen.  They knew that the property had to be rebranded and

 2    relabeled in order to be resold because each of the boxes carry

 3    a number; and if anybody looks up the number, they'll know it's

 4    part of a stolen lot.

 5          The Defendants had a large quantity of the stolen

 6    property.  And they made this their business, to sell it.  They

 7    took significant efforts and extensive efforts, frankly, to

 8    relabel the boxes, make the relabeling look authentic, make the

 9    relabeling look to be able to deceive customers and make this

10    property that would be useful to an end consumer.  They even --

11    some of the boxes had expired and they were relabeled so that

12    the expiration date wouldn't be able to be revealed.

13          It's the Government's position they not only received

14    stolen property but they were in the business of receiving and

15    selling this property.  It was a business to them.  And they

16    functioned like a business.  They operated like a business.

17          I will point to Government's Exhibit B and Government's

18    Exhibit C, which I believe the Court has copies of.  And

19    these -- what these are, Judge, they're invoices that were

20    provided by the Defendants for two of the sales that occurred

21    here.  And the mere fact that they had created invoices to

22    legitimize this business and make it seem to consumers as if

23    this was something legal shows that they were involved in the

24    business.  This wasn't a street sale where they were like:

25    Here.  Here's some test strips.  Just buy it.  It's on the

 1    black market.

 2           That's not what was happening.  They were trying to

 3    make it seem like this had some sort of legitimacy.  That's

 4    what you do when you run a business of stolen goods.

 5           THE COURT:  Yes.  I'll hear a response to the

 6    Government's objection.

 7           MR. FARINA:  Your Honor, I'll object to that.  It

 8    wasn't in the presentence investigation report.  Granted, I

 9    would have thought that the probation officer addressed it.  It

10    was not.  I didn't see it.

11           THE COURT:  Well, the Government addressed it in their

12    pleading and is asking for that two-level increase.  So it's in

13    essence an objection.

14           MR. FARINA:  I'm objecting to it, Judge.  There's --

15    while this incident in and of itself with the selling of the

16    strips may have appeared that way, that was not the business

17    that my client was involved in.  That's what this involved

18    in -- or evolved into, because the opportunity was presented to

19    him.  But dealing in stolen property in general was not his

20    business.

21           And I would ask the Court not to -- based upon

22    everything we know so far in the case, including the -- my

23    argument about the 15 other thousand that my client did not buy

24    or sell, I would ask the Court to consider that in arriving at

25    its totality, in arriving at a sentence, if nothing else, and

1    denying our motion for the reduction but not to give him that

2    two-point enhancement.  I think it's unreasonable in this case.

3              Thank you.

4              MR. VAZQUEZ:  Your Honor, on behalf of Mr. Marino,

5    first of all, Mr. Marino, Robert, the father, is not involved

6    like a fence, selling stolen items.  This is one time and one

7    scenario that he's involved in these test strips being sold.

8    It's not that's what he does for a living or that's the line of

9    work that he does.  It's one incident.

10             His line of work is relating to printing, that he works

11   for a company.  Like all the Defendants in this case, they have

12   their own jobs, their own businesses; and this is an

13   opportunity that was presented.

14             I'd ask the Court that, one, deny the Government's

15   request.  We strongly object.  It's not in the PSI.  And if it

16   was considered to be appropriate, I believe it should have been

17   included by the officer, but it was not.  The officer did

18   not --

19             THE COURT:  Well, I don't understand that argument.

20   The Government has the opportunity to object --

21             MR. VAZQUEZ:  To increase --

22             THE COURT:  -- to an omission from the presentence

23   investigation report, just like the defense has the opportunity

24   to say:  This was applied in error or this was not applied.  So

25   the Government has the right to object.

1           MR. VAZQUEZ:  I agree.  I agree, Judge.

2           But with -- having a report prior to this date, the

3    officer's reviewed it and seen whether or not the Government's

4    posture holds merit.  That would also aid in the Court's

5    decision.  We didn't have that.  We saw that, but we didn't see

6    it in the PSI until now.  I saw it.  I said:  Wait a minute.

7    Why is it not in the PSI?  And I ask the Court to deny it.

8           And the second prong, this is not one of those cases

9    that my client should be held accountable.  This is not the

10   line of business he's in.  He did it one time.  His

11   involvement, as reflected in the factual proffer, is in August

12   of 2011.  He's not -- the other parts you can read in the PSI,

13   other participants, not my client.

14          For those reasons, I ask that you deny this two-level

15   enhancement.

16          MR. FEILER:  Your Honor, on behalf of Mr. Tarrio,

17   Mr. Tarrio is in the business of selling security equipment.

18   As Ms. Johannes had previously indicated to the Court, it was

19   because he was having problems in his own business that, when

20   the opportunity became available here where he could make some

21   more money on the side so that he can keep his business afloat,

22   he ventured into this.

23          So Mr. Tarrio clearly was not in the business of doing

24   this.  He just became involved in these transactions.

25          So for that reason, I think it should be denied.

1          THE COURT:  Yes.  Anything further?

2          MS. JOHANNES:  Judge, it may not have been their

3    primary business, but it was a business that they were involved

4    in.

5          The printing company that Roberto Marino had, Roberto

6    Marino is the person who had a lot of these labels reprinted

7    through his own legitimate business.  The fact that he's

8    running something illegitimate out of a legitimate business

9    doesn't mean that it's not a separate business in and of

10   itself.

11         All of the Defendants' conduct here show that they were

12   not involved in just a single little transaction of one box of

13   test strips.  This was a lucrative business for them.  They

14   made a significant amount of money.  And they had continued to

15   do this.  They had created invoices to give this legitimacy.

16   And they operated this and used their legitimate businesses to

17   facilitate this.

18         THE COURT:  I'm going to deny the Government's

19   objection for an increase under 2B1.1(b)(4).  I do not find

20   that there's a sufficient amount of evidence in the relevant

21   conduct for the second prong to be satisfied; that is, the

22   Defendant was a person in the business of receiving and selling

23   stolen property.  Based upon the offense conduct, I cannot

24   conclude that these were either regular or sophisticated

25   activities, nor do I find the other factors applicable.  While

1    I understand it's a non-exhaustive list, I'm not prepared to

2    make that finding at this time.

3          Does the Government make the motion for the third level

4    off under 3E1.1 as to each Defendant?

5          MS. JOHANNES:  Yes, your Honor.  The Government makes

6    that motion as to each of these Defendants.

7          THE COURT:  And the Court will grant that motion as to

8    each of the Defendants.

9          In regard to Adrian Marino, the Court will adopt the

10   factual findings and guideline applications as contained in the

11   revised advisory presentence investigation report.  Before

12   going further, I would ask counsel to review with me the major

13   calculations in the revised advisory presentence investigation

14   report.

15         The offense level is 21; the criminal history category

16   is Roman numeral II; the advisory guideline range is 41 to 51

17   months' imprisonment, one to three years' supervised release,

18   $7,500 to $75,000.

19         Has the restitution amount been determined or agreed to

20   by the parties?

21         MS. JOHANNES:  Not yet, your Honor.  In fact, Probation

22   and I spoke this morning.  Another victim has sent a loss

23   calculation.  So I think restitution would have to be reset for

24   another hearing.

25         THE COURT:  So no indication of restitution.

1            And $300 in special assessments.  Is that correct in

2    its totality?

3            MR. FARINA:  Yes, your Honor.

4            MS. JOHANNES:  Yes, your Honor, from the Government.

5            THE COURT:  Mr. Adrian Marino, you're in court today to

6    receive your sentence.  Before that happens, I must ask you if

7    there's any legal cause as to why the sentence of the law

8    should not be pronounced upon you.

9            DEFENDANT ADRIAN MARINO:  No.  No, your Honor.

10           THE COURT:  No legal cause having been shown as to why

11   sentence should not be imposed, the Court will consider

12   whatever you may wish to say in mitigation.

13           Mr. Farina?

14           MR. FARINA:  Yes, your Honor.  I'd like to speak first.

15   Thank you.

16           THE COURT:  You can have a seat, Mr. Marino.

17           DEFENDANT ADRIAN MARINO:  Thank you.

18           MR. FARINA:  Your Honor, my client -- and I didn't

19   address these as 3553 factors, but -- and at this time, I just

20   wanted to advise the Court that my client has been cooperating.

21   He was debriefed a couple of times.  He has appeared in front

22   of a grand jury and he has worked undercover in relation to

23   this case and also in assisting --

24           THE COURT:  Do you want me to consider that today or

25   for a later time?

1          MR. FARINA:  No.  But I just wanted to let you know,

2    Judge, I'm not making any argument for any variance or anything

3    because of that.  But at the time, I believe we're going to

4    come back forward regarding a reduction of sentence.  It would

5    be at that time that I would make presentation regarding his

6    full cooperation.

7          But at this time, there are no other reasons for the

8    Court.  I would just ask the Court to give the low end of the

9    guideline range.  I think that's appropriate under the

10   circumstances in this case.

11         THE COURT:  Mr. Marino, is there something you wish to

12   say, sir?

13         DEFENDANT ADRIAN MARINO:  I just want to apologize to

14   my family, my mother and my grandparents.

15         THE COURT:  What does the Government say?

16         MS. JOHANNES:  Your Honor, the Government's position

17   with Adrian Marino is that a sentence of 41 months is

18   appropriate.

19         Adrian Marino is cooperative with the Government right

20   now.  We will be here in another moment at another day for

21   that.  He has seemed to accept full responsibility.  He did

22   not, however, though, have a little role.  He's the one who

23   posted the craigslist ad.  He is the Alex Gonzalez in this

24   case, the individual who met with the most victims.  He's the

25   person who set up most of the postings and did most of the

1    buys.

2         So a sentence of 41 months, we believe, is appropriate

3    for Adrian Marino.

4         THE COURT:  If you would stand with your client,

5    please.

6         The Court has considered the statements of the parties,

7    the revised advisory presentence investigation report, which

8    contains the sentencing guidelines, and the statutory factors

9    set forth in Title 18, United States Code, Section 3553(a)(1)

10   through (7).

11        It is the finding of the Court that the Defendant is

12   not able to pay a fine as well as restitution.  Restitution is

13   mandatory and shall be ordered in this case, to be determined

14   at a later time.

15        Pursuant to the Sentencing Reform Act of 1984, it is

16   the judgment of the Court that the Defendant, Adrian Marino, is

17   hereby committed to the custody of the United States Bureau of

18   Prisons to be imprisoned for 41 months.  This term consists of

19   terms of 36 months as to Count 1 and 41 months as to each of

20   Counts 2 and 5, all to be served concurrently.

21        It is further ordered that pursuant to Title 18, United

22   States Code, Section 3664(d)(5), the victims' losses are not

23   yet ascertainable, and therefore the Court shall set a date for

24   the final determination of the victims' losses.

25        The Defendant shall pay joint and several restitution

1   with the Co-Defendants in this case.  During the period of

2   incarceration, payment shall be made as follows:  If the

3   Defendant earns wages in a Federal Prison Industries job, then

4   he must pay 50 percent of wages earned toward the financial

5   obligations imposed by this judgment in a criminal case.

6        If the Defendant does not work in a Federal Prison

7   Industries job, then he must pay a minimum of $25 per quarter

8   toward the financial obligations imposed in this order.

9        Upon release from incarceration, the Defendant shall

10  pay restitution at the rate of 10 percent of monthly gross

11  earnings until such time as the Court may alter that payment in

12  the interest of justice.  The United States Bureau of Prisons,

13  the United States Probation Office and the United States

14  Attorney's Office shall monitor the payment of restitution and

15  report to the Court any material change in the Defendant's

16  ability to pay.

17       These payments do not preclude the Government from

18  using any other anticipated or unexpected financial gains,

19  assets or income of the Defendant to satisfy the restitution

20  obligations.

21       Restitution shall be made payable to the Clerk, United

22  States Courts, and forwarded to the United States Clerk's

23  Office, Attention:  Financial Section, 400 North Miami Avenue,

24  Room 9N09, Miami, Florida 33128 to be paid to Abbott

25  Laboratories, Abbott Park, Illinois.

1          Upon release from imprisonment, the Defendant shall be

2     placed on supervised release for a term of two years.  This

3     term consists of one year as to Count 1 and two years as to

4     Counts 2 and 5, all such terms to run concurrently.

5          Within 48 hours of release from the custody of the

6     United States Bureau of Prisons, the Defendant shall report in

7     person to the probation office in the district to which he is

8     released.

9          While on supervised release, the Defendant shall not

10    commit any federal, state or local crimes; he shall be

11    prohibited from possessing a firearm or other dangerous device;

12    he shall not possess a controlled substance; he shall cooperate

13    in the collection of DNA and shall comply with the standard

14    conditions of supervised release that have been adopted by this

15    Court and with the following special conditions:

16         The Defendant shall provide complete access to

17    financial information, including disclosure of all business and

18    personal finances, to the United States probation officer.

19         The Defendant shall not apply for, solicit or incur any

20    further debt, included but not limited to, loans, lines of

21    credit, or credit card charges, either as a principal or

22    cosigner, as an individual or through any corporate entities,

23    without first obtaining written permission from the United

24    States probation officer.

25         The Defendant shall obtain prior written approval from

1    the Court before entering into any self-employment.

2         The Defendant shall submit to a search of his person or

3    property conducted in a reasonable manner and at a reasonable

4    time by the United States probation officer.

5         It is further ordered that the Defendant shall pay to

6    the United States a special assessment of $100 as to each of

7    Counts 1, 2, and 5, for a total of $300, which shall be due

8    immediately.

9         Does the Government have a motion to make regarding any

10   remaining counts?

11        MS. JOHANNES:  The Government would dismiss the

12   remaining counts as to this Defendant.

13        THE COURT:  You're making a motion?

14        MS. JOHANNES:  Yes, your Honor.  I'm sorry.  The

15   Government moves to dismiss the remaining counts as to this

16   Defendant.

17        THE COURT:  That motion is granted.

18        Mr. Adrian Marino, it is my duty to inform you, sir,

19   that you have 14 days with which to appeal the judgment and

20   sentence of this Court.  Should you desire to appeal and be

21   without funds with which to prosecute an appeal, an attorney

22   will be appointed to represent you in connection with that

23   appeal.

24        Should you fail to appeal within that 14-day period, it

25   will constitute a waiver of your right to appeal.

1          It is also my duty to elicit from counsel from both

2    sides fully articulated objections to the Court's finding of

3    facts and conclusions of law as announced at this sentencing

4    hearing and to further elicit any objections which either side

5    may have to the manner in which sentence was imposed in this

6    case.

7          Are there any objections from the Government?

8          MS. JOHANNES:  There are no objections from the

9    Government, your Honor.

10         THE COURT:  From the Defendant?

11         MR. FARINA:  Your Honor, the only -- no objection to

12   the manner.

13         Just that we would object to that two-level

14   enhancement, just to preserve that issue.

15         THE COURT:  Which one?

16         MR. FARINA:  This would be -- I'm sorry.  The 16 levels

17   regarding the money.

18         THE COURT:  It's noted for the record.

19         MR. FARINA:  Thank you.

20         THE COURT:  When is he going to surrender?

21         MR. FARINA:  Your Honor, we were going to ask for 60

22   days for some of the reasons I did mention.  I believe the

23   Government can confirm that he has been doing that.  He has had

24   no violations of his pretrial release.  He's been tested over

25   14-plus times for any drugs, dirty urines, with negative

```
 1     results.  So I think he's a good bet on that.

 2             THE COURT:  Any objection?

 3             MS. JOHANNES:  No.

 4             THE COURT:  October 21st, 2:00, at the institution of

 5     designation or at the Marshals Office.

 6             MR. FARINA:  Your Honor, on the designation, I do

 7     anticipate we'll be before you, Judge, again.

 8             But I would just for the record ask that the Court in

 9     the J&C include a camp-type medical facility for my client.  He

10     has a PSI -- he does have some significant health concerns.

11             THE COURT:  I'll recommend that he be placed in an

12     institution where he can receive appropriate medical care.  I

13     don't really make a determination as to what level.  I find

14     that's within the bailiwick of the Bureau of Prisons.

15             MR. FARINA:  Well, thank you, Judge.  Just a strong

16     recommendation regarding his health.  Thank you.

17             MR. VAZQUEZ:  Your Honor, on behalf of Mr. Roberto

18     Marino, he has to go to the facility, like, immediately.  Can

19     the Court excuse him for a minute?

20             THE COURT:  Yes.  We'll take -- let's take a ten-minute

21     recess.

22             MR. VAZQUEZ:  Thank you, ma'am.

23             (Thereupon a recess was taken, after which the

24     following proceedings were had:)

25             THE COURT:  You may be seated.
```

1          United States of America versus Roberto Marino and

2    Henry Tarrio, Jr., Case No. 12-20947.

3          Counsel and Probation, state your appearances, please,

4    for the record.

5          MS. JOHANNES:  Good afternoon, your Honor.  Vanessa

6    Johannes on behalf of the United States.  With me at counsel

7    table is Max Trim from the FDA.

8          MR. FEILER:  Good afternoon, your Honor.  Jeffrey

9    Feiler on behalf of Henry Tarrio, who's present before the

10   Court.

11         MR. VAZQUEZ:  Good afternoon, your Honor.  Elio Vazquez

12   on behalf of Roberto Marino, who is present before the Court

13   for sentencing, the continuance of the sentencing.

14         THE PROBATION OFFICER:  Good afternoon, your Honor.

15   Sara Garcia with Probation.

16         THE COURT:  Thank you.

17         We'll proceed now with Mr. Marino.  The Court will

18   adopt the factual findings and guideline applications as

19   contained in the revised advisory presentence investigation

20   report.

21         Before going further, I would ask counsel to review

22   with me the major calculations in the revised advisory

23   presentence investigation report.

24         The offense level is 21; the criminal history category

25   is Roman numeral I; the advisory guideline range is 37 to 46

1      months' imprisonment, one to three years' supervised release,

2      $7,500 to $75,000 fine and $200 in special assessments.

3              Is that correct in its totality?

4              MR. VAZQUEZ:  Yes, your Honor.

5              MS. JOHANNES:  Yes, your Honor.

6              THE COURT:  Mr. Roberto Marino, you are in court today

7      to receive your sentence.  Before that happens, I must ask you

8      if there's any legal cause as to why the sentence of the law

9      should not be pronounced upon you.

10             DEFENDANT ROBERTO MARINO:  No, your Honor.

11             THE COURT:  No legal cause having been shown as to why

12     sentence should not be imposed, the Court will consider

13     whatever you may wish to say in mitigation.

14             MR. VAZQUEZ:  Judge, I'd ask the Court to reconsider

15     that we filed the objection.  We still -- that's the only

16     objections we have to whatever sentence the Court may impose.

17             But this is very simple, Judge, based on the plea

18     agreement on Page 3, Paragraph 9.  It was the joint

19     recommendation that he be sentenced at the low end of the

20     guideline.

21             THE COURT:  And as far as reconsidering the objections,

22     I have already ruled on the objections and I find that the

23     Court's rulings apply to the reasonable foreseeability of the

24     relevant conduct regarding this Defendant as contained in the

25     relevant conduct as detailed in the revised advisory

1    presence investigation report.

2            Mr. Marino, is there something you wish to say, sir?

3            DEFENDANT ROBERTO MARINO:  Yes.  I'd like to apologize

4    to your Honor, to the Courts and everybody involved.

5            THE COURT:  What does the Government say?

6            MS. JOHANNES:  Your Honor, Mr. Vazquez is correct.  In

7    the plea agreement, we did agree to recommend the low end

8    jointly.

9            I will say that is before the PSI was obviously

10   calculated.  That is before the facts in the PSI at Paragraph

11   27 were fully known to all the parties in this case.  And, you

12   know, it is pretty clear that Roberto Marino had a greater role

13   in terms of relabeling the boxes here, in terms of putting

14   really everything in motion here.  And a sentence at the low

15   end would be, I believe, lower than what his son, Adrian

16   Marino, received, 41 months.

17           I just wanted to point that out to the Court.  Adrian

18   Marino did have a significant role in this case.  But a lot of

19   his involvement came about because of Roberto Marino, which we

20   learned after the recommendation for the low end.

21           THE COURT:  But the Government is recommending the low

22   end, based upon the plea agreement.  Correct?

