1            SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                         CRIMINAL DIVISION

3      - - - - - - - - - - - - - x
                                 :
4      UNITED STATES OF AMERICA  :
                                 :
5            versus              :      Criminal Action Number
                                 :
6      HENRY TARRIO              :      2021 CF2 105
                                 :      2021 CMD 106
7                                :
                                 :
             Defendant           :
8      - - - - - - - - - - - - - x

9                                    Washington, D.C.
                                     August 23, 2021
10

               The above-entitled action came on for a
11     sentencing before the Honorable HAROLD CUSHENBERRY,
       Associate Judge, in Courtroom Number 116, commencing at
12     approximately 2:26 p.m.

13               THIS TRANSCRIPT REPRESENTS THE PRODUCT
                 OF AN OFFICIAL REPORTER, ENGAGED BY THE
14               COURT, WHO HAS PERSONALLY CERTIFIED THAT
                 IT REPRESENTS HER ORIGINAL NOTES AND
15               RECORDS OF TESTIMONY AND PROCEEDINGS OF
                 THE CASE AS RECORDED.
16
                     APPEARANCES:
17
                 On behalf of the Government:
18
                 PAUL COURTNEY, Esquire
19               Assistant United States Attorney

20               On behalf of the Defendant:

21               LUCAS DANSIE, Esquire
                 Washington, D.C.
22

23
       DONNA K. HAWKINS              (202) 879-1035
24     Official Court Reporter

25

                                                                    1

1                          **TABLE OF CONTENTS**

2

3

4     SENTENCING HEARING:                          3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE DEPUTY CLERK:  Good afternoon, Your Honor.

3            THE COURT:  Good afternoon.

4            THE DEPUTY CLERK:  Calling from Your Honor's full

5    report and sentencing calendar, United States versus Henry

6    Tarrio, 2021 CF2 105 and 2021 CMD 106.

7            (Whereupon, the proceeding began at 2:26 p.m.)

8            THE COURT:  Could the parties identify themselves

9    for the record.

10           MR. COURTNEY:  Good afternoon, Your Honor.  Paul

11   Courtney for the United States appearing by Web Ex.

12           MR. DANSIE:  Thank you, Your Honor.  Lucas Dansie

13   for Mr. Tarrio, appearing via Web Ex.

14           THE COURT:  And Mr. Tarrio?

15           THE DEFENDANT:  Your Honor, this is Henry Tarrio.

16   I'm here too.  Can you hear me?

17           THE COURT:  I can hear you.  This matter is

18   before the Court for sentencing.  I assume the parties are

19   prepared to proceed?

20           MR. COURTNEY:  Yes, Your Honor.

21           THE COURT:  For the record, I will note that the

22   Court has reviewed all the pleadings that have been filed

23   in this case.  I reviewed the presentence report.  The

24   Victim Impact statement.  The Court has obviously reviewed

25   the allocution memoranda that was submitted by the parties

1   and all the other documents that have been submitted in

2   support of the sentencing options presented by the parties,

3   including information with regard to restitution the

4   Government is seeking.  And so I would like to initially

5   hear from the parties and hear initially from the United

6   States and then I'll hear from the Defense Counsel for Mr.

7   Tarrio.  If there is Victim Impact information that you

8   wish to present in addition to what you put in your papers,

9   I'll consider that.  If you have someone appearing by

10   video, I'll hear that and then I'll be in a position to

11   consider all of your arguments and to proceed to

12   sentencing.  I'll start first with Counsel for the United

13   States, Mr. Courtney.

14          MR. COURTNEY:  Thank you, Your Honor.  And I

15   would note that Reverend Mills, Asbury's senior pastor is

16   here today and would like an opportunity to be heard by the

17   Court and so I'm going to try to be brief and allow

18   Reverend Mills to speak to the effects of the destruction

19   of property offense upon the church and its community.