23           MS. JOHANNES:  Yes, Judge.

24           THE COURT:  The Court has considered the statements of

25   the parties, the revised advisory presence investigation

1    report, which contains the advisory guidelines, and the

2    statutory factors set forth in Title 18, United States Code,

3    Section 3553(a)(1) through (7).

4         It is the finding of the Court that the Defendant is

5    not able to pay a fine as well as restitution.  Restitution is

6    mandatory and shall be ordered in this case.

7         Pursuant to the Sentencing Reform Act of 1984, it is

8    the judgment of the Court that the Defendant, Roberto Marino,

9    is hereby committed to the custody of the United States Bureau

10   of Prisons to be imprisoned for 37 months as to Counts 1 and 2,

11   to be served concurrently.

12        It is further ordered that pursuant to Title 18, United

13   States Code, Section 3664(d)(5), the victims' losses are not

14   yet ascertainable and therefore the Court shall set a date for

15   the final determination of the victims' losses.

16        Upon release from imprisonment, the Defendant shall be

17   placed on supervised release for a term of three years as to

18   Counts 1 and 2, all such terms to run concurrently.

19        Within 48 hours of release from the custody of the

20   United States Bureau of Prisons, the Defendant shall report in

21   person to the probation office in the district to which he is

22   released.

23        While on supervised release, the Defendant shall not

24   commit any federal, state or local crimes; he shall be

25   prohibited from possessing a firearm or other dangerous device;

1  he shall not possess a controlled substance; he shall cooperate

2  in the collection of DNA and shall comply with the standard

3  conditions of supervised release that have been adopted by this

4  Court and with the following special conditions:

5       The Defendant shall provide complete access to

6  financial information, including disclosure of all business and

7  personal finances, to the United States probation officer.  The

8  Defendant shall not apply for, solicit or incur any further

9  debt, included, but not limited to, loans, lines of credit or

10 credit card charges, either as a principal or cosigner, as an

11 individual or through any corporate entity, without first

12 obtaining written permission from the United States probation

13 officer.

14      The Defendant shall obtain prior written approval from

15 the Court before entering or continuing with any

16 self-employment.  The Defendant shall submit to a search of his

17 person or property conducted in a reasonable manner and at a

18 reasonable time by the United States probation officer.

19      It is further ordered that the Defendant shall pay to

20 the United States a special assessment of $100, for each of

21 Counts 1 and 2, for a total of $200, which shall be due

22 immediately.

23      Does the Government have a motion to make regarding any

24 remaining counts?

25      MS. JOHANNES:  Yes, your Honor.

1          The Government moves to dismiss any remaining counts

2     that pend as to this Defendant only.

3          THE COURT:  That motion is granted.

4          Mr. Marino, it's my duty to inform you, sir, that you

5     have 14 days with which to appeal the judgment and sentence of

6     this Court.  Should you desire to appeal and be without funds

7     with which to prosecute an appeal, an attorney will be

8     appointed to represent you in connection with that appeal.

9          Should you fail to appeal within that 14-day period, it

10    will constitute a waiver of your right to appeal.

11         It is also my duty to elicit from counsel from both

12    sides fully articulated objections to the Court's findings of

13    fact and conclusions of law as announced at this sentencing

14    hearing and to further elicit any objections which either side

15    may have to the manner in which sentence was imposed in this

16    case.

17         Any objections from the Government?

18         MS. JOHANNES:  None from the Government, your Honor.

19         THE COURT:  From the Defendant?

20         MR. VAZQUEZ:  No, your Honor.

21         THE COURT:  When is he going to surrender?

22         MR. VAZQUEZ:  Judge, I'd ask for similar as the

23    Co-Defendant:  At least 60 days to finish the matters of the

24    cooperation and further wrap up his personal affairs.  At least

25    60 days, we'd ask the Court.

1          THE COURT:  Any objection?

2          MS. JOHANNES:  No objection, your Honor.

3          THE COURT:  Surrender will be 2:00, October 21st, at

4     the institution of designation or at the Marshals Office.

5          Yes, Ms. Garcia.

6          THE PROBATION OFFICER:  Your Honor, I apologize.  As a

7     matter of housekeeping, your Honor said 37 months as to Counts

8     1 and 2.  Technically Count 1 is only 36 months, max.

9          THE COURT:  So let me correct that.  Thank you.

10          It is the judgment of the Court that the Defendant,

11     Roberto Marino, is hereby committed to the custody of the

12     United States Bureau of Prisons to be imprisoned for 37 months

13     total -- that's 36 months on Count 1 and 37 months on

14     Count 2 -- to run concurrently.

15          THE PROBATION OFFICER:  Thank you, your Honor.

16          THE COURT:  We're going to need to set for all of these

17     cases a restitution hearing.  We can do that by separate order.

18          MR. VAZQUEZ:  Judge, one last request:  that the Court

19     in the J&C also make a recommendation of a facility as close to

20     South Florida and also if the Court in part of that

21     recommendation can make a recommendation maybe the son and

22     father can be housed together.

23          THE COURT:  I'll recommend Florida or as close to

24     Florida as possible at an institution where he can be in the

25     same institution as his son.

1          MR. VAZQUEZ:  Thank you, your Honor.

2          THE COURT:  We're in recess in the case of Roberto

3    Marino.  Thank you.

4          MR. VAZQUEZ:  Thank you, your Honor.

5          THE PROBATION OFFICER:  Your Honor, I'm sorry.  Did you

6    set a self-surrender date the same as his son?

7          THE COURT:  Yes.  October 21st, 2:00.

8          THE PROBATION OFFICER:  I apologize.  Thank you.

9          THE COURT:  In the case of Henry Tarrio, the Court will

10   adopt the factual findings and guideline applications as

11   contained in the revised advisory presentence investigation

12   report.

13         Before going further, I would ask counsel to review

14   with me the major calculations in the revised advisory

15   presentence investigation report.

16         The offense level is 21; the criminal history category

17   is Roman numeral I; the advisory guideline range is 37 to 46

18   months' imprisonment, one to three years' supervised release,

19   $7,500 to $75,000 fine and $400 in special assessment.

20         Is that correct in its totality?

21         MR. FEILER:  Yes, your Honor.

22         MS. JOHANNES:  Yes, your Honor.

23         THE COURT:  Mr. Tarrio, you are in court today to

24   receive your sentence.  Before that happens, I must ask you if

25   there's any legal cause as to why the sentence of the law

1    should not be pronounced upon you.

2          DEFENDANT TARRIO:  No, ma'am.

3          THE COURT:  No legal cause having been shown as to why

4    sentence should not be imposed, the Court will consider

5    whatever you may wish to say in mitigation.

6          Mr. Feiler?

7          MR. FEILER:  Yes, your Honor.

8          Mr. Tarrio would first like to address the Court and

9    then I will behind him.

10         THE COURT:  Yes, of course.

11         Mr. Tarrio, is there something you wish to say, sir?

12         DEFENDANT TARRIO:  I'd like to offer the Court my

13   sincerest apology.

14         Also, to the prosecution, the agents that were

15   involved, any law enforcement officers that were involved that

16   I troubled or wasted resources and time on.

17         I'd like to accept my responsibility publicly.  The

18   reason why I did what I did was I had a lapse in judgment.  And

19   I was going through tough financial times in my business and I

20   saw a way to make money.  Obviously, not the right way.

21         It's not in my character to do what I did.  I'm a

22   responsible business owner.  My family's here to support me

23   behind me.  These past eight months have affected my life like

24   nothing ever has.  I feel like I've gone through hell these

25   past eight months.  And I bet that those behind me have gone

through worse than I have these eight months because they're
very supportive.

I've learned a lot also in these eight months.  I've
learned how to carry myself better, a better sense of
responsibility, a better sense of community.  And it's helped
me out a lot.

So that's my closing statement.

Thank you.

THE COURT:  Yes, Mr. Feiler.

MR. FEILER:  Thank you, your Honor.

Your Honor, I think that Mr. Tarrio is situated
substantially differently than either Adrian Marino or Roberto
Marino.

First of all, pursuant to the plea agreement in
Paragraph 9, the Government agreed to recommend to the Court
the low end of the guideline and to permit the Defendant to
argue for a variance pursuant to 3553.

Mr. Tarrio, obviously, is in a different situation from
the others.  Mr. Tarrio was going about his life operating his
business.  His business was suffering.  It was a relatively new
business and he was trying to get it going.

Obviously, this heist takes place in Kentucky, and he
knows something about it.  At some point, whoever was involved
with that had dealings with Roberto Marino, who then initiated
the test strips to be sold from Miami.  Roberto -- I don't know

1    exactly how it originated, but Roberto and his son, Adrian,

2    then become involved in attempting to sell these test strips or

3    advertising them and so forth.  At some point, many months into

4    this, they ask Henry because of his, I guess, abilities as a

5    salesperson to assist them, you know, in doing what they're

6    doing.

7            And Mr. Tarrio for the reasons he stated to the Court

8    became involved; and having become involved, not only acted as

9    a salesperson, but assisted them in the other things that were

10   necessary to effectuate the sale of these things of which he's,

11   you know, said that to the Court and takes responsibility for

12   it.

13           He was honest with the authorities from the get-go.  He

14   was the first one in this case to agree to plead guilty.  He

15   was the first one in this case to cooperate and agree to

16   cooperate with the Government.  And, you know, his cooperation

17   subsequently will be the subject, you know, for another day.

18           But he's certainly far less culpable either than

19   Roberto Marino or Adrian Marino.

20           Essentially, the Level 21, which operated for all of

21   the Defendants, the distinction was because Adrian Marino had a

22   Category II criminal history, which is why he got 41 months.

23   But -- so I think that we have to operate from the point

24   relative to Roberto Marino.  Where would you situate Mr. Tarrio

25   as being less culpable and therefore should receive a sentence

1   less than 37 months relative to Adrian Marino?  And you're

2   dealing -- you're contrasting essentially a person who started

3   this whole thing, who was involved with bringing this whole

4   thing, his printing company, you know, being involved with the

5   changing of labels and with making sales himself and bringing

6   his son to this, contrasted with somebody who gets involved

7   with it in a much more limited way, you know, many months

8   later.

9          And, you know, subsequently to his arrest, as

10  Mr. Tarrio has enunciated to the Court, he's gone through a

11  living hell.  I know that because I'm his attorney and I hear

12  from him more frequently than most clients.  His family has

13  likewise been very, very concerned and supportive and emotional

14  and so forth and so on.

15         I think Mr. Tarrio has learned a great deal from this

16  experience.  And I have to tell you, I think that if we were a

17  few blocks away over in state court, I would actually be asking

18  the Court to consider probation, maybe even -- or a very low

19  sentence in the sense that, you know, what good would jail do

20  this individual?

21         I don't think that under the circumstances that's

22  realistic.  But I do think a substantially lower amount of jail

23  time, maybe half of what the others should receive, that maybe

24  18 months would be more appropriate so far as Mr. Tarrio is

25  concerned.

1          THE COURT:  What does the Government say?

2          MS. JOHANNES:  Your Honor, the Government cannot join

3    the 18-month variance recommendation that Mr. Feiler has

4    proposed to the Court.

5          I will say this, though:  Mr. Tarrio, Jr., is in a very

6    different position than Roberto Marino.  There was no clear --

7    frankly, Judge, there was no clear way we could support the

8    leader/organizer enhancement in this sort of case.  But the

9    Defendants did have different roles.

10          Roberto Marino was the one who really put this all in

11   place and started the relabeling of the boxes and so forth.  So

12   I understand Mr. Feiler's position with respect to his client

13   having a different role and that being less than what Roberto

14   Marino did, even though they're under the guidelines situated

15   at the same range and the low end would be the same range as

16   what Mr. Roberto Marino received.

17          Under the plea agreement, and because I cannot argue

18   for a variance without prior approval, I will ask for the low

19   end.

20          THE COURT:  If you would stand with your client,

21   please.

22          The Eleventh Circuit Court of Appeals in the case of

23   the *United States versus Pugh*, at 515 F.3d 1179, a 2008

24   decision, has set forth the procedures that a sentencing court

25   should follow when there is a request for a variance from the

1    advisory guidelines.

2          And the *Pugh* court found, as does this Court, that

3    pursuant to Supreme Court precedent, including the cases of

4    *Booker*, *Gall* and *Rita*, Federal Sentencing Guidelines are

5    advisory.  The Court must consult the guidelines, take them

6    into account, but is not bound by them.

7          And the *Pugh* court directs the district court to first

8    correctly calculate the guideline and then give both parties an

9    opportunity to argue for whatever sentence they deem

10   appropriate.  And then the Court should consider the 3553(a)

11   factors to determine whether they support the requested

12   sentence.

13         So here, the Defendant has asked for a sentence of 18

14   months --

15         Is that what you asked for, Mr. Feiler?

16         MR. FEILER:  Yes, your Honor.

17         THE COURT:  -- 18 months, a variance to 18 months from

18   the advisory guideline range of 37 to 46 months that the Court

19   must consider.

20         And the Government acknowledges that the Defendant had

21   somewhat of a lesser involvement than Roberto Marino, who was

22   given 37 months by the Court.

23         So I turn now to the 3553(a) factors.  And the first

24   factor that the Court shall consider under 3553(a) is the

25   nature and circumstances of the offense and the history and

1    characteristics of the Defendant.

2         The Defendant stands before the Court having pled

3    guilty to Counts 1, 2, 3 and 5 of the indictment, Count 1 being

4    misbranding FDA devices while held for sale after shipment in

5    interstate commerce; Count 2, conspiracy to receive, possess

6    and sell stolen property; Count 3, possession and sale of

7    stolen property; and Count 5, transportation of stolen

8    property.

9         And this case revolved around the sale of stolen

10   diabetic test strips stolen from a truckload by Abbott

11   Laboratories.  This Defendant is not implicated in the stealing

12   of the actual truckload, but he became involved in the

13   subsequent sale and offering to sell the stolen diabetic test

14   strips along with his Co-Defendants.

15        He was identified by persons who were owners of

16   Diabetic Supply Salvation as being one of two people who

17   participated in the sale to Diabetic Supply of the stolen test

18   strips and he was subsequently involved in negotiations with an

19   undercover officer.

20        He was aware of the relabeling of the test strips so

21   they would not be able to be traced as being reported stolen,

22   and he participated in the relabeling.

23        The history and characteristics of the Defendant:  He

24   has one prior criminal history point for dealing in stolen

25   property in 2004 concerning a motorcycle that he stole and then

1    subsequently attempted to sell.

2          The Court also has to consider the need for the

3    sentence imposed to reflect the seriousness of the offense, to

4    promote respect for the law and to provide just punishment for

5    the offense, to afford adequate deterrence to criminal conduct

6    not only of this Defendant, but other persons who may be

7    considering such conduct, as well as the other factors under

8    3553(a)(1) through (7).

9          Considering the nature and circumstances of the offense

10   and the history and characteristics of the Defendant, as well

11   as the seriousness of the offense, the need to promote respect

12   for the law and provide just punishment, given that this is

13   Mr. Tarrio's second involvement with dealing in stolen property

14   and selling stolen property, I do not find that a variance to

15   18 months would be appropriate.  But given the fact that the

16   Government acknowledges as well as Mr. Feiler that he is less

17   culpable than Roberto Marino, I will grant him a variance to 30

18   months.

19         The Court has considered the statements of the parties,

20   the --

21         MR. FEILER:  Your Honor, may I just make -- interject

22   one comment, if I could?

23         THE COURT:  Yes.

24         MR. FEILER:  The PSI recommends that due to an

25   evaluation that he participate in an approved drug program.

1          I believe that in order to participate in the drug

2   program that the sentence has to be 36 months.  Is that

3   correct?  Or is that not correct?

4          THE PROBATION OFFICER:  You're referring to the

5   500-hour program?

6          MR. FEILER:  Yes.

7          THE PROBATION OFFICER:  My understanding of the program

8   is that once he's within that -- within a certain amount then

9   he's considered, because others might have a longer sentence.

10  So it's only when they hit that number of 36 months or less

11  [sic].  Then they are considered for the program.  I do not

12  know that it has to be 36 months for him to be considered.

13         THE COURT:  Do you want to withdraw your variance?

14         MR. FEILER:  No.  It would still be a variance.  But I

15  want to be sure that he be permitted with the 30-month sentence

16  to be able to be in the drug program, which I guess we're

17  hearing is the case.

18         THE COURT:  I can't answer that for you.

19         MR. FEILER:  Very well, your Honor.

20         THE COURT:  The Court has considered the statements of

21  the parties, the advisory presentence investigation report,

22  which contains the advisory guidelines, and the statutory

23  factors set forth in Title 18, United States Code, Section

24  3553(a)(1) through (7).

25         It is the finding of the Court that the Defendant is

1    not able to pay a fine, and therefore no fine shall be imposed.

2         Restitution is mandatory in this case and shall be

3    ordered.

4         Pursuant to the Sentencing Reform Act of 1984, it is

5    the judgment of the Court that the Defendant, Henry Tarrio,

6    Jr., is hereby committed to the custody of the United States

7    Bureau of Prisons to be imprisoned for 30 months as to Counts

8    1, 2, 3 and 5, all to be served concurrently.

9         Upon release from imprisonment, the Defendant shall be

10    placed on supervised release for a term of two years as to

11    Counts 1, 2, 3 and 5, to run concurrently.

12         Within 48 hours of release from the custody of the

13    United States Bureau of Prisons, the Defendant shall report in

14    person to the probation office in the district to which he is

15    released.

16         While on supervised release, the Defendant shall not

17    commit any federal, state or local crimes; he shall be

18    prohibited from possessing a firearm or other dangerous device;

19    he shall not possess a controlled substance; he shall cooperate

20    in the collection of DNA and shall comply with the standard

21    conditions of supervised release that have been adopted by this

22    Court and with the following special conditions:

23         The Defendant shall provide complete access to

24    financial information, including disclosure of all business and

25    personal finances, to the United States probation officer.

1          The Defendant shall not apply for, solicit or incur any

2     further debt, included, but not limited to, loans, lines of

3     credit or credit card charges, either a principal or cosigner,

4     as an individual or through any corporate entity, without first

5     obtaining written permission from the United States probation

6     officer.

7          The Defendant shall obtain prior written approval from

8     the Court before entering into any self-employment.

9          The Defendant shall submit to a search of his person or

10    property conducted in a reasonable manner and at a reasonable

11    time by the United States probation officer.

12         The Defendant shall participate in an approved

13    treatment program for drug and/or alcohol abuse and abide by

14    all supplemental conditions of treatment.  Participation may

15    include inpatient or outpatient treatment.  The Defendant will

16    contribute to the cost of services rendered by means of a

17    copayment based upon his ability to pay or availability of

18    third-party payment.

19         It is further ordered that the Defendant shall pay

20    joint and several restitution with the Co-Defendants in this

21    case.  During his period of incarceration, payment shall be

22    made as follows:  If the Defendant earns wages in a Federal

23    Prison Industries job, then he must pay 50 percent of wages

24    earned towards the financial obligations imposed by this

25    judgment in a criminal case.  If he does not work in a Federal

1    Prison Industries job, then he must pay a minimum of $25 per

2    quarter toward the financial obligations imposed in this order.

3            Upon release from incarceration, the Defendant shall

4    pay restitution at the rate of 10 percent of monthly gross

5    earnings until such time as the Court may alter that payment

6    schedule in the interest of justice.

7            The United States Bureau of Prisons, the United States

8    Probation Office and the United States Attorney's Office shall

9    monitor the payment of restitution and report to the Court any

10   material change in the Defendant's ability to pay.

11           These payments do not preclude the Government from

12   using any other anticipated or unexpected financial gains,

13   assets or income of the Defendant to satisfy the restitution

14   obligations.

15           Restitution shall be made payable to the Clerk, United

16   States Courts, and forwarded to the United States Clerk's

17   Office, Attention:  Financial Section, 400 North Miami Avenue,

18   Room 9N09, Miami, Florida 33128.  Restitution will then be

19   forwarded to Abbott Laboratories in Abbott Park, Illinois.