20          As the Court is now aware the Government is

21   requesting consecutive sentences of 180 days, execution of

22   sentence suspended as to all but 45 days to be followed by

23   18 months of probation.  As an aggregate sentence of 360

24   days, execution of sentence suspended as to all but 90

25   days.  The Government is also requesting that the order

1    that Mr. Tarrio stay away from the District of Columbia

2    remain in effect as a specific condition of probation and

3    as Your Honor, Asbury has put forward the request for

4    $5,387.00 in restitution.  That's for the replacement of

5    their banner and for the private security that the church

6    felt compelled to hire for January 6th and 20th, 2021 as a

7    result of Mr. Tarrio's crime.

8         The burning of Asbury's banner in a public street

9    here in the District of Columbia was a blatant act of

10   defiance and disrespect for ours laws.  Mr. Tarrio now

11   tries to portray himself as a victim of circumstances.  He

12   told the Presentence Report Writer this was a moment of

13   weakness and in his sentencing memorandum.  There's a

14   reference to the tumultuous and heated circumstances under

15   which Mr. Tarrio committed the current offenses.  That

16   framing totally minimizes Mr. Tarrio's role in creating and

17   fostering those very circumstances.

18        We're not talking about some casual observer of

19   events walking down the street and got wrapped up in the

20   heat of the moment.  Mr. Tarrio is the self proclaimed

21   leader of a violent group that traveled to the District of

22   Columbia to engage in civil unrest and the intentional

23   criminal act was in furtherance of that goal.

24        Mr. Tarrio does not seem to have yet fully

25   accepted responsibility which demonstrates the need for

1    punishment through incarceration.  Around the time of these

2    events, Mr. Tarrio denied in an interview with the

3    Washington Post that he knew the banner had come from an

4    African-American church.  Now he denies that he knows the

5    banner came from a church at all, even though there's video

6    that shows him standing up on the church's lawn right next

7    to the church at the time when other crowd going members

8    were stealing and marching with the banner.  He says it was

9    laying on the floor.  The Government doesn't believe he's

10   as naive as he would like the Court to believe and that's

11   demonstrated by the social media posts and the interviews

12   in which he took credit for this crime.  In which he

13   bragged about it and said he was proud of what he had done

14   and he would choose to do it again.

15         He went so far as to say "I did it.  Come get me

16   if you feel like what I did was wrong."  That's totally

17   inconsistent with the way he's now trying to portray this

18   offense.

19         His post offense conduct was brazen and it was

20   remorseless and it seemed aimed at gaining notoriety for

21   himself and encouraging criminal conduct both again in the

22   District of Columbia and elsewhere and against this

23   backdrop you have a post on parlor threatening mayhem on

24   January 6th and alluding to violence on the 6th and the

25   20th and then Mr. Tarrio returns on January 6th with high

1     capacity magazines emblazoned with the Proud Boys logos.

2          This offense which is a felony, the Government

3     gave Mr. Tarrio the opportunity to plead to a misdemeanor.

4     It has to be viewed in the context of what the conditions

5     were like in the District at that point in time.  Everyone

6     was on edge.  Similar protests in November and December

7     involved violence on the streets and people were expecting

8     more of the same.  Mr. Tarrio was making posts about the

9     Proud Boys' plan to take over our streets incognito and

10    threatening more violence here.  He brought with him two

11    magazines which have significant destructive capacity.

12    That conduct is risky.  It demands some punishment.

13          Mr. Tarrio has repeatedly suggested that this

14    prosecution is somehow about his political beliefs.  I just

15    want to say that's plainly not the case.  Mr. Tarrio

16    traveled here twice.  Both times he engaged in criminal

17    conduct.  If someone travels to the District of Columbia

18    and breaks our laws, they will be prosecuted for it.  They

19    should be punished for it.  Their politics or their beliefs

20    are never part of the equation for the Government.  This

21    Court should impose a sentence that will provide just

22    punishment that will deter Mr. Tarrio specifically from re-

23    offending here and will deter others who might think that

24    traveling here to engage in criminal chaos and destruction.

25    The Government believes that its recommendation is tailored

1   to achieve those goals.  Thank you.

2            THE COURT:  We have lost you for awhile.

3            MR. COURTNEY:  What's wrong?

4            THE COURT:  Yeah, I missed a lot of what you just

5   said.  I missed maybe the last minute or two.