20           It is further ordered that the Defendant shall pay to

21   the United States a special assessment of $100 as to each of

22   Counts 1, 2, 3 and 5, for a total of $400, and it is further

23   ordered that pursuant to Title 18, United States Code,

24   Section 3664(d)(5), the victims' losses are not yet

25   ascertainable and therefore the Court shall set a date for the

```
 1    final determination of the victims' losses.

 2         Does the Government have a motion to make regarding any

 3    remaining counts?

 4         MS. JOHANNES:  Yes, your Honor.

 5         The Government moves to dismiss Counts 4 and 6 of the

 6    indictment as it pertains to this Defendant only.

 7         THE COURT:  That motion is granted.

 8         I will recommend in the judgment and commitment order

 9    that he be placed in the 500-hour drug treatment program.

10         MR. FEILER:  Thank you, your Honor.

11         THE COURT:  Mr. Tarrio, it is my duty to inform you,

12    sir, that you have 14 days with which to appeal the judgment

13    and sentence of this Court.  Should you desire to appeal and be

14    without funds with which to prosecute an appeal, an attorney

15    will be appointed to represent you in connection with that

16    appeal.

17         Should you fail to appeal within that 14-day period, it

18    will constitute a waiver of your right to appeal.

19         It is also my duty to elicit from counsel from both

20    sides fully articulated objections to the Court's finding of

21    facts and conclusions of law as announced at this sentencing

22    hearing and to further elicit any objections which either side

23    may have to the manner in which sentence was imposed in this

24    case.

25         Are there any objections from the Government?
```

```
 1            MS. JOHANNES:  There are no objections from the
 2   Government, your Honor.
 3            THE COURT:  From the Defendant?
 4            MR. FEILER:  No, your Honor.  There are no objections.
 5            Your Honor, may we also ask that the Court recommend a
 6   facility close to South Florida as well?
 7            THE COURT:  Is his family here?
 8            MR. FEILER:  Yes, your Honor.
 9            THE COURT:  I'll recommend Florida or as close to
10   Florida so he can be near his family.
11            When is he going to surrender?
12            MR. FEILER:  Your Honor, if we could also ask for the
13   October 21st date.
14            THE COURT:  Any objection?
15            MS. JOHANNES:  No objection from the Government.
16            THE COURT:  October 21st, 2:00, at the institution of
17   designation or at the marshals.
18            Anything further?
19            MR. FEILER:  Thank you very much, your Honor.
20            MS. JOHANNES:  Nothing from the Government.  Thank you,
21   your Honor.
22            DEFENDANT TARRIO:  Thank you, your Honor.
23            THE COURT:  And we have a date for the restitution
24   hearing.
25            THE COURTROOM DEPUTY:  As to all three Defendants,
```

1    Judge, October the 7th at 2:00 p.m.

2          THE COURT:  October 7th.  Would you please make sure,

3    Mr. Feiler, to make sure Mr. Vazquez and Mr. Farina are aware

4    of that date.

5          MR. FEILER:  I will contact them.

6          MS. JOHANNES:  I will also send them an e-mail.

7          MR. FEILER:  Your Honor, I also anticipate the

8    Government prior to their surrender will probably be proceeding

9    with a motion for reduction of sentence pursuant to Rule 35.

10   Do we want to schedule it at the same time as the restitution

11   hearing?

12         THE COURT:  Once they file it.  If they file it ahead

13   of that, I can hear it at that time.

14         MR. FEILER:  Very well.

15         THE COURT:  But they need to file the motion first.

16         MR. FEILER:  I understand.

17         THE COURT:  Thank you.

18         We're in recess.

19         MS. JOHANNES:  Thank you, your Honor.  Have a good

20   afternoon.

21         THE COURT:  You, too.

22         DEFENDANT TARRIO:  Thank you.

23         (Proceedings concluded.)

24

25

1

2

C E R T I F I C A T E

3        I hereby certify that the foregoing is an

4   accurate transcription of the proceedings in the

5   above-entitled matter.

6

7

8   _____        /s/Lisa Edwards
         DATE            LISA EDWARDS, RDR, CRR
9                        (305) 439-7168
                         Reporterlisaedwards@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$1,208,188** [1] - 35:10
**$10,000** [1] - 36:18
**$100** [3] - 50:6, 57:20, 72:21
**$11** [3] - 33:13, 36:14, 36:21
**$2,000** [1] - 14:9
**$200** [2] - 54:2, 57:21
**$200,000** [1] - 16:4
**$200,000-to-$400,000** [3] - 19:16, 20:3, 30:18
**$25** [2] - 48:7, 72:1
**$300** [2] - 45:1, 50:7
**$300,000** [1] - 19:15
**$360,000** [1] - 16:2
**$400** [2] - 60:19, 72:22
**$400,000** [1] - 14:9
**$58** [1] - 15:24
**$60** [1] - 16:1
**$63** [1] - 15:24
**$7,500** [3] - 44:18, 54:2, 60:19
**$75,000** [3] - 44:18, 54:2, 60:19
**$88,492** [1] - 37:23

## /

**/s/Lisa** [1] - 76:7

## 1

**1** [16] - 1:8, 38:8, 47:19, 49:3, 50:7, 56:10, 56:18, 57:21, 59:8, 59:13, 67:3, 70:8, 70:11, 72:22
**1,000** [7] - 28:22, 29:3, 31:12, 31:13, 33:21, 34:4, 35:2
**1,119,696** [2] - 35:13, 37:22
**1,200** [2] - 34:4, 35:2
**10** [2] - 48:10, 72:4
**10,000** [6] - 29:10, 29:12, 30:22, 31:7, 36:8, 36:20
**100** [3] - 11:19, 20:23, 38:13
**104th** [1] - 1:21
**10:38** [1] - 6:22
**10:55** [1] - 1:6
**11** [2] - 36:14, 37:19

**1179** [1] - 65:23
**12** [4] - 16:3, 16:6, 17:25, 28:12
**12-20947** [2] - 3:3, 53:2
**12-20947-CRIMINAL-LENARD** [1] - 1:2
**12-point** [1] - 18:9
**1200** [1] - 33:24
**1357** [2] - 20:24, 37:7
**14** [3] - 50:19, 58:5, 73:12
**14-day** [1] - 50:24, 58:9, 73:17
**14-plus** [1] - 51:25
**15** [3] - 35:22, 36:20, 40:23
**15,000** [13] - 33:9, 33:13, 35:2, 35:19, 35:22, 36:5, 36:9, 36:11, 36:18, 36:21, 37:20
**150** [1] - 1:18
**16** [5] - 15:7, 17:25, 28:13, 33:6, 51:16
**16-level** [1] - 38:6
**17** [9] - 7:25, 8:4, 16:9, 18:2, 33:8, 36:4, 36:17, 36:18, 37:16
**17th** [2] - 7:24, 13:17
**18** [12] - 33:22, 47:9, 47:21, 56:2, 56:12, 64:24, 66:13, 66:17, 68:15, 69:23, 72:23
**18-month** [1] - 65:3
**19** [1] - 33:23
**1984** [3] - 47:15, 56:7, 70:4
**1:28** [1] - 1:6

## 2

**2** [16] - 15:6, 16:24, 17:16, 47:20, 49:4, 50:7, 56:10, 56:18, 57:21, 59:8, 59:14, 67:3, 67:5, 70:8, 70:11, 72:22
**2,000** [6] - 33:7, 34:1, 34:3, 34:4, 35:2, 35:3
**20** [2] - 16:7, 33:23
**200** [1] - 1:21
**2004** [1] - 67:25
**2005** [2] - 20:24, 37:7
**2008** [1] - 65:23
**2009** [1] - 14:15
**2011** [7] - 12:7, 15:10, 16:15, 17:12,

18:14, 19:1, 42:12
**2012** [4] - 5:16, 5:22, 6:21, 6:22
**2013** [1] - 1:5
**21** [5] - 33:23, 44:15, 53:24, 60:16, 63:20
**21,000** [2] - 35:3, 35:6
**21,200** [6] - 35:6, 35:8, 35:9, 37:15, 37:21, 37:22
**219** [1] - 14:15
**21st** [5] - 52:4, 59:3, 60:7, 74:13, 74:16
**22** [1] - 1:5
**22nd** [2] - 5:16, 5:22
**24th** [1] - 18:14
**27** [5] - 14:3, 16:10, 17:14, 18:2, 55:11
**28th** [1] - 19:1
**2:00** [5] - 52:4, 59:3, 60:7, 74:16, 75:1
**2B1.1** [1] - 20:14
**2B1.1(b)(4** [1] - 38:16
**2B1.1(b)(4)** [1] - 43:19
**2B1.1(b)(i** [1] - 38:7

## 3

**3** [7] - 8:1, 54:18, 67:3, 67:6, 70:8, 70:11, 72:22
**30** [2] - 68:17, 70:7
**30,000** [14] - 22:22, 23:2, 23:23, 23:24, 25:18, 27:2, 27:3, 27:14, 27:18, 27:23, 28:11, 29:16, 30:13, 31:23
**30,960** [1] - 22:22
**30-month** [1] - 69:15
**305** [2] - 2:2, 76:8
**31,200** [4] - 32:24, 33:1, 34:2, 34:25
**33** [2] - 16:10, 18:2
**33128** [2] - 48:24, 72:18
**33130** [1] - 1:19
**33132** [1] - 1:16
**33155** [1] - 1:25
**33156** [1] - 1:22
**35** [1] - 75:9
**3553** [2] - 45:19, 62:17
**3553(a** [3] - 66:10, 66:23, 66:24
**3553(a)(1** [4] - 47:9,

56:3, 68:8, 69:24
**36** [6] - 47:19, 59:8, 59:13, 69:2, 69:10, 69:12
**360** [1] - 17:24
**360,000** [2] - 17:16, 18:9
**3664(d)(5** [3] - 47:22, 56:13, 72:24
**37** [9] - 53:25, 56:10, 59:7, 59:12, 59:13, 60:17, 64:1, 66:18, 66:22
**37,000** [1] - 22:18
**38** [3] - 15:3, 17:1, 17:8
**3E1.1** [1] - 44:4
**3rd** [1] - 6:22

## 4

**4** [2] - 22:12, 73:5
**4,000** [2] - 14:9, 28:2
**400** [2] - 48:23, 72:17
**41** [7] - 44:16, 46:17, 47:2, 47:18, 47:19, 55:16, 63:22
**430** [2] - 20:24, 37:7
**439-7168** [2] - 2:2, 76:8
**46** [3] - 53:25, 60:17, 66:18
**48** [3] - 49:5, 56:19, 70:12

## 5

**5** [8] - 47:20, 49:4, 50:7, 67:3, 67:7, 70:8, 70:11, 72:22
**5,000** [2] - 36:7, 36:19
**5-3** [1] - 6:22
**50** [2] - 48:4, 71:23
**500-hour** [2] - 69:5, 73:9
**51** [1] - 44:16
**515** [1] - 65:23
**557** [1] - 14:15
**56.99** [2] - 35:9, 37:22

## 6

**6** [1] - 73:5
**6,000** [11] - 14:6, 15:25, 17:15, 17:23, 25:15, 25:24, 28:2,

31:20, 31:21, 32:16, 32:18
**6-22-2012** [1] - 7:5
**60** [3] - 51:21, 58:23, 58:25
**60,000** [1] - 27:1
**6780** [1] - 1:24

## 7

**7** [4] - 33:12, 36:13, 37:18, 38:15
**7)** [4] - 47:10, 56:3, 68:8, 69:24
**70,000** [1] - 27:1
**7685** [1] - 1:21
**7th** [2] - 75:1, 75:2

## 8

**88,492** [1] - 35:13

## 9

**9** [2] - 54:18, 62:15
**99** [1] - 1:16
**9N09** [2] - 48:24, 72:18

## A

**a.m** [2] - 1:6, 6:22
**a/k/a** [1] - 8:2
**Abbott** [18] - 14:6, 21:25, 22:5, 22:9, 22:12, 23:5, 23:25, 26:14, 26:17, 32:3, 37:23, 38:2, 48:24, 48:25, 67:10, 72:19
**abide** [1] - 71:13
**abilities** [1] - 63:4
**ability** [5] - 16:21, 27:24, 48:16, 71:17, 72:10
**able** [10] - 9:15, 15:18, 23:11, 39:9, 39:12, 47:12, 56:5, 67:21, 69:16, 70:1
**above-entitled** [1] - 76:5
**abuse** [1] - 71:13
**accept** [2] - 46:21, 61:17
**acceptance** [1] - 16:8
**accepted** [1] - 26:24
**access** [10] - 24:11,

25:18, 26:19, 27:23, 32:4, 32:9, 35:19, 49:16, 57:5, 70:23

**accompanied** [2] - 7:3, 7:8

**accompanies** [1] - 7:9

**accompanying** [1] - 8:2

**according** [2] - 5:12, 26:18

**account** [1] - 66:6

**accountable** [7] - 15:5, 16:25, 17:9, 17:20, 28:17, 31:17, 42:9

**accurate** [1] - 76:4

**acknowledges** [2] - 66:20, 68:16

**Act** [3] - 47:15, 56:7, 70:4

**acted** [1] - 63:8

**acting** [1] - 25:2

**action** [1] - 19:13

**actions** [2] - 7:14, 8:4

**activities** [3] - 7:23, 14:10, 43:25

**activity** [1] - 13:25

**acts** [2] - 13:24, 26:6

**actual** [15] - 15:19, 15:20, 18:7, 19:11, 19:12, 19:14, 20:11, 21:13, 21:14, 21:18, 21:22, 21:23, 32:11, 38:4, 67:12

**ad** [10] - 9:7, 9:21, 10:18, 11:9, 11:11, 11:14, 12:2, 12:25, 46:23

**add** [1] - 32:21

**addition** [1] - 38:12

**additional** [5] - 11:22, 26:19, 33:13, 34:1, 36:8

**address** [4] - 7:17, 15:12, 45:19, 61:8

**addressed** [2] - 40:9, 40:11

**adequate** [1] - 68:5

**adjusted** [2] - 16:7, 18:1

**adjustment** [1] - 16:3

**admissions** [2] - 23:18, 25:18

**admit** [1] - 11:23

**admitted** [2] - 12:12, 14:5

**admittedly** [1] - 20:19

**adopt** [3] - 44:9, 53:18, 60:10

**adopted** [3] - 49:14, 57:3, 70:21

**Adrian** [27] - 3:2, 3:17, 4:6, 8:3, 9:5, 10:25, 13:4, 13:5, 15:5, 25:1, 33:11, 36:6, 37:16, 44:9, 45:5, 46:17, 46:19, 47:3, 47:16, 50:18, 55:15, 55:17, 62:12, 63:1, 63:19, 63:21, 64:1

**ADRIAN** [7] - 1:7, 1:18, 4:7, 4:10, 45:9, 45:17, 46:13

**ads** [3] - 9:22, 10:9, 10:25

**advertisement** [1] - 13:18

**advertising** [1] - 63:3

**advise** [1] - 45:20

**advisory** [25] - 4:5, 4:9, 4:12, 4:15, 4:18, 4:21, 14:4, 44:11, 44:13, 44:16, 47:7, 53:19, 53:22, 53:25, 54:25, 55:25, 56:1, 60:11, 60:14, 60:17, 66:1, 66:5, 66:18, 69:21, 69:22

**affairs** [1] - 58:24

**affected** [1] - 61:23

**afford** [1] - 68:5

**afloat** [1] - 42:21

**afternoon** [5] - 53:5, 53:8, 53:11, 53:14, 75:20

**agencies** [1] - 31:4

**agents** [1] - 61:14

**ago** [1] - 17:20

**agree** [6] - 19:19, 42:1, 55:7, 63:14, 63:15

**agreed** [3] - 14:8, 44:19, 62:15

**agreement** [5] - 54:18, 55:7, 55:22, 62:14, 65:17

**ahead** [1] - 75:12

**ahold** [1] - 9:16

**aid** [1] - 42:4

**air** [1] - 32:1

**alcohol** [1] - 71:13

**Alex** [7] - 7:4, 7:6, 7:9, 8:2, 13:3, 33:6, 46:23

**alleged** [1] - 28:22

**allow** [1] - 33:4

**alter** [2] - 48:11, 72:5

**AMERICA** [1] - 1:4

**America** [3] - 3:2, 53:1

**amount** [29] - 4:24, 15:3, 15:13, 15:18, 15:22, 17:24, 19:20, 21:18, 22:15, 22:22, 22:25, 23:2, 23:6, 24:1, 24:2, 28:17, 30:2, 31:22, 31:25, 32:1, 32:5, 32:6, 32:11, 38:4, 43:14, 43:20, 44:19, 64:22, 69:8

**amounts** [1] - 19:21

**announced** [3] - 51:3, 58:13, 73:21

**answer** [1] - 69:18

**anticipate** [2] - 52:7, 75:7

**anticipated** [2] - 48:18, 72:12

**apologize** [4] - 46:13, 55:3, 59:6, 60:8

**apology** [1] - 61:13

**appeal** [18] - 50:19, 50:20, 50:21, 50:23, 50:24, 50:25, 58:5, 58:6, 58:7, 58:8, 58:9, 58:10, 73:12, 73:13, 73:14, 73:16, 73:17, 73:18

**Appeals** [1] - 65:22

**appearance** [1] - 3:25

**APPEARANCES** [1] - 1:13

**appearances** [2] - 3:5, 53:3

**appeared** [2] - 40:16, 45:21

**applicable** [1] - 43:25

**applications** [3] - 44:10, 53:18, 60:10

**applied** [2] - 41:24

**applies** [1] - 10:21

**apply** [7] - 10:21, 14:22, 38:17, 49:19, 54:23, 57:8, 71:1

**appointed** [3] - 50:22, 58:8, 73:15

**approached** [3] - 35:18, 35:21, 35:24

**appropriate** [12] - 16:12, 16:23, 18:2, 38:7, 41:16, 46:9, 46:18, 47:2, 52:12,

64:24, 66:10, 68:15

**approval** [4] - 49:25, 57:14, 65:18, 71:7

**approved** [2] - 68:25, 71:12

**area** [1] - 16:16

**argue** [3] - 62:17, 65:17, 66:9

**argument** [7] - 7:19, 7:22, 27:7, 33:18, 40:23, 41:19, 46:2

**arguments** [2] - 7:20, 13:16

**arranged** [2] - 19:8, 29:23

**arranging** [2] - 29:25, 33:25

**arrest** [1] - 64:9

**arrested** [1] - 25:22

**arriving** [2] - 40:24, 40:25

**articulated** [3] - 51:2, 58:12, 73:20

**ascertainable** [3] - 47:23, 56:14, 72:25

**assessment** [4] - 50:6, 57:20, 60:19, 72:21

**assessments** [2] - 45:1, 54:2

**assets** [2] - 48:19, 72:13

**assist** [2] - 27:15, 63:5

**assistant** [1] - 3:17

**ASSISTANT** [2] - 1:15, 1:18

**assisted** [1] - 63:9

**assisting** [1] - 45:23

**attempted** [3] - 19:2, 20:12, 68:1

**attempting** [3] - 15:13, 27:15, 63:2

**Attention** [2] - 48:23, 72:17

**ATTORNEY** [1] - 1:15

**attorney** [7] - 4:8, 4:14, 4:20, 50:21, 58:7, 64:11, 73:14

**Attorney's** [2] - 48:14, 72:8

**August** [7] - 1:5, 7:24, 7:25, 8:4, 13:17, 17:12, 42:11

**authentic** [1] - 39:8

**authorities** [1] - 63:13

**authority** [1] - 14:14

**availability** [1] -

71:17

**available** [9] - 21:6, 23:24, 31:24, 31:25, 32:6, 34:15, 34:17, 37:9, 42:20

**Avenue** [2] - 48:23, 72:17

**aware** [2] - 67:20, 75:3

## B

**backing** [1] - 24:16

**backpedal** [1] - 24:24

**backpedaling** [1] - 24:16

**bailiwick** [1] - 52:14

**base** [1] - 14:3

**based** [19] - 7:23, 9:1, 9:2, 9:14, 13:22, 14:10, 14:18, 17:8, 18:18, 22:10, 25:18, 34:24, 37:10, 40:21, 43:23, 54:17, 55:22, 71:17