6            MR. COURTNEY:  What was the last thing?

7            THE COURT:  You were speaking about coming to the

8   District of Columbia and breaking the laws.  You have been

9   through the social posts and if you just want to start in

10  at the break here the chain of your argument.

11           MR. COURTNEY:  No.  I mean, I think I probably

12  got to the final point which is just there has been this

13  constant refrain from Mr. Tarrio that this is somehow

14  politically motivated.  Every Court that has looked at that

15  claim so far, including our Court of Appeals and Your Honor

16  at the guilty plea hearing has made clear, you know

17  prosecutions are about conduct.  That's the case here and

18  the point I was making is if someone travels to the

19  District of Columbia and breaks the law here, they will be

20  prosecuted and they should be punished.

21           Mr. Tarrio traveled here twice.  He broke the law

22  both times and so the Court should impose the Government's

23  recommended sentence.  Thank you.

24           THE COURT:  Thank you.  Mr. Dansie.

25           MR. DANSIE:  Your Honor, I do have a few words.

1    I understand that the Government has someone that will

2    speak.  Should I go now or should that person speak first?

3            THE COURT:  If the Reverend is here, we can go

4    ahead and hear him.  So you can respond to anything he may

5    have to say.  I have read your papers and some of the

6    arguments you make are persuasive, but I'll hear from

7    Reverend Mills.  If Reverend Mills wishes to make a

8    statement, I will hear from Reverend Mills.

9            REV. MILLS:  Yes, I'm present.  Can you hear me?

10           THE COURT:  I can hear you.  Thank you.

11           REV. MILLS:  Okay.  Alright.  I have modified the

12   statement just slightly and I would just like to read it.

13           THE COURT:  Okay.

14           REV. MILLS:  Okay.  Asbury United Methodist

15   Church is a historic African-American congregation in

16   downtown Washington, D.C. Asbury was established in 1836

17   and we have been continually at that location on the same

18   site on 11th and K Street for all of 185 years.

19           For all of our 185 years, Asbury has stood for

20   social justice.  We have been actively involved as both

21   supporters and participants in just about every social

22   justice movement and or protest since our inception.

23   Asbury's involvement has been noted among other things as a

24   stop on the underground railroad and in the 1963 march on

25   Washington.  The protest against apartheid in South Africa

1    and the Black Lives Matter movement.

2            In fact Asbury's very founding grew out of a

3    protest over a matter of social justice when a small, brave

4    group of black congregants dissatisfied with being

5    relegated to the balcony for worship, decided to leave

6    Boundary Methodist Church and start their own congregation.

7    Asbury was born.

8            Now, Asbury displays a Black Lives Matter banner

9    to make a statement regarding the value of black people.

10   That black lives are valued by God and us.  We resolved to

11   make that statement after the death of Tamera Rice who was

12   only 12 years old when he was shot by an arriving police

13   officer almost immediately while playing with a toy gun in

14   a park.  We display a Black Lives Matter banner to make a

15   statement as Christians.  We are not Marxists.  We are not

16   socialists.  We are Christians and Methodists.

17           Having the great commandment to love God and

18   neighbors as our basis, Methodists believe in striving for

19   personal holiness and social holiness.  Therefore as a

20   congregation, we cannot ignore social inequality,

21   disparity, discrimination and oppression and see overcoming

22   them as tides to true holiness and salvation.

23           This brief summary of Asbury's history and our

24   commitment to social and racial justice lays the foundation

25   of the impact of Mr. Tarrio's actions and an impact

1    specifically felt by an African-American congregation with

2    strong social justice leaders.  The impact can be measured

3    in three ways.  Physical, financial and the emotional and

4    psychological.

5            First, the physical impact of Mr. Tarrio's

6    actions was actual damage to Asbury's property.  Namely our

7    banner was forever destroyed by its burning.  This impact

8    was negligible and finite.