**basis** [1] - 37:11

**batch** [1] - 14:9

**became** [6] - 5:21, 12:10, 42:20, 42:24, 63:8, 67:12

**become** [3] - 30:3, 63:2, 63:8

**becomes** [3] - 18:20, 19:5, 29:4

**BEFORE** [1] - 1:11

**began** [1] - 26:23

**begin** [1] - 3:22

**begins** [1] - 18:25

**behalf** [14] - 3:7, 3:11, 3:14, 3:17, 7:21, 17:7, 20:2, 28:20, 41:4, 42:16, 52:17, 53:6, 53:9, 53:12

**behest** [1] - 25:2

**behind** [3] - 61:9, 61:23, 61:25

**below** [2] - 33:12, 36:14

**best** [1] - 31:1

**bet** [2] - 52:1, 61:25

**better** [4] - 12:7, 62:4, 62:5

**between** [6] - 15:24, 16:4, 16:10, 21:13, 24:10, 32:5

**big** [2] - 25:4, 25:5

**bit** [3] - 19:3, 19:17, 21:17

**black** [2] - 9:20, 40:1
**blocks** [1] - 64:17
**blood** [2] - 22:16, 37:25
**Booker** [1] - 66:4
**bound** [1] - 66:6
**box** [8] - 15:24, 16:1, 33:10, 33:13, 36:14, 36:21, 37:19, 43:12
**boxes** [36] - 14:6, 15:25, 17:23, 25:15, 25:24, 26:11, 29:10, 29:17, 30:2, 30:14, 31:21, 32:16, 32:22, 33:1, 33:7, 33:9, 33:21, 33:24, 34:1, 34:2, 34:5, 34:12, 34:25, 36:5, 36:7, 36:8, 36:9, 36:22, 37:15, 37:23, 38:4, 39:2, 39:8, 39:11, 55:13, 65:11
**brief** [1] - 23:8
**bringing** [2] - 64:3, 64:5
**broad** [1] - 20:13
**brought** [1] - 20:1
**Bureau** [10] - 47:17, 48:12, 49:6, 52:14, 56:9, 56:20, 59:12, 70:7, 70:13, 72:7
**business** [39] - 9:19, 10:11, 11:10, 12:1, 25:4, 26:10, 26:13, 38:19, 38:22, 39:6, 39:14, 39:15, 39:16, 39:22, 39:24, 40:4, 40:16, 40:20, 42:10, 42:17, 42:19, 42:21, 42:23, 43:3, 43:7, 43:8, 43:9, 43:13, 43:22, 49:17, 57:6, 61:19, 61:22, 62:20, 62:21, 70:24
**businesses** [2] - 41:12, 43:16
**butchering** [1] - 22:8
**buy** [6] - 30:2, 31:3, 34:5, 36:21, 39:25, 40:23
**buy-walk** [1] - 36:21
**buy/walk** [3] - 31:3, 31:6, 31:10
**buying** [1] - 26:23
**buys** [1] - 47:1
**BY** [1] - 2:2
**bystander** [3] - 10:3, 10:13, 10:22

# C

**C.H** [1] - 33:22
**calculate** [4] - 21:9, 22:25, 36:25, 66:8
**calculated** [10] - 19:17, 20:11, 20:17, 21:2, 21:4, 21:5, 22:9, 22:15, 36:6, 55:10
**calculating** [6] - 4:24, 15:18, 17:14, 20:8, 21:1, 24:1
**calculation** [7] - 8:16, 20:3, 26:14, 26:15, 34:2, 35:9, 44:23
**calculations** [4] - 19:10, 44:13, 53:22, 60:14
**camp** [1] - 52:9
**camp-type** [1] - 52:9
**cannot** [2] - 43:23, 65:2, 65:17
**captioned** [2] - 6:20, 7:5
**card** [3] - 49:21, 57:10, 71:3
**care** [2] - 38:9, 52:12
**cargo** [4] - 10:24, 24:11, 32:5, 32:6
**carry** [2] - 39:2, 62:4
**CASE** [1] - 1:2
**case** [62] - 5:15, 5:21, 6:3, 6:24, 7:2, 7:3, 7:12, 7:14, 7:16, 9:24, 11:4, 11:6, 11:18, 15:21, 16:12, 17:3, 18:8, 18:23, 20:15, 20:22, 20:25, 21:3, 21:12, 21:19, 21:25, 23:3, 24:21, 25:25, 27:18, 29:5, 30:16, 31:11, 32:10, 32:12, 32:13, 37:12, 40:22, 41:2, 41:11, 45:23, 46:10, 46:24, 47:13, 48:1, 48:5, 51:6, 55:11, 55:18, 56:6, 58:16, 60:2, 60:9, 63:14, 63:15, 65:8, 65:22, 67:9, 69:17, 70:2, 71:21, 71:25, 73:24
**Case** [2] - 3:3, 53:2
**cases** [11] - 20:15, 20:17, 20:20, 21:9, 23:7, 25:12, 28:22, 42:8, 59:17, 66:3
**Category** [1] - 63:22

**category** [4] - 16:9, 44:15, 53:24, 60:16
**caught** [5] - 10:17, 23:4, 23:9, 23:17, 31:22
**cell** [2] - 16:14, 16:18
**certain** [1] - 69:8
**certainly** [6] - 6:11, 12:8, 18:15, 19:4, 29:22, 63:18
**certify** [1] - 76:3
**change** [6] - 10:5, 22:19, 24:19, 26:12, 48:15, 72:10
**change-of-plea** [3] - 10:5, 22:19, 24:19
**changing** [1] - 64:5
**character** [1] - 61:21
**Characteristics** [1] - 15:4
**characteristics** [3] - 67:1, 67:23, 68:10
**charge** [1] - 11:15
**charges** [3] - 49:21, 57:10, 71:3
**charming** [1] - 10:11
**choose** [1] - 16:5
**CI** [7] - 33:6, 33:8, 34:7, 36:5, 36:12, 37:17
**Circuit** [10] - 11:7, 14:16, 20:21, 20:25, 23:6, 23:7, 26:2, 37:8, 65:22
**circumstances** [5] - 17:3, 46:10, 64:21, 66:25, 68:9
**cite** [2] - 11:18, 14:14
**cited** [3] - 20:23, 23:8, 26:1
**clarify** [3] - 12:19, 30:19, 37:5
**clear** [6] - 11:4, 11:7, 25:6, 55:12, 65:6, 65:7
**clearly** [2] - 32:4, 42:23
**Clerk** [2] - 48:21, 72:15
**Clerk's** [2] - 48:22, 72:16
**client** [31] - 7:7, 8:15, 10:1, 12:19, 13:7, 13:19, 15:13, 16:6, 18:5, 24:3, 26:23, 27:3, 27:11, 32:20, 34:5, 35:17, 35:18, 35:22, 35:24, 40:17, 40:23, 42:9, 42:13, 45:18, 45:20, 47:4,

**client's** [5] - 16:14, 17:11, 17:18, 17:22, 34:11
**clients** [2] - 25:16, 64:12
**close** [9] - 19:13, 22:12, 22:17, 23:23, 23:24, 59:19, 59:23, 74:6, 74:9
**closing** [1] - 62:7
**Co** [11] - 5:12, 7:20, 8:3, 17:23, 19:18, 28:14, 48:1, 58:23, 67:14, 71:20
**co** [3] - 7:13, 7:15, 26:5
**co-conspirator** [1] - 7:13
**co-conspirators** [2] - 7:15, 26:5
**Co-Defendant** [5] - 8:3, 17:23, 28:14, 58:23
**Co-Defendants** [6] - 5:12, 7:20, 19:18, 48:1, 67:14, 71:20
**Code** [6] - 47:9, 47:22, 56:2, 56:13, 69:23, 72:23
**collection** [3] - 49:13, 57:2, 70:20
**coming** [2] - 11:13, 30:2
**comment** [2] - 25:8, 68:22
**commentary** [1] - 20:10
**commerce** [1] - 67:5
**commit** [3] - 49:10, 56:24, 70:17
**commitment** [1] - 73:8
**committed** [4] - 47:17, 56:9, 59:11, 70:6
**common** [1] - 18:8
**community** [1] - 62:5
**Company** [1] - 6:20
**company** [3] - 41:11, 43:5, 64:4
**comparison** [1] - 19:25
**compensated** [1] - 37:23
**compensation** [1] - 35:12
**complete** [3] - 49:16, 57:5, 70:23
**comply** [3] - 49:13,

57:2, 70:20
**compute** [1] - 15:21
**concept** [1] - 19:11
**concerned** [5] - 5:11, 7:11, 16:14, 64:13, 64:25
**concerning** [1] - 67:25
**concerns** [1] - 52:10
**conclude** [1] - 43:24
**concluded** [1] - 75:23
**conclusions** [3] - 51:3, 58:13, 73:21
**concurrently** [7] - 47:20, 49:4, 56:11, 56:18, 59:14, 70:8, 70:11
**conditions** [7] - 49:14, 49:15, 57:3, 57:4, 70:21, 70:22, 71:14
**conduct** [22] - 13:5, 13:23, 14:18, 14:19, 32:16, 32:22, 33:3, 34:9, 34:18, 34:24, 35:8, 37:11, 37:13, 37:21, 43:11, 43:21, 43:23, 54:24, 54:25, 68:5, 68:7
**conducted** [3] - 50:3, 57:17, 71:10
**confers** [1] - 13:7
**confidential** [4] - 29:9, 30:22, 31:1, 35:16
**confirm** [1] - 51:23
**confused** [1] - 13:8
**confusion** [1] - 19:3
**connection** [3] - 50:22, 58:8, 73:15
**consider** [14] - 13:20, 16:22, 18:7, 34:24, 40:24, 45:11, 45:24, 54:12, 61:4, 64:18, 66:10, 66:19, 66:24, 68:2
**considered** [8] - 41:16, 47:6, 55:24, 68:19, 69:9, 69:11, 69:12, 69:20
**considering** [2] - 68:7, 68:9
**consists** [2] - 47:18, 49:3
**conspiracies** [1] - 28:22
**conspiracy** [23] - 8:6, 10:6, 10:14, 11:3, 11:5, 11:8, 11:12,

14:1, 17:19, 17:22, 18:4, 20:18, 23:10, 23:12, 24:17, 24:23, 25:20, 26:3, 29:4, 30:6, 31:13, 32:22, 67:5
**conspirator** [1] - 7:13
**conspirators** [2] - 7:15, 26:5
**constitute** [3] - 50:25, 58:10, 73:18
**constitutes** [1] - 6:23
**consult** [1] - 66:5
**consumer** [1] - 39:10
**consumers** [1] - 39:22
**contact** [4] - 9:16, 13:3, 34:12, 75:5
**contacted** [1] - 10:9
**contained** [4] - 44:10, 53:19, 54:24, 60:11
**contains** [3] - 47:8, 56:1, 69:22
**contesting** [1] - 9:6
**context** [1] - 28:21
**continuance** [1] - 53:13
**continue** [2] - 27:7, 33:19
**continued** [1] - 43:14
**continuing** [1] - 57:15
**contrasted** [1] - 64:6
**contrasting** [1] - 64:2
**contribute** [1] - 71:16
**contributed** [1] - 21:22
**control** [1] - 23:14
**controlled** [3] - 49:12, 57:1, 70:19
**conversation** [2] - 35:16, 35:24
**conversations** [1] - 30:24
**conviction** [1] - 14:17
**cooperate** [6] - 24:22, 49:12, 57:1, 63:15, 63:16, 70:19
**cooperating** [3] - 23:22, 27:12, 45:20
**cooperation** [5] - 24:7, 27:9, 46:6, 58:24, 63:16
**cooperative** [1] - 46:19

**copayment** [1] - 71:17
**copies** [3] - 6:5, 22:3, 39:18
**Coral** [1] - 1:24
**corner** [1] - 10:7
**corporate** [3] - 49:22, 57:11, 71:4
**correct** [13] - 4:25, 8:11, 24:14, 31:11, 35:7, 45:1, 54:3, 55:6, 55:22, 59:9, 60:20, 69:3
**correctly** [1] - 66:8
**correlate** [1] - 23:25
**correlation** [1] - 32:5
**corroboration** [1] - 32:2
**cosigner** [2] - 49:22, 57:10, 71:3
**cost** [1] - 71:16
**counsel** [12] - 3:4, 3:7, 17:15, 22:4, 44:12, 51:1, 53:3, 53:6, 53:21, 58:11, 60:13, 73:19
**count** [4] - 11:5, 24:5, 24:23, 33:14
**Count** [2] - 47:19, 49:3, 59:8, 59:13, 64:8, 67:3, 67:5, 67:6, 67:7
**counting** [1] - 34:3
**Counts** [12] - 47:20, 49:4, 50:7, 56:10, 56:18, 57:21, 59:7, 67:3, 70:7, 70:11, 72:22, 73:5
**counts** [6] - 50:10, 50:12, 50:15, 57:24, 58:1, 73:3
**couple** [5] - 5:22, 11:24, 12:22, 30:9, 45:21
**course** [2] - 5:18, 61:10
**COURT** [123] - 1:1, 3:1, 3:9, 3:12, 3:15, 3:19, 4:4, 4:8, 4:11, 4:14, 4:17, 4:20, 4:23, 5:4, 5:9, 6:1, 6:3, 6:6, 6:8, 6:12, 6:16, 7:7, 7:19, 8:10, 8:14, 8:18, 8:21, 12:3, 12:11, 12:23, 13:10, 13:13, 13:21, 15:15, 17:5, 20:5, 24:12, 30:20, 32:15, 32:21, 32:24, 33:1, 33:3, 33:15, 33:17, 33:21, 34:8,

34:14, 34:20, 35:4, 35:6, 35:12, 36:2, 37:7, 38:20, 40:5, 40:11, 41:19, 41:22, 43:1, 43:18, 44:7, 44:25, 45:5, 45:10, 45:16, 45:24, 46:11, 46:15, 47:4, 50:13, 50:17, 51:10, 51:15, 51:18, 51:20, 52:2, 52:4, 52:11, 52:20, 52:25, 53:16, 54:6, 54:11, 54:21, 55:5, 55:21, 55:24, 58:3, 58:19, 58:21, 59:1, 59:3, 59:9, 59:16, 59:23, 60:2, 60:7, 60:9, 60:23, 61:3, 61:10, 62:9, 65:1, 65:20, 66:17, 68:23, 69:13, 69:18, 69:20, 73:7, 73:11, 74:3, 74:7, 74:9, 74:14, 74:16, 74:23, 75:2, 75:12, 75:15, 75:17, 75:21
**court** [11] - 18:6, 21:12, 23:21, 45:5, 54:6, 60:23, 64:17, 65:24, 66:2, 66:7
**Court** [111] - 3:11, 3:14, 5:13, 5:23, 5:25, 6:5, 6:25, 7:1, 7:17, 13:16, 13:17, 13:20, 16:5, 16:22, 17:11, 18:7, 21:1, 21:4, 21:7, 21:8, 21:15, 22:1, 22:2, 22:20, 24:18, 25:7, 25:10, 26:21, 28:21, 29:1, 29:5, 29:14, 30:15, 31:15, 34:22, 36:23, 36:24, 37:5, 37:8, 39:18, 40:21, 40:24, 41:14, 42:7, 42:18, 44:7, 44:9, 45:11, 45:20, 46:8, 47:6, 47:11, 47:16, 47:23, 48:11, 48:15, 49:15, 50:1, 50:20, 52:8, 52:19, 53:10, 53:12, 53:17, 54:12, 54:14, 54:16, 55:17, 55:24, 56:4, 56:8, 56:14, 57:4, 57:15, 58:6, 58:25, 59:10, 59:18, 59:20, 60:9, 61:4, 61:8, 61:12, 62:15, 63:7, 63:11, 64:10, 64:18, 65:4, 65:22, 66:2, 66:3, 66:5, 66:10,

66:18, 66:22, 66:24, 67:2, 68:2, 68:19, 69:20, 69:25, 70:5, 70:22, 71:8, 72:5, 72:9, 72:25, 73:13, 74:5
**Court's** [5] - 42:4, 51:2, 54:23, 58:12, 73:20
**COURTROOM** [1] - 74:25
**Courts** [3] - 48:22, 55:4, 72:16
**courts** [3] - 20:17, 23:8, 26:2
**craigslist** [5] - 9:7, 9:21, 10:18, 11:9, 46:23
**created** [2] - 39:21, 43:15
**credit** [6] - 49:21, 57:9, 57:10, 71:3
**crime** [1] - 27:6
**crimes** [3] - 49:10, 56:24, 70:17
**criminal** [10] - 13:25, 16:9, 44:15, 48:5, 53:24, 60:16, 63:22, 67:24, 68:5, 71:25
**CRR** [2] - 2:2, 76:8
**culpability** [1] - 20:4
**culpable** [4] - 11:14, 63:18, 63:25, 68:17
**custody** [7] - 47:17, 49:5, 56:9, 56:19, 59:11, 70:6, 70:12
**customers** [9] - 9:5, 9:11, 9:12, 9:18, 10:9, 11:9, 11:13, 12:1, 39:9

## D

**dangerous** [3] - 49:11, 56:25, 70:18
**DATE** [1] - 76:8
**date** [12] - 6:21, 7:25, 8:5, 39:12, 42:2, 47:23, 56:14, 60:6, 72:25, 74:13, 74:23, 75:4
**dated** [1] - 7:5
**dates** [1] - 13:9
**days** [6] - 50:19, 51:22, 58:5, 58:23, 58:25, 73:12
**deal** [8] - 20:10, 20:18, 20:20, 27:5, 30:9, 30:10, 35:19,

64:15
**dealer** [2] - 27:6, 28:6
**dealing** [12] - 21:20, 21:24, 23:4, 25:16, 26:7, 27:2, 31:18, 31:19, 40:19, 64:2, 67:24, 68:13
**dealings** [2] - 12:1, 62:24
**deals** [3] - 20:14, 28:24, 30:10
**debrief** [2] - 34:11, 34:14
**debriefed** [2] - 23:22, 45:21
**debriefing** [2] - 23:20, 34:21
**debriefings** [2] - 36:24, 37:2
**debt** [3] - 49:20, 57:9, 71:2
**deceive** [1] - 39:9
**decision** [4] - 14:15, 37:8, 42:5, 65:24
**decisions** [1] - 29:6
**declaration** [1] - 22:4
**deem** [1] - 66:9
**DEFENDANT** [18] - 1:17, 1:20, 1:23, 4:7, 4:10, 4:13, 4:16, 4:19, 4:22, 45:9, 45:17, 46:13, 54:10, 55:3, 61:2, 61:12, 74:22, 75:22
**Defendant** [73] - 3:23, 7:3, 8:3, 11:11, 17:23, 18:19, 21:21, 28:14, 28:24, 38:21, 43:22, 44:4, 47:11, 47:16, 47:25, 48:3, 48:6, 48:9, 48:19, 49:1, 49:6, 49:9, 49:16, 49:19, 49:25, 50:2, 50:5, 50:12, 50:16, 51:10, 54:24, 56:4, 56:8, 56:16, 56:20, 56:23, 57:5, 57:8, 57:14, 57:16, 57:19, 58:2, 58:19, 58:23, 59:10, 62:16, 66:13, 66:20, 67:1, 67:2, 67:11, 67:23, 68:6, 68:10, 69:25, 70:5, 70:9, 70:13, 70:16, 70:23, 71:1, 71:7, 71:9, 71:12, 71:15, 71:19, 71:22, 72:3, 72:13, 72:20, 73:6, 74:3

**Defendant's** [2] - 48:15, 72:10
**Defendants** [50] - 3:20, 4:23, 5:12, 6:13, 7:20, 8:13, 9:9, 9:13, 9:16, 9:23, 10:8, 11:5, 12:2, 14:24, 19:18, 21:11, 21:14, 22:13, 22:22, 22:24, 23:4, 23:9, 23:20, 24:10, 25:6, 25:14, 26:8, 26:16, 28:4, 28:23, 31:12, 31:16, 32:4, 34:23, 37:12, 37:14, 38:3, 38:18, 38:24, 39:5, 39:20, 41:11, 44:6, 44:8, 48:1, 63:21, 65:9, 67:14, 71:20, 74:25
**defendants** [1] - 1:8
**Defendants'** [6] - 8:22, 9:17, 9:25, 21:10, 21:16, 43:11
**DEFENDER** [1] - 1:18
**defender** [1] - 3:17
**defense** [2] - 22:3, 41:23
**defined** [2] - 20:10, 21:18
**delineated** [1] - 8:7, 8:8
**denied** [1] - 42:25
**deny** [5] - 13:22, 41:14, 42:7, 42:14, 43:18
**denying** [1] - 41:1
**depth** [1] - 11:21
**DEPUTY** [1] - 74:25
**designation** [4] - 52:5, 52:6, 59:4, 74:17
**desire** [3] - 50:20, 58:6, 73:13
**detailed** [2] - 37:16, 54:25
**determination** [5] - 15:19, 47:24, 52:13, 56:15, 73:1
**determine** [2] - 31:15, 66:11
**determined** [2] - 44:19, 47:13
**deterrence** [1] - 68:5
**device** [3] - 49:11, 56:25, 70:18
**devices** [1] - 67:4
**diabetes** [1] - 37:25
**Diabetic** [3] - 33:24, 67:16, 67:17