9            Second, the financial impact of Mr. Tarrio's

10   actions was the cost incurred by Asbury in the wake of the

11   December 12th incident.  Asbury moved quickly to replace

12   the Black Lives Matter banner at a cost of $347.00.  At

13   that time in light of ongoing and planned demonstrations

14   and protests on January 6th and 20th, with no assurance

15   that the church would not be the target of further

16   violation and no assurance of police protection, Asbury's

17   leadership took the cautionary steps of engaging private

18   security to protect the church and its property.  The cost

19   of said security was $5,040.00.  Accordingly then the total

20   financial impact of Mr. Tarrio's action was $5,387.00.

21           Third, the emotional and psychological impact of

22   Mr. Tarrio's actions on a congregation with Asbury's

23   composition and history is significantly more complicated

24   to understand and or explain.  Asbury is an aging

25   congregation, many of whom if not a part of it themselves

11

1    are direct descendants of individuals who traveled North

2    during the great migration of the 20th century.  They

3    migrated here in search of opportunity, but also to escape

4    the stress, fear and anxiety of terror inducing acts of

5    social and racial injustice.  Imagine then, if you would, a

6    marauding band of seemingly angry white men moving about

7    the city apparently looking for trouble.  That group

8    happens upon Asbury, a black church, then proceeds to rip

9    down the church's Black Lives Matter banner, parade it down

10   the street and then burn it in the street while jeering and

11   cursing.

12          The group further escalates this violence and

13   terror.  This demonstration of outright hatred and anger by

14   videoing the act and uploading it to various social media

15   platforms for the world to witness.

16          This was deliberate and planned.  Who carries a

17   bottle of lighter fluid to a peaceful demonstration?  In

18   our opinion, this was an act of intimidation and racism.

19   The attack upon Asbury United Methodist church and

20   Metropolitan AME church were far more violent than those

21   that occurred at two white churches on the same evening.

22   The attacks upon Asbury United Methodist church and

23   Metropolitan AME church were videoed as trophies for social

24   media.

25          Now imagine the images conjured up in the minds

1   of Asbury congregants as a result of these white men

2   burning the Black Lives Matter banner.  Visions of slavery,

3   the Klu Klux Klan, lynchings and their public spectacles.

4   Cross burning and the post Civil War Jim Crow South.  Try

5   if you can imagine the fear, anxiety, frustration, anger

6   and terror this must create for them.

7          How does one quantify this type of impact?  How

8   does one measure in the short term the way this incident

9   will influence the actions, decisions and interactions of

10  the congregation with each other, the community and the

11  world at large.

12         Mr. Tarrio by his actions caused immeasurable and

13  possibly irreparable harm.  His careless act of violence

14  and hatred targeted at a congregation of individuals with a

15  lived history of social and racial injustice had the

16  presumably desired affect.  Asbury was forced to reckon

17  with the very tangible evidence that we continue to live in

18  a world where people radicalize hate based upon race and

19  skin color.  We continue to live in a world where people

20  feel free to exhibit and direct aggression and animus

21  towards others simply for being different, looking

22  different or having different opinions or values.

23         However, we are hopeful that we also live in a

24  world leaning towards justice and accountability.  A world

25  that will require bad actors to take responsibility for

1    their behavior as well as suffer the consequences thereof.

2    Asbury is a congregation of Christ seeking individuals who

3    strive daily to be a radically inclusive community

4    empowered to spread God's love throughout the world.  All

5    are welcome at Asbury.  Our doors are always open.

6           Mr. Tarrio's actions sparked feelings of hurt,

7    anger and even confusion.  Despite these egregious offenses

8    to our membership, we will continue to love God, love one

9    another, serve our community and transform lives.  We are

10   Asbury United Methodist church and we will survive and

11   thrive.  Respectfully submitted by myself, Reverend Doctor

12   Ianther Mills, Senior Pastor.

13          THE COURT:  Thank you very much Reverend Mills.

14   Mr. Dansie.

15          MR. DANSIE:  Thank you, Your Honor.  Thank you,

16   Reverend Doctor Mills.  Your Honor, Mr. Tarrio is extremely

17   sorry for what he did.  He made a poor decision.  He wasn't

18   thinking clearly and this case was papered in January.  I

19   spoke with the Government that month and I have e-mails

20   from around that time when we were seeking a plea offer

21   because Mr. Tarrio is a man of morale character who

22   respects the laws and he wanted to and has accepted full

23   responsibility for this mistake.