**diabetic** [6] - 6:21, 9:5, 22:13, 25:15, 67:10, 67:13
**difference** [1] - 17:18
**different** [7] - 5:11, 8:15, 13:1, 62:18, 65:6, 65:9, 65:13
**differently** [2] - 19:17, 62:12
**diminished** [1] - 19:25
**diminishment** [1] - 37:3
**dire** [1] - 25:3
**directed** [1] - 37:8
**direction** [1] - 20:7
**director** [1] - 22:5
**directs** [1] - 66:7
**dirty** [1] - 51:25
**disagree** [2] - 10:1, 10:4
**disclosure** [3] - 49:17, 57:6, 70:24
**discovery** [3] - 35:15, 36:3, 36:16
**discuss** [1] - 38:14
**discussed** [6] - 4:8, 4:14, 4:20, 36:7, 36:8, 36:10
**discussion** [2] - 33:10, 36:20
**dismiss** [4] - 50:11, 50:15, 58:1, 73:5
**disputed** [1] - 37:12
**distinct** [1] - 7:19
**distinction** [1] - 63:21
**district** [7] - 20:17, 21:12, 26:2, 49:7, 56:21, 66:7, 70:14
**DISTRICT** [3] - 1:1, 1:1, 1:11
**DIVISION** [1] - 1:2
**DNA** [3] - 49:13, 57:2, 70:20
**Docket** [3] - 11:19, 20:23, 38:13
**docket** [1] - 6:3
**document** [2] - 6:20, 7:4
**documented** [1] - 35:17
**done** [2] - 25:21, 35:20
**down** [6] - 16:16, 24:22, 25:6, 30:17, 31:5, 31:9
**driving** [1] - 19:23
**drug** [10] - 27:6, 28:6, 28:22, 30:6,

31:11, 68:25, 69:1, 69:16, 71:13, 73:9
**drugs** [2] - 27:7, 51:25
**due** [3] - 50:7, 57:21, 68:24
**during** [6] - 16:19, 16:20, 27:9, 34:11, 48:1, 71:21
**duty** [6] - 50:18, 51:1, 58:4, 58:11, 73:11, 73:19

## E

**e-mail** [1] - 75:6
**early** [1] - 18:19
**earned** [2] - 48:4, 71:24
**earnings** [2] - 48:11, 72:5
**earns** [2] - 48:3, 71:22
**easy** [3] - 16:16, 23:10, 25:11
**economic** [1] - 25:3
**EDWARDS** [2] - 2:2, 76:8
**Edwards** [1] - 76:7
**effectuate** [1] - 63:10
**efforts** [3] - 9:17, 39:7
**eight** [4] - 61:23, 61:25, 62:1, 62:3
**either** [11] - 32:19, 38:5, 43:24, 49:21, 54:17, 57:10, 58:14, 62:12, 63:18, 71:3, 73:22
**Eleventh** [9] - 11:7, 20:21, 20:25, 23:6, 23:7, 26:1, 37:8, 65:22
**elicit** [6] - 51:1, 51:4, 58:11, 58:14, 73:19, 73:22
**ELIO** [2] - 1:23, 1:23
**Elio** [3] - 3:13, 53:11
**emotional** [1] - 64:13
**employment** [3] - 50:1, 57:16, 71:8
**encouraged** [1] - 27:11
**end** [12] - 21:25, 25:25, 39:10, 46:8, 54:19, 55:7, 55:15, 55:20, 55:22, 62:16, 65:15, 65:19
**enforcement** [2] -

23:10, 61:15
**engaged** [1] - 33:6
**enhancement** [15] - 8:9, 9:1, 9:6, 10:20, 11:7, 14:2, 14:21, 16:6, 38:16, 38:17, 41:2, 42:15, 51:14, 65:8
**enlisted** [1] - 19:6
**entering** [3] - 50:1, 57:15, 71:8
**enterprise** [1] - 7:24
**entire** [4] - 17:10, 22:10, 22:11, 29:3
**entities** [1] - 49:22
**entitled** [2] - 15:3, 76:5
**entity** [2] - 57:11, 71:4
**entry** [1] - 6:3
**Entry** [3] - 11:19, 20:23, 38:13
**enunciated** [1] - 64:10
**equal** [1] - 11:2
**equally** [1] - 11:14
**equipment** [1] - 42:17
**error** [1] - 41:24
**especially** [1] - 11:7
**ESQ** [4] - 1:15, 1:17, 1:20, 1:23
**essence** [1] - 40:13
**essentially** [11] - 6:22, 7:2, 7:16, 9:8, 9:19, 15:8, 19:6, 19:17, 22:4, 63:20, 64:2
**estimate** [2] - 21:6, 37:9
**estimated** [1] - 32:18
**evaluate** [1] - 34:17
**evaluation** [1] - 68:25
**events** [1] - 5:17
**evidence** [3] - 34:8, 37:10, 43:20
**evolved** [1] - 40:18
**exactly** [1] - 63:1
**example** [1] - 28:21
**excuse** [1] - 52:19
**exhaustive** [1] - 44:1
**Exhibit** [15] - 5:24, 5:25, 6:19, 6:25, 9:7, 9:21, 10:3, 10:19, 13:1, 22:3, 35:10, 36:25, 39:17, 39:18
**exhibits** [1] - 5:22
**Exhibits** [1] - 6:10
**expect** [1] - 37:4

**experience** [1] - 64:16
**expiration** [1] - 39:12
**expired** [2] - 26:11, 39:11
**explained** [1] - 34:11
**extensive** [1] - 39:7
**extra** [1] - 6:20

## F

**F.3d** [4] - 14:15, 20:24, 37:7, 65:23
**facilitate** [1] - 43:17
**facility** [4] - 52:9, 52:18, 59:19, 74:6
**fact** [16] - 9:4, 9:15, 9:22, 10:4, 10:23, 11:1, 11:11, 11:12, 12:2, 25:1, 26:25, 39:21, 43:7, 44:21, 58:13, 68:15
**factor** [1] - 66:24
**factors** [9] - 16:13, 43:25, 45:19, 47:8, 56:2, 66:11, 66:23, 68:7, 69:23
**facts** [11] - 17:2, 25:13, 34:14, 34:17, 34:18, 34:21, 34:23, 36:17, 51:3, 55:10, 73:21
**factual** [16] - 5:12, 7:23, 7:25, 8:10, 8:12, 11:23, 12:12, 12:21, 17:12, 18:18, 22:19, 38:25, 42:11, 44:10, 53:18, 60:10
**fail** [3] - 50:24, 58:9, 73:17
**fall** [1] - 16:6
**falling** [1] - 19:16
**falls** [1] - 17:16
**family** [4] - 46:14, 64:12, 74:7, 74:10
**family's** [1] - 61:22
**fan** [1] - 23:19
**far** [7] - 5:10, 7:11, 19:14, 40:22, 54:21, 63:18, 64:24
**FARINA** [34] - 1:17, 3:16, 5:2, 6:14, 8:15, 8:20, 15:1, 15:17, 26:18, 32:18, 32:23, 32:25, 33:2, 33:14, 33:16, 33:20, 34:3, 34:10, 34:19, 35:11, 35:15, 38:11, 40:7, 40:14, 45:3, 45:14,

45:18, 46:1, 51:11, 51:16, 51:19, 51:21, 52:6, 52:15

**Farina** [7] - 3:16, 8:14, 14:25, 32:15, 35:14, 45:13, 75:3

**Farina's** [1] - 25:8

**father** [2] - 41:5, 59:22

**father's** [2] - 11:1, 25:2

**FBI** [1] - 36:20

**FDA** [5] - 3:8, 20:17, 20:20, 21:3, 21:9, 26:3, 36:20, 53:7, 67:4

**Federal** [5] - 48:3, 48:6, 66:4, 71:22, 71:25

**FEDERAL** [1] - 1:18

**federal** [4] - 3:17, 49:10, 56:24, 70:17

**FEILER** [37] - 1:20, 1:20, 3:10, 5:6, 5:10, 6:2, 6:11, 6:18, 7:9, 12:4, 12:15, 13:7, 13:12, 18:11, 28:20, 35:1, 35:5, 42:16, 53:8, 60:21, 61:7, 62:10, 66:16, 68:21, 68:24, 69:6, 69:14, 69:19, 73:10, 74:4, 74:8, 74:12, 74:19, 75:5, 75:7, 75:14, 75:16

**Feiler** [15] - 3:10, 6:13, 6:17, 12:3, 30:21, 31:11, 35:7, 36:19, 53:9, 61:6, 62:9, 65:3, 66:15, 68:16, 75:3

**Feiler's** [2] - 10:1, 65:12

**female** [1] - 14:8

**fence** [1] - 41:6

**few** [1] - 64:17

**fictitious** [1] - 7:6

**Fifth** [1] - 14:15

**figure** [4] - 21:15, 25:9, 25:11, 29:1

**figuring** [1] - 24:9

**file** [3] - 75:12, 75:15

**filed** [8] - 4:23, 5:22, 6:4, 11:19, 15:2, 38:13, 38:15, 54:15

**fill** [1] - 29:11

**final** [3] - 47:24, 56:15, 73:1

**finances** [3] - 49:18, 57:7, 70:25

**financial** [10] - 48:4, 48:8, 48:18, 49:17, 57:6, 61:19, 70:24, 71:24, 72:2, 72:12

**Financial** [2] - 48:23, 72:17

**findings** [4] - 44:10, 53:18, 58:12, 60:10

**fine** [6] - 47:12, 54:2, 56:5, 60:19, 70:1

**finish** [1] - 58:23

**firearm** [3] - 49:11, 56:25, 70:18

**first** [28] - 3:21, 3:22, 5:4, 5:5, 5:14, 7:1, 7:10, 8:22, 8:25, 9:12, 10:2, 14:25, 19:25, 33:6, 36:7, 36:10, 41:5, 45:14, 49:23, 57:11, 61:8, 62:14, 63:14, 63:15, 66:7, 66:23, 71:4, 75:15

**First** [1] - 1:24

**five** [2] - 19:4, 36:11

**fixed** [2] - 32:10, 32:11

**Flagler** [1] - 1:18

**Floor** [1] - 1:24

**FLORIDA** [1] - 1:1

**Florida** [16] - 1:4, 1:16, 1:19, 1:22, 1:25, 12:23, 12:24, 18:22, 48:24, 59:20, 59:23, 59:24, 72:18, 74:6, 74:9, 74:10

**folks** [7] - 12:9, 12:10, 18:4, 18:15, 20:1, 28:17, 29:18

**follow** [1] - 65:25

**following** [4] - 49:15, 52:24, 57:4, 70:22

**follows** [2] - 48:2, 71:22

**FOR** [5] - 1:15, 1:17, 1:20, 1:23, 2:1

**foray** [1] - 7:10

**foregoing** [1] - 76:3

**foreseeability** [1] - 54:23

**foreseeable** [6] - 13:24, 14:12, 14:19, 26:5, 26:6, 37:13

**foreseen** [3] - 31:17, 31:18

**form** [1] - 25:20

**forth** [14] - 19:9, 19:10, 19:24, 28:24, 30:12, 30:17, 30:25, 47:9, 56:2, 63:3, 64:14, 65:11, 65:24,

69:23

**forward** [2] - 28:16, 46:4

**forwarded** [3] - 48:22, 72:16, 72:19

**four** [2] - 17:20, 22:7

**Fourth** [1] - 1:16

**frankly** [7] - 25:21, 31:2, 32:12, 36:21, 37:2, 39:7, 65:7

**fraud** [2] - 20:13, 20:15, 20:18, 20:20, 26:4

**FreeStyle** [1] - 37:25

**frequently** [1] - 64:12

**front** [1] - 45:21

**fruition** [1] - 35:23

**full** [2] - 46:6, 46:21

**fully** [4] - 51:2, 55:11, 58:12, 73:20

**functioned** [1] - 39:16

**funds** [3] - 50:21, 58:6, 73:14

**furnished** [1] - 22:3

**furtherance** [1] - 13:24

# G

**gain** [5] - 9:18, 21:10, 21:14, 26:15, 26:16

**gains** [2] - 48:18, 72:12

**Gall** [1] - 66:4

**Garcia** [3] - 4:3, 53:15, 59:5

**GARCIA** [1] - 2:1

**gather** [1] - 23:11

**general** [4] - 9:12, 29:14, 29:15, 40:19

**generally** [1] - 21:8

**gentleman** [1] - 29:2

**get-go** [1] - 63:13

**given** [9] - 8:9, 21:6, 21:15, 27:9, 28:14, 37:9, 66:22, 68:12, 68:15

**glucose** [6] - 22:16, 22:17, 22:21, 23:14, 25:15, 38:1

**Gonzalez** [2] - 13:3, 46:23

**goods** [1] - 40:4

**Government** [58] - 5:22, 6:23, 8:21, 10:17, 12:11, 13:14,

15:8, 16:13, 16:17, 16:20, 16:24, 17:8, 24:23, 25:9, 25:11, 27:9, 27:21, 28:11, 31:3, 31:9, 34:15, 34:22, 38:12, 40:11, 41:20, 41:25, 44:3, 44:5, 45:4, 46:15, 46:19, 48:17, 50:9, 50:11, 50:15, 51:7, 51:9, 51:23, 55:5, 55:21, 57:23, 58:1, 58:17, 58:18, 62:15, 63:16, 65:1, 65:2, 66:20, 68:16, 72:11, 73:2, 73:5, 73:25, 74:2, 74:15, 74:20, 75:8

**GOVERNMENT** [1] - 1:15

**Government's** [19] - 5:24, 6:9, 9:7, 9:21, 10:3, 10:18, 13:1, 22:3, 36:25, 38:20, 39:13, 39:17, 40:6, 41:14, 42:3, 43:18, 46:16

**grand** [1] - 45:22

**grandparents** [1] - 46:14

**grant** [2] - 44:7, 68:17

**granted** [4] - 40:8, 50:17, 58:3, 73:7

**great** [1] - 64:15

**greater** [1] - 55:12

**gross** [2] - 48:10, 72:4

**group** [2] - 21:11, 21:14

**guess** [2] - 63:4, 69:16

**guideline** [13] - 16:12, 18:1, 44:10, 44:16, 46:9, 53:18, 53:25, 54:20, 60:10, 60:17, 62:16, 66:8, 66:18

**guidelines** [11] - 15:16, 20:7, 20:9, 20:14, 47:8, 56:1, 65:14, 66:1, 66:5, 69:22

**Guidelines** [1] - 66:4

**guilty** [3] - 28:23, 63:14, 67:3

# H

**half** [1] - 64:23

**hand** [5] - 20:20, 25:13, 27:24, 31:4, 32:8

**handed** [3] - 23:4, 23:9, 31:22

**hands** [1] - 29:20

**happy** [2] - 7:17, 34:23

**harm** [1] - 20:12

**health** [2] - 52:10, 52:16

**healthcare** [1] - 26:4

**hear** [6] - 6:13, 8:14, 8:21, 40:5, 64:11, 75:13

**heard** [2] - 13:16, 14:25

**hearing** [13] - 5:23, 10:5, 21:20, 22:19, 24:19, 44:24, 51:4, 58:14, 59:17, 69:17, 73:22, 74:24, 75:11

**HEARINGS** [1] - 1:10

**heist** [1] - 62:22

**held** [8] - 14:1, 15:5, 26:5, 29:19, 31:13, 31:17, 42:9, 67:4

**hell** [2] - 61:24, 64:11

**help** [2] - 19:6, 25:4

**helped** [1] - 62:5

**hence** [1] - 26:9

**HENRY** [1] - 1:7

**Henry** [10] - 3:2, 3:11, 8:22, 13:5, 25:2, 53:2, 53:9, 60:9, 63:4, 70:5

**hereby** [5] - 47:17, 56:9, 59:11, 70:6, 76:3

**high** [2] - 18:8, 21:15

**hijackers** [1] - 19:25

**hijacking** [5] - 15:10, 16:15, 17:10, 18:13, 18:16

**himself** [2] - 29:24, 64:5

**hired** [2] - 14:5, 14:7

**history** [9] - 16:9, 44:15, 53:24, 60:16, 63:22, 66:25, 67:23, 67:24, 68:10

**hit** [1] - 69:10

**hold** [10] - 10:12, 17:9, 17:19, 19:20, 27:14, 27:17, 28:16, 29:2, 30:8, 30:13

**holding** [2] - 15:8, 16:25

**holds** [2] - 38:3, 42:4

**honest** [1] - 63:13

**Honor** [110] - 3:6, 3:10, 3:13, 3:16, 4:2, 4:7, 4:10, 4:13, 4:16, 4:19, 4:22, 5:2, 5:6, 6:7, 6:11, 6:19, 7:13, 7:21, 8:13, 8:15, 8:24, 8:25, 9:22, 10:15, 11:20, 11:22, 12:4, 12:14, 12:20, 13:8, 13:12, 15:2, 17:6, 18:10, 18:11, 18:12, 20:6, 20:19, 22:16, 23:5, 26:18, 27:20, 28:20, 30:19, 32:2, 34:10, 35:1, 35:11, 36:1, 36:4, 38:10, 38:12, 40:7, 41:4, 42:16, 44:5, 44:21, 45:3, 45:4, 45:9, 45:14, 45:18, 46:16, 50:14, 51:9, 51:11, 51:21, 52:6, 52:17, 53:5, 53:8, 53:11, 53:14, 54:4, 54:5, 54:10, 55:4, 55:6, 57:25, 58:18, 58:20, 59:2, 59:6, 59:7, 59:15, 60:1, 60:4, 60:5, 60:21, 60:22, 61:7, 62:10, 62:11, 65:2, 66:16, 68:21, 69:19, 73:4, 73:10, 74:2, 74:4, 74:5, 74:8, 74:12, 74:19, 74:21, 74:22, 75:7, 75:19
**HONORABLE** [1] - 1:11
**hours** [3] - 49:5, 56:19, 70:12
**housed** [1] - 59:22
**housekeeping** [1] - 59:7
**huge** [1] - 32:13
**hybrid** [1] - 21:13

**I**

**identified** [1] - 67:15
**II** [3] - 16:9, 44:16, 63:22
**illegitimate** [1] - 43:8
**Illinois** [2] - 48:25, 72:19
**immediately** [4] - 28:5, 50:8, 52:18, 57:22
**implicated** [1] - 67:11
**important** [3] - 21:1, 26:21, 27:10

**impose** [1] - 54:16
**imposed** [12] - 45:11, 48:5, 48:8, 51:5, 54:12, 58:15, 61:4, 68:3, 70:1, 71:24, 72:2, 73:23
**imprisoned** [4] - 47:18, 56:10, 59:12, 70:7
**imprisonment** [6] - 44:17, 49:1, 54:1, 56:16, 60:18, 70:9
**Inc** [3] - 10:12, 13:4, 13:6
**incarceration** [4] - 48:2, 48:9, 71:21, 72:3
**incident** [2] - 40:15, 41:9
**include** [4] - 13:23, 38:1, 52:9, 71:15
**included** [5] - 37:20, 41:17, 49:20, 57:9, 71:2
**including** [5] - 40:22, 49:17, 57:6, 66:3, 70:24
**income** [2] - 48:19, 72:13
**increase** [10] - 4:25, 8:19, 17:25, 18:9, 38:6, 38:21, 40:12, 41:21, 43:19
**increased** [1] - 15:6
**incur** [3] - 49:19, 57:8, 71:1
**incurred** [1] - 32:13
**indicated** [4] - 12:11, 17:9, 27:22, 42:18
**indicates** [4] - 5:14, 12:16, 24:13, 33:11
**indication** [1] - 44:25
**indicative** [1] - 9:23
**indictment** [2] - 67:3, 73:6
**individual** [8] - 8:2, 9:3, 30:1, 46:24, 49:22, 57:11, 64:20, 71:4
**individuals** [2] - 10:23, 24:11
**Industries** [4] - 48:3, 48:7, 71:23, 72:1
**inform** [3] - 50:18, 58:4, 73:11
**informant** [4] - 29:9, 30:22, 31:1, 35:17
**information** [8] - 17:13, 21:6, 27:8, 27:11, 37:9, 49:17,