24          What we propose, Your Honor, that in a way of

25   meeting the purpose of punishment and a reasonable plan

1    would be for Mr. Tarrio to give back to the community.  We

2    understand that the church -- this church doesn't want him

3    to do community service there, but he would like to and we

4    would like to propose that he be required to do community

5    service at a church or another group in Miami where he

6    lives.  The Court could set a probation review date to be

7    sure that he has done that and he will prove himself on

8    probation as he has.  He has abided by the requirements.

9    He has done an excellent job and he'll continue to obey all

10   laws and that respectfully would be our request, Your

11   Honor.

12          There is a person, Ms. Belvin Beatty, who is

13   present that knows him and knows about his character.  If

14   the Court were inclined, we would have her address the

15   Court very briefly before Mr. Tarrio addresses the Court

16   because he would like to as well.

17          THE COURT:  Well, I'll hear from Mr. Tarrio, but

18   I don't think it's appropriate to hear -- it's not a trial

19   with character witnesses.  This is a sentencing.  So I'll

20   hear from Mr. Tarrio.

21          MR. DANSIE:  Thank you, Your Honor.

22          THE DEFENDANT:  Judge, do you hear me?

23          THE COURT:  I can hear you.

24          THE DEFENDANT:  Judge, my attorney says that I

25   wasn't thinking clearly and I think it goes beyond that.  I

1    think that day I made a grave mistake.  A very, very, very

2    bad mistake and someone that's in this Courtroom right now

3    is Reverend Mills and I would like to profusely apologize

4    for my actions I have caused.  I heard the grief in her

5    voice.  What I did was wrong.  I did it when I was talking

6    to the presentence investigation.  What I was saying was I

7    was wrong, but I wanted to show what emotions came out of

8    me that made me feel that way because I know there are a

9    lot of people like listening to this Court and I would like

10   for those people to understand that their emotions will get

11   the best of them and what I did regardless of it being the

12   Asbury church or not, but somebody's property, that I do

13   apologize and AUSA Paul Courtney was -- that's not all the

14   facts.  I did consult a media post and at that time I

15   didn't see the consequences of what I did because I believe

16   that was just two or three days after the events of

17   December 12th and to give you context on that, I did see it

18   and I did see what I did was wrong and that's why before I

19   got anything -- before I got Congress on the case,

20   anything, any pictures of anything, I needed to do what is

21   right and to do what is right was to plead guilty to this

22   case and that's about the banner and as to the magazines

23   that I brought into D.C., I would like to apologize to the

24   Court for that.

25            There's no excuse for what I did.  I stated what

1    my reasoning was but, again, that's not -- I have since

2    taken them off my web site.  I have then since flown a

3    couple of times since then.  I don't even bring a pocket

4    knife with me, Your Honor.  Beyond what Your Honor decides,

5    at the ends it's your decision, but beyond that --

6              THE COURT:  Mr. Tarrio, we lost your voice and

7    your video.

8              THE WITNESS:  I'm back on, Your Honor.  Can you

9    guys see me?

10             THE COURT:  Yes.

11             THE WITNESS:  I apologize for that.  Where did I

12   leave off?

13             THE COURT:  You were apologizing for what you had

14   done.

15             THE DEFENDANT:  Okay.  And as far as the

16   magazines go, there's no excuse.  I have taken them off my

17   web site.  When I travel I don't even bring a pocket knife

18   with me or anything that I think would be illegal anywhere

19   else in the country.  Beyond what Your Honor sees fitting

20   for my punishment for these crimes, I have suffered

21   financially, socially for what I have done.  My family's

22   business has been hit pretty hard.

23             So what I did doesn't only affect the church, it

24   effects a lot more people including my family.  So you

25   know, again, I really would like to profusely apologize and

1    I hope Reverend Mills accepts my apology for what I did on

2    December 12th.  It's not right to do anything to anybody's

3    property regardless of whether it's a church or not.  So I

4    also apologize to the Court.  For AUSA Paul Courtney where

5    he had to put all this together, I apologize to him.  I'm

6    sorry and I apologize, Your Honor.