57:6, 70:24
**initiated** [1] - 62:24
**inpatient** [1] - 71:15
**instance** [1] - 15:6
**instead** [3] - 11:19, 17:25, 28:12
**institution** [6] - 52:4, 52:12, 59:4, 59:24, 59:25, 74:16
**insurance** [2] - 35:13, 37:24
**intended** [3] - 15:19, 18:3, 20:12
**interest** [2] - 48:12, 72:6
**interject** [1] - 68:21
**Internet** [3] - 9:17, 9:19, 13:19
**interrupt** [1] - 35:2
**interstate** [1] - 67:5
**introduced** [1] - 5:13
**investigation** [21] - 3:23, 4:6, 4:9, 4:12, 4:15, 4:18, 4:21, 14:4, 24:13, 40:8, 41:23, 44:11, 44:13, 47:7, 53:19, 53:23, 55:1, 55:25, 60:11, 60:15, 69:21
**invoices** [2] - 39:19, 39:21, 43:15
**involve** [1] - 9:4
**involved** [54] - 5:21, 7:24, 8:20, 10:14, 11:12, 11:16, 11:17, 12:10, 13:19, 14:11, 14:20, 15:13, 16:15, 18:20, 19:5, 19:14, 19:24, 22:13, 23:12, 23:13, 24:18, 25:14, 25:16, 25:17, 25:19, 25:20, 26:20, 28:24, 29:2, 30:3, 30:11, 38:5, 38:18, 39:23, 40:17, 41:5, 41:7, 42:24, 43:3, 43:12, 55:4, 61:15, 62:23, 63:2, 63:8, 64:3, 64:4, 64:6, 67:12, 67:18
**involvement** [19] - 5:14, 7:2, 7:16, 8:3, 8:5, 11:25, 13:17, 17:11, 17:13, 17:18, 17:22, 18:23, 18:25, 19:21, 30:16, 42:11, 55:19, 66:21, 68:13
**involves** [3] - 11:8, 26:2, 26:3
**involving** [1] - 20:18
**irrespective** [1] -

36:23
**issue** [5] - 15:12, 22:20, 23:1, 30:24, 51:14
**issues** [3] - 3:21, 5:1, 5:4
**items** [3] - 15:9, 29:18, 41:6
**itself** [3] - 18:16, 40:15, 43:10

**J**

**J&C** [2] - 52:9, 59:19
**jail** [2] - 64:19, 64:22
**JEFFREY** [2] - 1:20, 1:20
**Jeffrey** [2] - 3:10, 53:8
**JOAN** [1] - 1:11
**job** [4] - 48:3, 48:7, 71:23, 72:1
**jobs** [1] - 41:12
**Johannes** [7] - 3:7, 12:5, 12:13, 18:25, 20:5, 42:18, 53:6
**JOHANNES** [41] - 1:15, 3:6, 6:5, 6:7, 8:12, 8:24, 12:14, 12:20, 12:24, 20:6, 24:14, 30:19, 30:21, 36:1, 36:3, 38:12, 38:24, 43:2, 44:5, 44:21, 45:4, 46:16, 50:11, 50:14, 51:8, 52:3, 53:5, 54:5, 55:6, 55:23, 57:25, 58:18, 59:2, 60:22, 65:2, 73:4, 74:1, 74:15, 74:20, 75:6, 75:19
**join** [1] - 65:2
**joined** [2] - 7:23, 11:12
**joining** [1] - 17:7
**joint** [7] - 3:21, 5:1, 11:3, 38:8, 47:25, 54:18, 71:20
**jointly** [3] - 13:25, 29:19, 55:8
**Jr** [6] - 3:3, 8:23, 25:3, 53:2, 65:5, 70:6
**JR** [1] - 1:7
**Judge** [22] - 11:4, 11:20, 13:15, 21:17, 23:19, 24:14, 25:22, 25:25, 26:4, 33:14, 34:3, 39:19, 40:14, 42:1, 46:2, 52:7, 52:15, 54:17, 55:23,

59:18, 65:7, 75:1
**JUDGE** [1] - 1:11
**judge** [8] - 11:18, 27:21, 31:11, 35:15, 38:24, 43:2, 54:14, 58:22
**judgment** [11] - 47:16, 48:5, 50:19, 56:8, 58:5, 59:10, 61:18, 70:5, 71:25, 73:8, 73:12
**June** [5] - 5:16, 5:22, 16:15, 17:10, 18:14
**jury** [1] - 45:22
**justice** [2] - 48:12, 72:6

**K**

**K-N-E-I-R** [1] - 22:6
**keep** [1] - 42:21
**Kentucky** [7] - 15:10, 17:21, 18:14, 18:22, 25:9, 38:3, 62:22
**kilo** [2] - 28:24, 29:3
**kilograms** [1] - 29:3
**kilos** [3] - 28:22, 31:12, 31:13
**kind** [1] - 21:12
**Kneir** [2] - 22:6, 22:7
**knowing** [1] - 32:5
**knowledge** [3] - 12:9, 26:23, 30:7
**known** [3] - 13:3, 21:16, 55:11
**knows** [1] - 62:23

**L**

**labels** [4] - 14:6, 14:7, 43:6, 64:5
**Laboratories** [8] - 21:25, 22:1, 22:6, 22:9, 22:12, 48:25, 67:11, 72:19
**Labs** [7] - 14:6, 23:5, 23:25, 26:17, 32:3, 37:23, 38:2
**Labs'** [1] - 26:14
**lapse** [1] - 61:18
**large** [5] - 9:13, 14:20, 25:2, 31:2, 39:5
**Larsens** [5] - 11:24, 11:25, 12:6, 12:17, 19:2
**last** [4] - 11:4, 12:5, 25:25, 59:18
**LAW** [2] - 1:20, 1:23

**law** [15] - 11:4, 11:6, 11:18, 20:15, 23:10, 25:25, 45:7, 51:3, 54:8, 58:13, 60:25, 61:15, 68:4, 68:12, 73:21
**lead** [1] - 10:6
**leader/organizer** [1] - 65:8
**leading** [1] - 25:5
**learned** [6] - 24:20, 24:21, 55:20, 62:3, 62:4, 64:15
**least** [7] - 7:11, 19:20, 19:21, 27:2, 36:10, 58:23, 58:24
**leave** [1] - 24:5
**legal** [7] - 39:23, 45:7, 45:10, 54:8, 54:11, 60:25, 61:3
**legitimacy** [2] - 40:3, 43:15
**legitimate** [3] - 43:7, 43:8, 43:16
**legitimize** [1] - 39:22
**LENARD** [1] - 1:11
**less** [6] - 63:18, 63:25, 64:1, 65:13, 68:16, 69:10
**lesser** [1] - 66:21
**level** [19] - 4:25, 8:9, 15:7, 16:3, 16:6, 16:7, 16:9, 25:19, 38:16, 38:21, 40:12, 42:14, 44:3, 44:15, 51:13, 52:13, 53:24, 60:16
**Level** [1] - 63:20
**levels** [2] - 15:7, 51:16
**life** [2] - 61:23, 62:19
**light** [1] - 17:2
**likely** [1] - 19:15
**liken** [1] - 30:5
**likewise** [1] - 64:13
**limit** [1] - 24:24
**limited** [10] - 17:19, 24:4, 25:24, 30:6, 31:21, 49:20, 57:9, 64:7, 71:2
**line** [3] - 41:8, 41:10, 42:10
**lines** [3] - 49:20, 57:9, 71:2
**link** [3] - 10:23, 24:10, 25:1
**linked** [1] - 9:8
**LISA** [2] - 2:2, 76:8
**list** [1] - 44:1
**Lite** [4] - 22:17, 22:20, 23:2, 23:14

**literally** [1] - 24:4
**living** [2] - 41:8, 64:11
**load** [1] - 17:21
**loans** [3] - 49:20, 57:9, 71:2
**local** [3] - 49:10, 56:24, 70:17
**look** [12] - 5:25, 6:12, 6:25, 7:4, 20:9, 23:3, 23:6, 23:7, 33:6, 39:8, 39:9
**looking** [6] - 10:7, 23:2, 23:9, 28:12, 29:21, 34:18
**looks** [1] - 39:3
**losing** [1] - 21:10
**loss** [40] - 4:24, 14:23, 15:2, 15:6, 15:19, 15:20, 15:22, 17:24, 18:3, 18:7, 20:8, 20:9, 20:10, 20:11, 20:17, 21:2, 21:4, 21:6, 21:9, 21:13, 21:18, 21:19, 21:23, 21:24, 22:10, 22:15, 22:25, 23:5, 26:6, 26:14, 32:11, 32:13, 37:1, 37:9, 37:21, 38:7, 44:22
**losses** [7] - 22:4, 47:22, 47:24, 56:13, 56:15, 72:24, 73:1
**lost** [2] - 24:2, 26:17
**Louisville** [2] - 15:10, 38:3
**low** [10] - 46:8, 54:19, 55:7, 55:14, 55:20, 55:21, 62:16, 64:18, 65:15, 65:18
**lower** [2] - 55:15, 64:22
**lucrative** [1] - 43:13

## M

**ma'am** [3] - 6:2, 52:22, 61:2
**mail** [1] - 75:6
**major** [3] - 44:12, 53:22, 60:14
**male** [2] - 7:3, 7:8
**mandatory** [3] - 47:13, 56:6, 70:2
**manner** [8] - 12:10, 50:3, 51:5, 51:12, 57:17, 58:15, 71:10, 73:23
**MARINO** [13] - 1:7,

1:7, 1:18, 1:23, 4:7, 4:10, 4:13, 4:16, 45:9, 45:17, 46:13, 54:10, 55:3
**Marino** [79] - 3:2, 3:3, 3:14, 3:17, 4:5, 4:6, 4:11, 6:14, 6:15, 7:22, 8:3, 8:11, 8:23, 9:6, 9:9, 10:15, 10:23, 10:24, 10:25, 13:4, 13:5, 13:21, 14:5, 15:5, 17:7, 24:6, 24:10, 24:16, 24:21, 25:1, 25:4, 27:20, 27:21, 33:11, 34:1, 34:5, 36:6, 37:17, 41:4, 41:5, 43:5, 43:6, 44:9, 45:5, 45:16, 46:11, 46:17, 46:19, 47:3, 47:16, 50:18, 52:18, 53:1, 53:12, 53:17, 54:6, 55:2, 55:12, 55:16, 55:18, 55:19, 56:8, 58:4, 59:11, 60:3, 62:12, 62:13, 62:24, 63:19, 63:21, 63:24, 64:1, 65:6, 65:10, 65:14, 65:16, 66:21, 68:17
**Marino's** [1] - 37:3
**market** [3] - 9:20, 14:12, 40:1
**marketing** [23] - 4:25, 5:8, 5:20, 6:23, 7:12, 8:4, 8:17, 8:19, 9:1, 9:4, 9:10, 10:20, 11:6, 11:8, 11:14, 11:17, 12:2, 13:11, 13:20, 14:2, 14:12, 14:21, 19:24
**marshals** [1] - 74:17
**Marshals** [2] - 52:5, 59:4
**Mart** [3] - 15:23, 16:1, 17:15
**mass** [22] - 4:25, 5:7, 5:20, 6:23, 7:12, 8:4, 8:17, 8:18, 9:1, 9:4, 9:10, 10:20, 11:6, 11:8, 11:17, 12:2, 13:11, 13:20, 14:2, 14:12, 14:21, 19:24
**mass-marketing** [7] - 4:25, 9:1, 10:20, 11:6, 12:2, 14:2, 14:21
**material** [3] - 26:22, 48:15, 72:10
**math** [1] - 35:4
**mathematically** [1] -

35:1
**matter** [7] - 11:10, 19:5, 19:16, 20:4, 32:9, 59:7, 76:5
**matters** [1] - 58:23
**Mauskar** [1] - 14:14
**MAUSKAR** [1] - 14:15
**Max** [2] - 3:8, 53:7
**max** [1] - 59:8
**mean** [5] - 10:20, 11:2, 27:2, 27:7, 43:9
**means** [5] - 9:20, 14:17, 26:22, 27:13, 71:16
**medical** [2] - 52:9, 52:12
**men** [1] - 27:14
**mention** [1] - 51:22
**mentioned** [2] - 7:1, 12:6
**mere** [1] - 39:21
**merely** [1] - 19:6
**merit** [1] - 42:4
**met** [1] - 46:24
**method** [2] - 4:24, 21:13
**MIAMI** [1] - 1:2
**Miami** [14] - 1:4, 1:16, 1:19, 1:22, 1:25, 5:19, 9:14, 11:25, 29:24, 48:23, 48:24, 62:25, 72:17, 72:18
**might** [4] - 16:20, 20:1, 35:4, 69:9
**million** [6] - 15:6, 16:24, 17:16, 22:12, 37:1, 38:8
**million-plus** [1] - 16:24
**minimum** [2] - 48:7, 72:1
**Minnesota** [6] - 11:24, 11:25, 12:6, 12:18, 12:21, 12:22
**minus** [2] - 16:7, 37:23
**minute** [3] - 42:6, 52:19, 52:20
**misbranding** [1] - 67:4
**mitigation** [3] - 45:12, 54:13, 61:5
**moment** [2] - 6:1, 46:20
**money** [11] - 15:18, 24:5, 26:13, 31:4, 31:9, 34:5, 42:21, 43:14, 51:17, 61:20
**monitor** [2] - 48:14,

72:9
**monthly** [2] - 48:10, 72:4
**months** [35] - 16:10, 17:20, 19:4, 46:17, 47:2, 47:18, 47:19, 55:16, 56:10, 59:7, 59:8, 59:12, 59:13, 61:23, 61:25, 62:1, 62:3, 63:3, 63:22, 64:1, 64:7, 64:24, 66:14, 66:17, 66:18, 66:22, 68:15, 68:18, 69:2, 69:10, 69:12, 70:7
**months'** [3] - 44:17, 54:1, 60:18
**morning** [16] - 3:1, 3:4, 3:6, 3:9, 3:10, 3:12, 3:13, 3:15, 3:16, 3:19, 4:2, 4:4, 13:17, 17:6, 18:11, 44:22
**most** [5] - 15:12, 46:24, 46:25, 64:12
**mother** [1] - 46:14
**motion** [14] - 41:1, 44:3, 44:6, 44:7, 50:9, 50:13, 50:17, 55:14, 57:23, 58:3, 73:2, 73:7, 75:9, 75:15
**motorcycle** [1] - 67:25
**move** [1] - 14:23
**moves** [3] - 50:15, 58:1, 73:5
**MR** [89] - 3:10, 3:13, 3:16, 5:2, 5:3, 5:6, 5:10, 6:2, 6:11, 6:14, 6:15, 6:18, 7:9, 7:21, 8:15, 8:20, 12:4, 12:15, 13:7, 13:12, 13:15, 15:1, 15:17, 17:6, 18:11, 26:18, 27:20, 28:20, 32:18, 32:23, 32:25, 33:2, 33:14, 33:16, 33:20, 34:3, 34:10, 34:19, 35:1, 35:5, 35:11, 35:15, 38:10, 38:11, 40:7, 40:14, 41:4, 41:21, 42:1, 42:16, 45:3, 45:14, 45:18, 46:1, 51:11, 51:16, 51:19, 51:21, 52:6, 52:15, 52:17, 52:22, 53:8, 53:11, 54:4, 54:14, 58:20, 58:22, 59:18, 60:1, 60:4, 60:21, 61:7, 62:10, 66:16, 68:21, 68:24,

69:6, 69:14, 69:19,
73:10, 74:4, 74:8,
74:12, 74:19, 75:5,
75:7, 75:14, 75:16
**MS** [40] - 3:6, 6:5,
6:7, 8:12, 8:24, 12:14,
12:20, 12:24, 20:6,
24:14, 30:19, 30:21,
36:1, 36:3, 38:12,
38:24, 43:2, 44:5,
44:21, 45:4, 46:16,
50:11, 50:14, 51:8,
52:3, 53:5, 54:5, 55:6,
55:23, 57:25, 58:18,
59:2, 60:22, 65:2,
73:4, 74:1, 74:15,
74:20, 75:6, 75:19
**multiplication** [1] -
17:24
**multiplied** [1] - 15:25
**must** [9] - 45:6, 48:4,
48:7, 54:7, 60:24,
66:5, 66:19, 71:23,
72:1
**Muñoz** [2] - 20:23,
37:7

**N**

**name** [2] - 7:4, 22:8
**Naples** [1] - 9:14
**nature** [3] - 30:4,
66:25, 68:9
**near** [1] - 74:10
**necessarily** [2] - 9:2,
21:5
**necessary** [1] -
63:10
**need** [6] - 31:3, 31:5,
59:16, 68:2, 68:11,
75:15
**negative** [1] - 51:25
**negotiate** [3] - 33:9,
36:12, 36:13
**negotiating** [2] -
30:4, 38:5
**negotiation** [1] -
36:5
**negotiations** [2] -
33:7, 67:18
**net** [4] - 21:10,
21:14, 26:15, 26:16
**never** [4] - 28:17,
32:12, 34:11, 35:23
**new** [1] - 62:20
**next** [1] - 33:21
**NO** [1] - 1:2
**non** [1] - 44:1
**non-exhaustive** [1] -

44:1
**none** [3] - 6:14, 6:15,
58:18
**North** [2] - 48:23,
72:17
**Northeast** [1] - 1:16
**note** [1] - 27:10
**noted** [1] - 51:18
**nothing** [7] - 13:19,
18:5, 18:15, 18:21,
40:25, 61:24, 74:20
**notice** [3] - 5:25,
6:19, 6:21
**November** [2] - 12:7,
19:1
**number** [16] - 9:7,
14:10, 14:20, 16:1,
16:2, 16:5, 16:14,
16:23, 17:16, 17:23,
28:23, 32:19, 36:6,
39:3, 69:10
**numbers** [4] - 17:15,
19:15, 32:3
**numeral** [3] - 44:16,
53:25, 60:17

**O**

**object** [5] - 40:7,
41:15, 41:20, 41:25,
51:13
**objected** [1] - 15:11
**objecting** [3] - 8:18,
17:1, 40:14
**objection** [18] - 8:7,
8:16, 13:9, 13:10,
13:22, 14:23, 15:2,
17:12, 40:6, 40:13,
43:19, 51:11, 52:2,
54:15, 59:1, 59:2,
74:14, 74:15
**objections** [21] -
4:24, 6:9, 8:22, 19:9,
38:8, 38:9, 51:2, 51:4,
51:7, 51:8, 54:16,
54:21, 54:22, 58:12,
58:14, 58:17, 73:20,
73:22, 73:25, 74:1,
74:4
**obligations** [6] -
48:5, 48:8, 48:20,
71:24, 72:2, 72:14
**obtain** [4] - 29:16,
49:25, 57:14, 71:7
**obtaining** [3] - 49:23,
57:12, 71:5
**obviously** [4] - 55:9,
61:20, 62:18, 62:22
**occur** [3] - 19:2,