7            THE COURT:  Thank you very much.  I think it's

8    important for me to say at the very outset that as I have

9    considered the appropriate sentence in this case, I wanted

10   to make it clear that the Court expresses no views nor

11   should it ever on Mr. Tarrio's opinions about Marxism,

12   Communism, the Castro regime in Cuba or the Black Lives

13   Matter Movement.  His opinions are protected by the First

14   Amendment and this Court must respect the right of any

15   citizen to peacefully assemble, protest and make his or her

16   views known on important social issues which are natively

17   debated in the public square; but Mr. Tarrio's conduct in

18   these criminal cases indicate none of these democratic

19   values.  Instead Mr. Tarrio's actions betrayed them.

20           Mr. Tarrio's has clearly intentionally and

21   proudly crossed the line from peaceful protest and assembly

22   to dangerous and potentially violent criminal conduct.

23           While acceptance of responsibility for one's

24   criminal conduct certainly bares weight in arriving at a

25   fair and a just sentence, the Court ultimately agrees with

1    the Government that Mr. Tarrio has not credibly expressed

2    genuine remorse as he has done so today for his criminal

3    conduct.  His bald self-serving assertion that he was

4    unaware that the Black Lives banner that he helped to

5    destroy or was willing to help to destroy was taken from

6    church property is belied by the video evidence and his

7    boastful social media posts.

8            There is a clear picture of Mr. Tarrio and others

9    in a well lit area on the lawn of Asbury Methodist Church

10   where the banner was taken and in one of Mr. Tarrio's

11   social media posts, the Court can make out a part of the

12   web site for Asbury Methodist Church.

13           Defense Counsel's claim in his allocution memo

14   that Mr. Tarrio did not know the banner was taken from

15   Asbury Methodist Church because the video does not show Mr.

16   Tarrio, open quote, fixed his eye on the church for any

17   appreciable period of time is wholly unconvincing.

18           Anyone standing on the church lawn would not have

19   only seen that it was a church, but also the stained glass

20   windows were clearly visible from this well lit area where

21   Mr. Tarrio and his compatriots stood.

22           With regard to danger to the community, Mr.

23   Tarrio's social posts demonstrate that he encouraged others

24   to travel to the Capitol on January 6th and perhaps engage

25   in criminal conduct that he was so proud of before he was

1    caught.  Mr. Tarrio told the Presentence Report Writer and

2    the Court that he intended to sell the two high capacity

3    magazines to a customer who I believe was traveling to the

4    District of Columbia on January 6th.  While high capacity

5    magazines can be possessed lawfully in many jurisdictions,

6    they're illegal in D.C. and for good reason.  The fatality

7    is awesome.

8          Mr. Tarrio's claim that he did not know the

9    possession of the two high capacity magazines were illegal

10   in D.C. does not affect in any way the validity of this

11   plea or the role because he knowingly possessed them in

12   D.C.

13         But equally important to this Court is his

14   ignorance of the law claim is also wholly not credible.

15   Considering Mr. Tarrio's previous criminal conduct,

16   particularly for fraud, the Court does not credit his

17   claims that he had no reason to know that possession of

18   these items was illegal.

19         Mr. Tarrio didn't care.  That's what I think.  He

20   could not have cared less about the laws of the District of

21   Columbia.  He cared about himself and self promotion.

22   That's what he cared about.  Not the laws of the District

23   of Columbia or anyone else's laws.  So his claim of

24   innocent mistake is not credible at all.

25         Any Judge has a very tough job in fashioning a

1    fair and just sentence and the Court has to balance a

2    number of factors, including early acceptance of guilt,

3    genuine remorse, criminal history and specific and general

4    deterrence.

5           The Court has considered all of these factors.

6    The balance tips strongly in favor of a longer period of

7    incarceration than that requested by the United States.

8    Mr. Tarrio has not had successful adjustments to his prior

9    periods of probation.  He has re-offended.  He has been

10   convicted of crimes after being placed on probation in the

11   past and has been convicted of crimes in D.C. after being

12   placed on probation in the past.