30:23, 33:18
**occurred** [10] - 5:16,
7:15, 8:5, 10:2, 10:18,
17:10, 23:13, 33:16,
34:10, 39:20
**occurs** [3] - 7:12,
12:6, 18:14
**october** [1] - 52:4
**October** [6] - 59:3,
60:7, 74:13, 74:16,
75:1, 75:2
**OF** [4] - 1:1, 1:4,
1:20, 1:23
**Offense** [1] - 15:3
**offense** [26] - 9:1,
9:2, 9:4, 11:16, 14:17,
15:7, 16:3, 16:6, 16:7,
16:9, 19:23, 20:12,
23:12, 38:17, 43:23,
44:15, 53:24, 60:16,
66:25, 68:3, 68:5,
68:9, 68:11
**offense-based** [1] -
9:1
**offer** [1] - 61:12
**offering** [3] - 26:24,
34:6, 67:13
**Office** [8] - 48:13,
48:14, 48:23, 52:5,
59:4, 72:8, 72:17
**office** [3] - 49:7,
56:21, 70:14
**officer** [14] - 33:25,
40:9, 41:17, 49:18,
49:24, 50:4, 57:7,
57:13, 57:18, 67:19,
70:25, 71:6, 71:11
**OFFICER** [8] - 4:2,
53:14, 59:6, 59:15,
60:5, 60:8, 69:4, 69:7
**officer's** [1] - 42:3
**officers** [1] - 61:15
**OFFICES** [2] - 1:20,
1:23
**oftentimes** [1] -
28:21
**omission** [1] - 41:22
**omissions** [1] -
13:24
**once** [3] - 18:11,
69:8, 75:12
**one** [37] - 6:1, 10:24,
11:22, 12:19, 13:2,
16:12, 19:12, 19:21,
24:5, 24:17, 28:4,
28:23, 28:24, 29:3,
29:9, 32:2, 34:15,
41:6, 41:9, 41:14,
42:8, 42:10, 43:12,
44:17, 46:22, 49:3,

51:15, 54:1, 59:18,
60:18, 63:14, 63:15,
65:10, 67:16, 67:24,
68:22
**one-kilo** [1] - 29:3
**operate** [1] - 63:23
**operated** [3] - 39:16,
43:16, 63:20
**operating** [1] - 62:19
**opinion** [3] - 20:22,
20:24, 23:6
**opportunity** [6] -
40:18, 41:13, 41:20,
41:23, 42:20, 66:9
**opposed** [2] - 16:23,
30:7
**order** [10] - 7:5,
11:10, 29:11, 31:5,
39:2, 48:8, 59:17,
69:1, 72:2, 73:8
**ordered** [10] - 47:13,
47:21, 50:5, 56:6,
56:12, 57:19, 70:3,
71:19, 72:20, 72:23
**originated** [1] - 63:1
**otherwise** [1] - 7:18
**outpatient** [1] -
71:15
**outside** [1] - 18:5
**overall** [1] - 30:7
**overrule** [1] - 13:22
**overruled** [1] - 38:8
**own** [9] - 10:11,
23:18, 23:20, 25:18,
29:20, 41:12, 42:19,
43:7
**owner** [1] - 61:22
**owners** [1] - 67:15

**P**

**P.H** [1] - 33:22
**p.m** [2] - 1:6, 75:1
**packages** [1] - 35:22
**Page** [3] - 8:1, 38:15,
54:18
**Pages** [1] - 1:8
**paid** [1] - 48:24
**paragraph** [1] - 15:5
**Paragraph** [15] -
14:3, 15:3, 17:1, 17:8,
17:14, 33:6, 33:8,
33:22, 36:4, 36:17,
36:18, 37:16, 54:18,
55:10, 62:15
**Paragraphs** [1] -
33:23
**Park** [2] - 48:25,
72:19

**part** [7] - 7:25, 12:7,
12:12, 14:3, 24:7,
39:4, 59:20
**participant** [1] - 11:3
**participants** [1] -
42:13
**participate** [3] -
68:25, 69:1, 71:12
**participated** [2] -
67:17, 67:22
**participation** [2] -
30:10, 71:14
**particular** [3] -
12:25, 21:21, 29:21
**particularly** [2] -
19:20, 20:16
**parties** [8] - 33:4,
44:20, 47:6, 55:11,
55:25, 66:8, 68:19,
69:21
**parts** [1] - 42:12
**party** [1] - 71:18
**past** [2] - 61:23,
61:25
**path** [1] - 25:6
**pay** [20] - 14:8,
33:12, 36:21, 47:12,
47:25, 48:4, 48:7,
48:10, 48:16, 50:5,
56:5, 57:19, 70:1,
71:17, 71:19, 71:23,
72:1, 72:4, 72:10,
72:20
**payable** [2] - 48:21,
72:15
**paying** [1] - 34:1
**payment** [7] - 48:2,
48:11, 48:14, 71:18,
71:21, 72:5, 72:9
**payments** [2] -
48:17, 72:11
**pend** [1] - 58:2
**people** [4] - 11:10,
27:17, 33:12, 67:16
**per** [5] - 15:24,
33:13, 37:19, 48:7,
72:1
**percent** [4] - 48:4,
48:10, 71:23, 72:4
**perhaps** [1] - 19:17
**period** [6] - 16:19,
48:1, 50:24, 58:9,
71:21, 73:17
**permission** [3] -
49:23, 57:12, 71:5
**permit** [1] - 62:16
**permitted** [1] - 69:15
**person** [23] - 13:3,
26:25, 27:16, 27:22,
28:2, 28:3, 28:14,

29:7, 29:22, 29:23, 30:6, 34:6, 38:22, 43:6, 43:22, 46:25, 49:7, 50:2, 56:21, 57:17, 64:2, 70:14, 71:9
**person's** [1] - 9:2
**personal** [4] - 49:18, 57:7, 58:24, 70:25
**persons** [2] - 67:15, 68:6
**pertains** [1] - 73:6
**pharmaceuticals** [3] - 20:18, 21:3, 26:4
**phone** [1] - 16:18
**physical** [1] - 32:8
**physically** [1] - 11:1
**pieces** [1] - 24:8
**place** [7] - 5:17, 10:25, 16:17, 19:3, 19:25, 62:22, 65:11
**placed** [5] - 49:2, 52:11, 56:17, 70:10, 73:9
**places** [1] - 9:15
**Plaintiff** [1] - 1:5
**plea** [9] - 8:11, 10:5, 22:19, 24:19, 54:17, 55:7, 55:22, 62:14, 65:17
**plead** [2] - 24:23, 63:14
**pleading** [3] - 11:21, 20:23, 40:12
**pleadings** [2] - 11:19, 13:15
**pled** [6] - 11:5, 11:15, 11:16, 28:23, 67:2
**plus** [1] - 16:24
**point** [16] - 8:25, 11:22, 20:16, 21:8, 24:15, 27:15, 29:4, 29:13, 34:20, 39:17, 41:2, 55:17, 62:23, 63:3, 63:23, 67:24
**points** [2] - 16:8, 18:25
**position** [10] - 5:10, 7:13, 7:16, 18:13, 33:5, 38:20, 39:13, 46:16, 65:6, 65:12
**possess** [4] - 49:12, 57:1, 67:5, 70:19
**possessed** [2] - 27:24, 28:17
**possessing** [3] - 49:11, 56:25, 70:18
**possession** [4] - 28:18, 29:18, 32:20,

67:6
**possible** [2] - 31:2, 59:24
**possibly** [2] - 29:16, 30:14
**posted** [5] - 9:8, 10:10, 10:25, 11:11, 46:23
**postings** [1] - 46:25
**posture** [2] - 28:12, 42:4
**precedent** [2] - 26:1, 66:3
**precedes** [1] - 18:23
**precision** [1] - 21:5
**preclude** [1] - 48:17, 72:11
**prepared** [1] - 44:1
**present** [9] - 3:11, 3:14, 3:18, 10:17, 11:1, 25:9, 34:23, 53:9, 53:12
**presentation** [1] - 46:5
**presented** [3] - 17:2, 40:18, 41:13
**presentence** [21] - 3:23, 4:6, 4:9, 4:12, 4:15, 4:18, 4:21, 14:4, 24:13, 40:8, 41:22, 44:11, 44:13, 47:7, 53:19, 53:23, 55:1, 55:25, 60:11, 60:15, 69:21
**preserve** [1] - 51:14
**pretrial** [1] - 51:24
**pretty** [1] - 55:12
**previously** [3] - 7:1, 13:16, 42:18
**price** [11] - 26:24, 30:4, 30:25, 31:1, 31:5, 33:12, 33:18, 35:9, 36:12, 36:13, 37:22
**pricing** [2] - 30:24, 31:8
**primary** [1] - 43:3
**principal** [3] - 49:21, 57:10, 71:3
**printing** [3] - 41:10, 43:5, 64:4
**Prison** [4] - 48:3, 48:6, 71:23, 72:1
**Prisons** [10] - 47:18, 48:12, 49:6, 52:14, 56:10, 56:20, 59:12, 70:7, 70:13, 72:7
**privately** [1] - 13:7
**PROBATION** [9] - 2:1, 4:2, 53:14, 59:6,

59:15, 60:5, 60:8, 69:4, 69:7
**probation** [14] - 40:9, 49:7, 49:18, 49:24, 50:4, 56:21, 57:7, 57:12, 57:18, 64:18, 70:14, 70:25, 71:5, 71:11
**Probation** [11] - 3:4, 3:25, 4:3, 22:2, 38:14, 44:21, 48:13, 53:3, 53:15, 72:8
**problem** [2] - 30:23, 31:7
**problems** [1] - 42:19
**procedures** [1] - 65:24
**proceed** [5] - 5:5, 5:6, 5:7, 6:17, 53:17
**proceeding** [1] - 75:8
**proceedings** [2] - 52:24, 76:4
**Proceedings** [1] - 75:23
**product** [3] - 5:19, 22:5, 32:10
**products** [5] - 10:12, 26:3, 26:6, 26:8
**proffer** [12] - 5:12, 7:23, 7:25, 8:10, 8:12, 11:23, 12:12, 12:21, 18:18, 22:19, 38:25, 42:11
**proffered** [3] - 22:20, 24:7, 24:18
**proffers** [1] - 17:12
**program** [8] - 68:25, 69:2, 69:5, 69:7, 69:11, 69:16, 71:13, 73:9
**prohibited** [3] - 49:11, 56:25, 70:18
**promote** [2] - 68:4, 68:11
**prong** [3] - 38:21, 42:8, 43:21
**pronounced** [3] - 45:8, 54:9, 61:1
**properly** [1] - 34:22
**property** [21] - 38:2, 38:18, 38:19, 38:23, 38:25, 39:1, 39:6, 39:10, 39:14, 39:15, 40:19, 43:23, 50:3, 57:17, 67:6, 67:7, 67:8, 67:25, 68:13, 68:14, 71:10
**proposed** [1] - 65:4
**prosecute** [3] -

50:21, 58:7, 73:14
**prosecution** [1] - 61:14
**prosecutor** [1] - 23:19
**prove** [1] - 16:18
**provide** [5] - 49:16, 57:5, 68:4, 68:12, 70:23
**provided** [5] - 22:2, 27:23, 35:10, 36:3, 39:20
**providing** [1] - 38:5
**provision** [1] - 15:15
**provisions** [1] - 20:13
**PSI** [14] - 16:25, 17:9, 17:14, 24:14, 36:25, 38:25, 41:15, 42:6, 42:7, 42:12, 52:10, 55:9, 55:10, 68:24
**PUBLIC** [1] - 1:18
**public** [1] - 3:17
**publicly** [1] - 61:17
**published** [1] - 20:22
**Pugh** [3] - 65:23, 66:2, 66:7
**punishment** [2] - 68:4, 68:12
**purchase** [7] - 7:5, 9:5, 9:13, 33:7, 33:9
**purchased** [1] - 33:22
**purchases** [1] - 33:24
**purposes** [2] - 5:23, 24:24
**pursuant** [12] - 37:7, 38:7, 47:15, 47:21, 56:7, 56:12, 62:14, 62:17, 66:3, 70:4, 72:23, 75:9
**put** [4] - 10:24, 17:25, 20:20, 65:10
**puts** [1] - 16:2
**putting** [2] - 24:8, 55:13
**puzzle** [1] - 24:9

**Q**

**quantities** [1] - 31:2
**quantity** [3] - 30:23, 31:18, 39:5
**quarter** [2] - 48:7, 72:2
**questioning** [1] - 3:22

**questions** [1] - 7:17

**R**

**raised** [1] - 37:1
**range** [13] - 16:12, 18:1, 19:16, 19:18, 20:3, 30:18, 44:16, 46:9, 53:25, 60:17, 65:15, 66:18
**rate** [2] - 48:10, 72:4
**RDR** [2] - 2:2, 76:8
**reach** [1] - 9:18
**read** [4] - 4:5, 4:11, 4:17, 42:12
**reading** [2] - 28:1, 33:3
**ready** [1] - 29:18
**real** [1] - 30:16
**realistic** [1] - 64:22
**really** [12] - 18:3, 21:24, 22:21, 23:1, 27:7, 30:17, 31:15, 31:18, 32:9, 52:13, 55:14, 65:10
**reason** [8] - 15:11, 16:11, 26:12, 34:16, 37:1, 42:25, 61:18
**reasonable** [24] - 15:12, 15:17, 15:22, 16:11, 16:23, 17:2, 18:2, 19:19, 20:3, 21:6, 21:15, 26:5, 26:6, 27:18, 31:16, 37:9, 50:3, 54:23, 57:17, 57:18, 71:10
**reasonably** [4] - 13:23, 14:11, 14:19, 37:13
**reasons** [6] - 8:7, 9:12, 42:14, 46:7, 51:22, 63:7
**rebrand** [1] - 26:12
**rebranded** [2] - 23:17, 39:1
**receive** [7] - 45:6, 52:12, 54:7, 60:24, 63:25, 64:23, 67:5
**received** [5] - 21:11, 35:15, 39:13, 55:16, 65:16
**receiving** [5] - 38:18, 38:19, 38:22, 39:14, 43:22
**recess** [4] - 52:21, 52:23, 60:2, 75:18
**recite** [1] - 33:4
**reciting** [1] - 11:20
**recognize** [1] - 26:21

**recommend** [7] - 52:11, 55:7, 59:23, 62:15, 73:8, 74:5, 74:9

**recommendation** [7] - 52:16, 54:19, 55:20, 59:19, 59:21, 65:3

**recommending** [1] - 55:21

**recommends** [1] - 68:24

**reconsider** [1] - 54:14

**reconsidering** [1] - 54:21

**record** [5] - 3:5, 4:1, 51:18, 52:8, 53:4

**red** [3] - 23:4, 23:9, 31:22

**red-handed** [3] - 23:4, 23:9, 31:22

**reduce** [1] - 33:11

**reduced** [1] - 26:23

**reduction** [4] - 18:2, 41:1, 46:4, 75:9

**reference** [1] - 30:21

**referencing** [1] - 36:19

**referring** [1] - 69:4

**reflect** [1] - 68:3

**reflected** [1] - 42:11

**Reform** [3] - 47:15, 56:7, 70:4

**regard** [7] - 3:23, 5:6, 8:22, 12:5, 13:21, 18:13, 44:9

**regarding** [16] - 5:7, 6:19, 8:16, 14:19, 15:19, 17:3, 18:12, 34:12, 46:4, 46:5, 50:9, 51:17, 52:16, 54:24, 57:23, 73:2

**regular** [1] - 43:24

**relabel** [3] - 14:8, 14:9, 39:8

**relabeled** [2] - 39:2, 39:11

**relabeling** [7] - 14:21, 39:8, 39:9, 55:13, 65:11, 67:20, 67:22

**related** [1] - 29:15

**relating** [2] - 8:4, 41:10

**relation** [1] - 45:22

**relative** [2] - 63:24, 64:1

**relatively** [1] - 62:20

**release** [21] - 44:17, 48:9, 49:1, 49:2, 49:5,

49:9, 49:14, 51:24, 54:1, 56:16, 56:17, 56:19, 56:23, 57:3, 60:18, 70:9, 70:10, 70:12, 70:16, 70:21, 72:3

**released** [3] - 49:8, 56:22, 70:15

**relevant** [16] - 13:23, 14:18, 14:19, 32:16, 32:22, 33:3, 34:9, 34:18, 34:24, 35:8, 37:11, 37:13, 37:21, 43:20, 54:24, 54:25

**reliable** [1] - 37:10

**relied** [1] - 28:13

**rely** [3] - 11:19, 34:15, 34:16

**relying** [5] - 25:25, 26:1, 28:3, 28:11, 28:15

**remaining** [6] - 50:10, 50:12, 50:15, 57:24, 58:1, 73:3

**rendered** [1] - 71:16

**report** [27] - 4:6, 4:9, 4:12, 4:15, 4:18, 4:21, 14:4, 24:12, 24:13, 40:8, 41:23, 42:2, 44:11, 44:14, 47:7, 48:15, 49:6, 53:20, 53:23, 55:1, 56:1, 56:20, 60:12, 60:15, 69:21, 70:13, 72:9

**REPORTED** [1] - 2:2

**reported** [2] - 14:7, 67:21

**Reporterlisaedwar ds@gmail.com** [2] - 2:3, 76:9

**reports** [1] - 3:24

**represent** [4] - 12:20, 50:22, 58:8, 73:15

**reprint** [1] - 14:5

**reprinted** [1] - 43:6

**request** [5] - 11:1, 17:8, 41:15, 59:18, 65:25

**requested** [1] - 66:11

**resale** [1] - 32:7

**resell** [1] - 32:12

**reset** [2] - 22:7, 44:23

**resold** [1] - 39:2

**resources** [1] - 61:16

**respect** [9] - 10:15, 11:6, 21:2, 21:22, 23:13, 25:8, 65:12, 68:4, 68:11

**respond** [1] - 37:17

**responded** [1] - 12:25

**response** [8] - 8:8, 11:13, 12:3, 13:13, 37:18, 38:13, 38:15, 40:5

**responsibility** [6] - 16:8, 29:7, 46:21, 61:17, 62:5, 63:11

**responsible** [15] - 7:14, 14:1, 15:8, 19:20, 26:5, 27:3, 27:14, 27:18, 29:3, 29:19, 30:9, 30:13, 31:13, 38:4, 61:22

**restitution** [24] - 21:20, 21:21, 44:19, 44:23, 44:25, 47:12, 47:25, 48:10, 48:14, 48:19, 48:21, 56:5, 59:17, 70:2, 71:20, 72:4, 72:9, 72:13, 72:15, 72:18, 74:23, 75:10

**resulted** [1] - 33:7

**results** [1] - 52:1

**retail** [3] - 15:23, 16:1, 22:25

**revealed** [1] - 39:12

**review** [3] - 44:12, 53:21, 60:13

**reviewed** [1] - 42:3

**revised** [16] - 4:5, 4:9, 4:12, 4:15, 4:17, 4:21, 14:4, 44:11, 44:13, 47:7, 53:19, 53:22, 54:25, 55:25, 60:11, 60:14

**revolved** [1] - 67:9

**ridiculous** [1] - 29:4

**ripped** [1] - 26:25

**Rita** [1] - 66:4

**Robert** [2] - 27:21, 41:5

**ROBERTO** [6] - 1:7, 1:23, 4:13, 4:16, 54:10, 55:3

**Roberto** [39] - 3:3, 3:14, 4:11, 6:15, 7:22, 8:23, 10:15, 10:23, 10:24, 13:21, 17:7, 24:6, 24:10, 25:4, 34:1, 37:3, 43:5, 52:17, 53:1, 53:12, 54:6, 55:12, 55:19, 56:8, 59:11, 60:2, 62:12, 62:24, 62:25, 63:1, 63:19, 63:24, 65:6, 65:10, 65:13,

65:16, 66:21, 68:17

**role** [22] - 9:3, 10:6, 10:21, 11:15, 11:23, 19:6, 19:22, 21:22, 24:4, 24:17, 24:24, 25:5, 25:24, 29:22, 30:3, 30:7, 37:4, 46:22, 55:12, 55:18, 65:13

**roles** [3] - 9:25, 21:16, 65:9

**Roman** [3] - 44:16, 53:25, 60:17

**Room** [2] - 48:24, 72:18

**Rule** [1] - 75:9

**ruled** [1] - 54:22

**rulings** [1] - 54:23

**run** [5] - 40:4, 49:4, 56:18, 59:14, 70:11

**running** [1] - 43:8

## S

**sale** [22] - 6:21, 10:2, 10:3, 11:23, 13:6, 19:1, 19:2, 19:12, 22:13, 24:5, 24:17, 26:24, 30:21, 31:7, 36:15, 39:24, 63:10, 67:4, 67:6, 67:9, 67:13, 67:17