13          Probation, Mr. Tarrio, is a privilege earned.

14   Not a right.  The Court must also consider the general

15   deterrence to others who might be willing to engage in

16   criminal conduct to achieve their political objectives.

17          Having considered carefully all of these matters,

18   on the charge of unlawful possession of a high capacity

19   magazine, the sentence is 240 days.  Execution of sentence

20   suspended as to all but 150 days.  There will be a fine of

21   $500.00.  There will be a probationary period of three

22   years.

23          On the charge of destruction of property the

24   sentence is 60 days, execution of sentence suspended as to

25   all but 30 days consecutive.  Probation is concurrent for

1    the same period.  There's a $50.00 payment that goes to the

2    Crime Victim Fund.  There's a $500.00 fine with respect to

3    each offense.  He can have a year to pay it since he will

4    be incarcerated for some period of time.  He has to make

5    the $50.00 payment to the Victim of Crimes Fund for each

6    count.  That's a total of $100.00.  He has to make $347.00

7    in restitution for the banner.

8              For Reverend Mills, I am very sorry to tell you

9    that -- not for anything you have done, but perhaps for the

10    United States Attorney's Office has not done in support of

11    your claim for the necessary security protection you have

12    had to pay for.

13              The Government well knows its obligation in mind.

14    I simply cannot impose that amount for security without any

15    further factual information which they could have provided,

16    but didn't with regard to documentation about what was

17    spent, how it was spent, how many security guards were

18    utilized, what period of time they were utilized and for

19    how long.

20              I have no doubt in your good faith and I certain

21    ly believe had the Government spoken with you more closely

22    and provided this documentation, I would have had the power

23    to perhaps to impose this additional amount.  There

24    obviously are civil remedies and you certainly can pursue

25    those with regard to these costs if you wish to sue Mr.

1    Tarrio.

2              Mr. Tarrio, you're going to have to report to the

3    District of Columbia within two weeks to be incarcerated in

4    the D.C. jail for the time period that I have just

5    indicated.  I'm going to allow you to self surrender so you

6    can take care of your personal affairs or you could spend

7    the time at the D.C. jail that I think is appropriate.

8              The Court will of course issue an immediate bench

9    warrant for your arrest if you fail to report to the D.C.

10   jail within two weeks.  The warrants in the District of

11   Columbia are extraditable throughout the United States and

12   if you don't appear, you will be found.  You will be

13   incarcerated and obviously the full term that I suspended

14   on these sentences could be executed.

15             You will get a copy of the judgment and

16   commitment order.  The Department of Corrections and the

17   District of Columbia will get that.  You will be -- your

18   attorney will get it and you will be reporting no later

19   than two weeks.

20             I can give you a date certain if that helps.

21   Counsel, if you want to go off line for a second and work

22   out a date for Mr. Tarrio, a date certain in two weeks.  I

23   want to set a date certain for him to report.

24             So I will go off line for a few minutes.  You can

25   give me a date in two weeks.  If he wants to start earlier,

1    he can start earlier, but I will go off line and then we

2    will come back.  Thank you.

3                MR. DANSIE:  Yes, Your Honor.

4                THE COURT:  Okay.

5                THE DEPUTY CLERK:  For the attempted possession

6    of large capacity ammunition, I have 240 days execution of

7    sentence suspended as to all but 150 days.

8                THE COURT:  On each count.

9                THE DEPUTY CLERK:  On each count?

10               THE COURT:  Right, but the 150 days --

11               MR. COURTNEY:  Could I just interject?

12               THE COURT:  Certainly.

13               MR. COURTNEY:  For the attempted possession of

14   large capacity ammunition, because it's under the general

15   attempt statute, there's a 180 day maximum on that.

16               THE COURT:  Then I will have to resentence him on

17   that count.

18               THE DEPUTY CLERK:  Okay, Your Honor.  So we'll

19   wait until Mr. Dansie and Mr. Tarrio come back then.  Thank

20   you.