**sales** [9] - 10:16, 11:2, 25:17, 29:3, 30:1, 31:6, 36:18, 39:20, 64:5

**salesman** [2] - 29:22, 30:4

**salesperson** [6] - 10:6, 10:9, 19:7, 19:23, 63:5, 63:9

**Salvation** [2] - 33:24, 67:16

**sample** [1] - 9:22

**Sara** [3] - 4:1, 4:2, 53:15

**SARA** [1] - 2:1

**satisfied** [1] - 43:21

**satisfy** [2] - 48:19, 72:13

**savvy** [1] - 10:10

**saw** [3] - 42:5, 42:6, 61:20

**scenario** [1] - 41:7

**schedule** [2] - 72:6, 75:10

**search** [3] - 50:2, 57:16, 71:9

**seat** [1] - 45:16

**seated** [2] - 3:1, 52:25

**second** [5] - 12:19, 38:21, 42:8, 43:21, 68:13

**Section** [9] - 20:14, 47:9, 47:22, 48:23, 56:3, 56:13, 69:23, 72:17, 72:24

**security** [2] - 22:5, 42:17

**see** [8] - 9:7, 10:18, 20:15, 20:16, 28:9, 33:14, 40:10, 42:5

**seeing** [1] - 10:8

**seem** [2] - 39:22, 40:3

**sees** [1] - 28:21

**segregate** [2] - 29:6, 30:16

**self** [4] - 50:1, 57:16, 60:6, 71:8

**self-employment** [3] - 50:1, 57:16, 71:8

**self-surrender** [1] - 60:6

**sell** [15] - 13:19, 15:14, 27:24, 28:5, 28:18, 32:9, 33:10, 34:7, 36:13, 39:6, 40:24, 63:2, 67:6, 67:13, 68:1

**selling** [15] - 9:20, 15:13, 23:15, 25:14, 25:23, 27:7, 27:16, 38:19, 38:22, 39:15, 40:15, 41:6, 42:17, 43:22, 68:14

**send** [1] - 75:6

**sense** [5] - 18:8, 30:8, 62:4, 62:5, 64:19

**sent** [1] - 44:22

**sentence** [33] - 16:10, 22:7, 40:25, 45:6, 45:7, 45:11, 46:4, 46:17, 47:2, 50:20, 51:5, 54:7, 54:8, 54:12, 54:16, 55:14, 58:5, 58:15, 60:24, 60:25, 61:4, 63:25, 64:19, 66:9, 66:12, 66:13, 68:3, 69:2, 69:9, 69:15, 73:13, 73:23, 75:9

**sentenced** [1] - 54:19

**SENTENCING** [1] - 1:10

**sentencing** [12] -

3:20, 5:13, 5:23, 15:15, 24:25, 47:8, 51:3, 53:13, 58:13, 65:24, 73:21
**Sentencing** [4] - 47:15, 56:7, 66:4, 70:4
**separate** [3] - 7:19, 43:9, 59:17
**September** [2] - 18:19
**seriousness** [2] - 68:3, 68:11
**served** [3] - 47:20, 56:11, 70:8
**services** [1] - 71:16
**set** [12] - 3:20, 19:9, 46:25, 47:9, 47:23, 56:2, 56:14, 59:16, 60:6, 65:24, 69:23, 72:25
**setting** [1] - 37:4
**several** [5] - 9:12, 24:15, 30:24, 47:25, 71:20
**shall** [57] - 47:13, 47:23, 47:25, 48:2, 48:9, 48:14, 48:21, 49:1, 49:6, 49:9, 49:10, 49:12, 49:13, 49:16, 49:19, 49:25, 50:2, 50:5, 50:7, 56:6, 56:14, 56:16, 56:20, 56:23, 56:24, 57:1, 57:2, 57:5, 57:8, 57:14, 57:16, 57:19, 57:21, 66:24, 70:1, 70:2, 70:9, 70:13, 70:16, 70:17, 70:19, 70:20, 70:23, 71:1, 71:7, 71:9, 71:12, 71:19, 71:21, 72:3, 72:8, 72:15, 72:20, 72:25
**shipment** [2] - 5:18, 67:4
**Shipping** [1] - 6:20
**show** [1] - 43:11
**showed** [2] - 10:2, 10:3
**shown** [3] - 45:10, 54:11, 61:3
**shows** [1] - 39:23
**sic]** [1] - 69:11
**side** [4] - 42:21, 51:4, 58:14, 73:22
**sides** [3] - 51:2, 58:12, 73:20
**signed** [1] - 7:6
**significant** [5] - 26:9,

39:7, 43:14, 52:10, 55:18
**similar** [1] - 58:22
**simple** [2] - 10:13, 54:17
**simply** [5] - 9:11, 10:2, 10:22, 15:11, 37:5
**sincerest** [1] - 61:13
**single** [2] - 11:11, 43:12
**sit** [1] - 24:22
**situate** [1] - 63:24
**situated** [2] - 62:11, 65:14
**situation** [3] - 8:16, 29:8, 62:18
**small** [1] - 19:21
**sold** [6] - 14:6, 23:16, 23:17, 32:20, 41:7, 62:25
**solicit** [3] - 49:19, 57:8, 71:1
**soliciting** [1] - 13:18
**someone** [5] - 14:5, 16:18, 24:4, 27:4, 30:14
**someplace** [1] - 30:2
**sometime** [1] - 18:18
**somewhat** [1] - 66:21
**son** [8] - 10:25, 25:1, 55:15, 59:21, 59:25, 60:6, 63:1, 64:6
**sophisticated** [2] - 10:11, 43:24
**sorry** [7] - 4:1, 6:17, 12:15, 32:25, 50:14, 51:16, 60:5
**sort** [5] - 11:13, 11:14, 20:15, 40:3, 65:8
**sorts** [1] - 20:14
**source** [1] - 28:7
**South** [4] - 12:23, 12:24, 59:20, 74:6
**SOUTHERN** [1] - 1:1
**Southwest** [1] - 1:21
**special** [9] - 45:1, 49:15, 50:6, 54:2, 57:4, 57:20, 60:19, 70:22, 72:21
**Specific** [1] - 15:3
**specific** [1] - 37:10
**specifically** [2] - 17:14, 37:16
**specified** [1] - 20:11
**spoken** [1] - 10:4
**Spy** [3] - 10:12, 13:4, 13:6

**squarely** [3] - 16:3, 17:16, 18:1
**stand** [3] - 13:15, 47:4, 65:20
**standard** [3] - 49:13, 57:2, 70:20
**standing** [1] - 10:7
**stands** [1] - 67:2
**start** [1] - 20:6
**started** [2] - 64:2, 65:11
**state** [11] - 3:4, 3:25, 5:18, 9:15, 12:21, 33:5, 49:10, 53:3, 56:24, 64:17, 70:17
**statement** [5] - 28:1, 28:8, 28:11, 28:13, 62:7
**statements** [5] - 23:20, 47:6, 55:24, 68:19, 69:20
**STATES** [4] - 1:1, 1:4, 1:11, 1:15
**States** [42] - 3:2, 3:7, 20:22, 24:7, 47:9, 47:17, 47:22, 48:12, 48:13, 48:22, 49:6, 49:18, 49:24, 50:4, 50:6, 53:1, 53:6, 56:2, 56:9, 56:13, 56:20, 57:7, 57:12, 57:18, 57:20, 59:12, 65:23, 69:23, 70:6, 70:13, 70:25, 71:5, 71:11, 72:7, 72:8, 72:16, 72:21, 72:23
**states** [1] - 14:5
**statutory** [3] - 47:8, 56:2, 69:22
**stealing** [2] - 19:24, 67:11
**step** [1] - 22:16
**steps** [1] - 28:16
**still** [5] - 13:20, 19:16, 25:22, 54:15, 69:14
**stole** [5] - 10:23, 17:21, 24:11, 29:22, 67:25
**stolen** [34] - 5:18, 14:7, 14:13, 15:9, 18:17, 18:22, 22:11, 23:3, 25:10, 30:14, 32:6, 38:2, 38:18, 38:19, 38:22, 39:1, 39:4, 39:5, 39:14, 40:4, 40:19, 41:6, 43:23, 67:6, 67:7, 67:9, 67:10, 67:13, 67:17, 67:21, 67:24,

68:13, 68:14
**stopped** [1] - 27:6
**Street** [3] - 1:16, 1:18, 1:21
**street** [2] - 27:25, 39:24
**stretch** [1] - 19:14
**strips** [44] - 6:21, 9:5, 9:13, 14:8, 14:9, 14:11, 14:13, 14:20, 15:23, 18:20, 18:21, 22:14, 22:17, 22:21, 23:3, 23:14, 25:15, 25:23, 26:19, 27:2, 27:16, 27:23, 28:15, 29:10, 29:12, 29:17, 29:23, 29:24, 30:23, 31:8, 38:1, 38:4, 39:25, 40:16, 41:7, 43:13, 62:25, 63:2, 67:10, 67:14, 67:18, 67:20
**strong** [1] - 52:15
**stronger** [1] - 7:22
**strongly** [1] - 41:15
**subject** [1] - 63:17
**submit** [5] - 29:8, 30:15, 50:2, 57:16, 71:9
**submitted** [3] - 22:1, 22:2, 22:5
**subsequent** [3] - 13:18, 36:11, 67:13
**subsequently** [7] - 33:8, 38:15, 63:17, 64:9, 67:18, 68:1
**substance** [3] - 49:12, 57:1, 70:19
**substantially** [2] - 62:12, 64:22
**suffering** [1] - 62:20
**sufficient** [1] - 43:20
**suggest** [1] - 19:18
**suggested** [1] - 16:24
**Suite** [1] - 1:21
**summer** [1] - 15:10
**supervised** [12] - 44:17, 49:2, 49:9, 49:14, 54:1, 56:17, 56:23, 57:3, 60:18, 70:10, 70:16, 70:21
**supplemental** [1] - 71:14
**Supply** [3] - 33:24, 67:16, 67:17
**support** [3] - 61:22, 65:7, 66:11
**supported** [1] - 37:10

**supportive** [2] - 62:2, 64:13
**Supreme** [1] - 66:3
**surprised** [1] - 37:3
**surrender** [6] - 51:20, 58:21, 59:3, 60:6, 74:11, 75:8

---

**T**

---

**table** [2] - 3:8, 53:7
**target** [1] - 9:10
**TARRIO** [8] - 1:7, 1:20, 4:19, 4:22, 61:2, 61:12, 74:22, 75:22
**tarrio** [1] - 12:7
**Tarrio** [50] - 3:3, 3:11, 4:17, 5:7, 5:15, 5:21, 7:11, 8:22, 9:9, 10:5, 10:22, 11:23, 12:1, 12:15, 12:16, 13:5, 13:8, 18:12, 18:15, 18:21, 19:4, 19:20, 20:2, 23:23, 25:2, 26:19, 28:20, 29:14, 29:21, 30:8, 42:16, 42:17, 42:23, 53:2, 53:9, 60:9, 60:23, 61:8, 61:11, 62:11, 62:18, 62:19, 63:7, 63:24, 64:10, 64:15, 64:24, 65:5, 70:5, 73:11
**Tarrio's** [7] - 5:10, 7:1, 7:10, 7:14, 27:22, 30:16, 68:13
**task** [1] - 25:11
**technically** [1] - 59:8
**ten** [2] - 36:11, 52:20
**ten-minute** [1] - 52:20
**term** [5] - 47:18, 49:2, 49:3, 56:17, 70:10
**terms** [8] - 20:8, 21:1, 21:2, 47:19, 49:4, 55:13, 56:18
**test** [35] - 9:5, 9:13, 14:8, 14:9, 14:11, 14:13, 14:20, 18:20, 18:21, 22:13, 22:14, 22:17, 22:21, 23:2, 23:14, 25:15, 25:23, 27:23, 29:10, 29:12, 29:17, 30:22, 31:7, 38:1, 38:4, 39:25, 41:7, 43:13, 62:25, 63:2, 67:10, 67:13, 67:17, 67:20

tested [1] - 51:24
THE [136] - 1:11, 1:15, 1:17, 1:20, 1:23, 3:1, 3:9, 3:12, 3:15, 3:19, 4:2, 4:4, 4:8, 4:11, 4:14, 4:17, 4:20, 4:23, 5:4, 5:9, 6:1, 6:3, 6:6, 6:8, 6:12, 6:16, 7:7, 7:19, 8:10, 8:14, 8:18, 8:21, 12:3, 12:11, 12:23, 13:10, 13:13, 13:21, 15:15, 17:5, 20:5, 24:12, 30:20, 32:15, 32:21, 32:24, 33:1, 33:3, 33:15, 33:17, 33:21, 34:8, 34:14, 34:20, 35:4, 35:6, 35:12, 36:2, 37:7, 38:20, 40:5, 40:11, 41:19, 41:22, 43:1, 43:18, 44:7, 44:25, 45:5, 45:10, 45:16, 45:24, 46:11, 46:15, 47:4, 50:13, 50:17, 51:10, 51:15, 51:18, 51:20, 52:2, 52:4, 52:11, 52:20, 52:25, 53:14, 53:16, 54:6, 54:11, 54:21, 55:5, 55:21, 55:24, 58:3, 58:19, 58:21, 59:1, 59:3, 59:6, 59:9, 59:15, 59:16, 59:23, 60:2, 60:5, 60:7, 60:8, 60:9, 60:23, 61:3, 61:10, 62:9, 65:1, 65:20, 66:17, 68:23, 69:4, 69:7, 69:13, 69:18, 69:20, 73:7, 73:11, 74:3, 74:7, 74:9, 74:14, 74:16, 74:23, 74:25, 75:2, 75:12, 75:15, 75:17, 75:21
theft [3] - 16:17, 24:11, 26:20
theoretically [2] - 30:13, 31:12
therefore [10] - 14:10, 14:18, 37:20, 38:6, 38:8, 47:23, 56:14, 63:25, 70:1, 72:25
Thereupon [1] - 52:23
they've [3] - 23:22, 27:15, 31:24
thin [1] - 32:1
third [2] - 44:3, 71:18
third-party [1] -

71:18
Thomas [1] - 22:6
thousand [1] - 40:23
three [9] - 16:7, 17:20, 22:7, 28:4, 44:17, 54:1, 56:17, 60:18, 74:25
Title [6] - 47:9, 47:21, 56:2, 56:12, 69:23, 72:23
today [6] - 3:20, 18:6, 45:5, 45:24, 54:6, 60:23
together [4] - 18:4, 24:8, 25:21, 59:22
took [5] - 15:25, 19:11, 22:14, 39:7
total [12] - 22:17, 36:5, 36:9, 36:11, 36:18, 36:20, 37:21, 50:7, 57:21, 59:13, 72:22
totality [4] - 40:25, 45:2, 54:3, 60:20
tough [1] - 61:19
toward [3] - 48:4, 48:8, 72:2
towards [2] - 30:6, 71:24
traced [1] - 67:21
track [1] - 16:16
transaction [4] - 19:12, 33:16, 33:17, 43:12
transactions [4] - 19:7, 19:11, 19:13, 42:24
transcription [1] - 76:4
transport [1] - 10:12
transportation [1] - 67:7
traveling [1] - 18:22
treatment [4] - 71:13, 71:14, 71:15, 73:9
tried [1] - 33:8
tries [1] - 34:15
Trim [2] - 3:8, 53:7
troubled [1] - 61:16
truck [7] - 15:9, 18:13, 18:16, 18:17, 25:10, 26:25, 38:2
truckload [5] - 22:11, 24:1, 67:10, 67:12
true [5] - 9:11, 10:13, 24:6, 24:8, 37:6
truth [1] - 28:3
try [2] - 25:12, 34:16
trying [8] - 17:9,

17:19, 24:24, 31:1, 36:12, 40:2, 62:21
turn [3] - 20:15, 37:11, 66:23
two [22] - 4:25, 7:20, 8:9, 9:22, 10:7, 18:6, 21:9, 25:5, 28:24, 29:2, 36:8, 38:16, 38:21, 39:20, 40:12, 41:2, 42:14, 49:2, 49:3, 51:13, 67:16, 70:10
two-kilo [1] - 28:24
two-level [7] - 4:25, 8:9, 38:16, 38:21, 40:12, 42:14, 51:13
two-point [1] - 41:2
type [2] - 21:3, 52:9

## U

U.S [1] - 2:1
ultimately [1] - 29:6
under [12] - 6:3, 15:15, 19:15, 38:16, 43:19, 44:4, 46:9, 64:21, 65:14, 65:17, 66:24, 68:7
undercover [5] - 33:25, 34:7, 35:16, 45:22, 67:19
undertaken [1] - 13:25
underway [1] - 19:6
unexpected [2] - 48:18, 72:12
UNITED [4] - 1:1, 1:4, 1:11, 1:15
United [42] - 3:2, 3:7, 20:22, 24:7, 47:9, 47:17, 47:21, 48:12, 48:13, 48:21, 48:22, 49:6, 49:18, 49:23, 50:4, 50:6, 53:1, 53:6, 56:2, 56:9, 56:12, 56:20, 57:7, 57:12, 57:18, 57:20, 59:12, 65:23, 69:23, 70:6, 70:13, 70:25, 71:5, 71:11, 72:7, 72:8, 72:15, 72:16, 72:21, 72:23
units [4] - 22:23, 23:23, 23:24, 25:18
unknown [2] - 7:2, 7:8
unnamed [1] - 14:8
unreasonable [1] - 41:2

up [14] - 3:21, 5:4, 10:2, 10:3, 16:2, 16:16, 17:21, 19:10, 31:15, 32:21, 33:12, 39:3, 46:25, 58:24
urines [1] - 51:25
US [1] - 14:14
useful [1] - 39:10
utilized [1] - 14:12

## V

value [11] - 15:9, 15:22, 15:23, 16:1, 16:4, 22:10, 22:15, 22:25, 26:8, 26:9
valued [1] - 22:11
Vanessa [2] - 3:6, 53:5
VANESSA [1] - 1:15
variance [10] - 46:2, 62:17, 65:3, 65:18, 65:25, 66:17, 68:14, 68:17, 69:13, 69:14
variety [3] - 9:18, 11:9
various [3] - 19:9, 21:16, 29:25
VASQUEZ [2] - 1:23, 1:23
Vazquez [9] - 3:13, 10:16, 13:13, 17:5, 24:3, 29:13, 53:11, 55:6, 75:3
VAZQUEZ [21] - 3:13, 5:3, 6:15, 7:21, 13:15, 17:6, 27:20, 38:10, 41:4, 41:21, 42:1, 52:17, 52:22, 53:11, 54:4, 54:14, 58:20, 58:22, 59:18, 60:1, 60:4
venture [1] - 7:10
ventured [1] - 42:22
versus [5] - 3:2, 14:14, 20:22, 53:1, 65:23
victim [5] - 21:22, 21:25, 22:4, 32:11, 44:22
victim's [1] - 21:23
victims [3] - 21:10, 21:11, 46:24
victims' [6] - 47:22, 47:24, 56:13, 56:15, 72:24, 73:1
view [1] - 10:1
viewing [1] - 6:9
Vince [1] - 28:6

VINCENT [1] - 1:17
Vincent [1] - 3:16
violations [1] - 51:24
vs [1] - 1:6

## W

wages [4] - 48:3, 48:4, 71:22, 71:23
wait [2] - 35:11, 42:6
waiver [3] - 50:25, 58:10, 73:18
Wal [2] - 15:23, 16:1, 17:15
Wal-Mart [3] - 15:23, 16:1, 17:15
walk [1] - 36:21
walked [1] - 24:4
wants [1] - 5:5
warehoused [1] - 29:17
wasted [1] - 61:16
ways [2] - 21:9, 24:22
week [1] - 36:8
West [1] - 1:18
whatsoever [5] - 5:15, 7:10, 12:8, 12:9, 18:24
whichever [1] - 7:12
whole [5] - 20:19, 23:6, 30:7, 64:3
wholesale [4] - 22:14, 22:25, 35:9, 37:22
wide [3] - 9:18, 11:9
willing [1] - 33:12
willingness [1] - 33:17
wish [6] - 45:12, 46:11, 54:13, 55:2, 61:5, 61:11
withdraw [2] - 13:9, 69:13
withdrawing [1] - 13:10
words [2] - 12:17, 35:21
works [2] - 24:25, 41:10
worse [1] - 62:1
wrap [1] - 58:24
written [8] - 8:10, 8:12, 49:23, 49:25, 57:12, 57:14, 71:5, 71:7

## Y

**year** [3] - 6:22, 12:7, 49:3
**years** [4] - 49:2, 49:3, 56:17, 70:10
**years'** [3] - 44:17, 54:1, 60:18