21               MR. DANSIE:  I could hear everything.  Your

22   Honor, thank you.  Mr. Courtney, I was going to raise that

23   issue.  We can get to that.  In terms of your question

24   about the date certain, two weeks from today's date,

25   Monday, would be fine if that's suitable to the Court.

 1          THE COURT:  It is.  Mr. Tarrio, because these

 2   were misdemeanors the Government did decide to charge these

 3   as misdemeanors and not felonies which greatly reduces your

 4   criminal exposure.  The maximum sentence is 180 days and so

 5   the sentence I imposed would have been illegal because it

 6   exceeds the statutory maximum.  So the sentence is 150

 7   days, execution of sentence suspended as to all but 125

 8   days consecutive on each of those counts.  Do you

 9   understand?  So you got 125 days on the one count.  125

10   days on the other count.  Do you understand that?

11          THE DEFENDANT:  Yeah.  Do those run back to back?

12          THE COURT:  They run back to back, yes, and with

13   regard to the destruction of property, the maximum was 180

14   days.  The sentence there is 90 days, execution of sentence

15   suspended as to all but 30 days and that is consecutive

16   also.

17          MR. COURTNEY:  Okay.  Your Honor, one more thing.

18          THE COURT:  The probation is concurrent.  Go

19   ahead.

20          MR. COURTNEY:  Just to be clear about the

21   magazine, there's only one magazine count.

22          THE COURT:  I thought there were two?

23          MR. COURTNEY:  There were two magazines charged

24   in the complaint, but he pleaded guilty to one count of

25   attempt.

1          THE COURT:  So the prosecution unit then being

2     unitary, you only charged one.  That's fine.  That's fine.

3     That was your decision to charge it that way.  150 days

4     then, as I said, and the other consecutive sentence.  Okay.

5          THE DEPUTY CLERK:  Your Honor, just to make sure

6     that I got it correct.  For the felony case, attempted

7     possession of large capacity ammunition, 150 days.

8     Execution of sentence is suspended as to all but 125 days.

9     $500.00 fine. $50.00 to the VVC and $347.00 to restitution.

10    Three years supervised probation.  On the misdemeanor count

11    of destruction of property, I have 90 days, execution of

12    sentence suspended as to all but 30.  Consecutive to the

13    sentence in the case.  Three years probation and $50.00 to

14    the VVC and $500.00 fine as well.

15         THE COURT:  That's correct.  You will have a year

16    to make the payment of the fine.

17         THE DEPUTY CLERK:  Thank you.

18         MR. COURTNEY:  And, Your Honor, one more item

19    from the Government.  Would the Court consider holding here

20    restitution in abeyance until the Government could either

21    provide documentation or the Court could hold a hearing on

22    the restitution request?  I don't think it will be an issue

23    to provide the documentation that Your Honor referenced.

24    It's just a matter of getting that to the Court.

25         THE COURT:  Obviously the amount in my discretion

26

1    I could, but you had plenty of time to consider and you

2    understand your obligation.  You understand my legal

3    obligation.  You filled out a very lengthy allocution

4    memorandum of exhibits.  So I'm not going to do that.  The

5    church can pursue their civil remedies.

6              Okay.  Two weeks from today's date, that will be

7    the date he surrenders.  Okay.  Thank you very much.

8              MR. DANSIE:  Thank you, Your Honor.

9              MR. COURTNEY:  Thank you, Your Honor.

10             (Whereupon, the proceedings were adjourned at

11   3:13 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3         I, Donna K. Hawkins, an Official Court Reporter

 4    for the Superior Court of the District of Columbia, do

 5    hereby certify that I reported, by machine shorthand, in

 6    my official capacity, the proceedings had and testimony

 7    adduced upon the jury trial in the case of the UNITED

 8    STATES OF AMERICA versus HENRY TARRIO, Criminal Action

 9    Numbers 2021 CF2 105 and 2021 CMD 106, in said court on

10    the 23rd day of August, 2021.

11         I further certify that the foregoing 27 pages

12    constitute the official transcript of said proceedings,

13    as taken from my machine shorthand notes, together with

14    the backup tape of said proceedings.

15         In witness whereof, I have hereto subscribed my

16    name, this the 5th day of September, 2021.

17

18

19

20         _____
                 DONNA K. HAWKINS
21               Official Court Reporter

22

23

24

25
```